Lucian C. Chen
Criston E. Cicala
Todd M. Nosher
CALHOUN BHELLA & SECHREST LLP
5 Columbus Circle
New York, NY 10019
Telephone: (646) 819-0400
Facsimile: (646) 819-0409
Ccicala@cbsattorneys.com
Lchen@cbsattorneys.com
Tnosher@cbsattorneys.com

Amy E. Davis (*pro hac vice pending*)
CHRISTIANSEN DAVIS, LLC
1021 N. Bishop Ave.
Dallas, TX 75208
Telephone: (214) 838-3501
Facsimile: (972) 332-2306
adavis@cdfirm.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRYSTAL ADAMS, HUGUETTE AMPUDIA, ERICKA APPLEBEE, DAYANA ARIZA-GONZALEZ, STEFFANE BARRETT, RACHEL BIRD, RANDY ELLEN BLAUSTEIN, MARY ELLEN BRANDT, COREY CAIN, STACEY CARPENTER, ASHLEY CARTER, AMANDA CLAY, JANET CLEARY, ADDISON CLINE, DANNAH COLLINS, JESSICA COLLINS, KELSIE CORAY, LADAWN CRAFT PARRISH, APRIL CREEL, LACEY CROKER, ALICIA DA CRUZ, ESRAA DARWISH, BAILEY DAVALL, SHANNON DAVERSA, DANIELE DEGRANDIS-KNEER, MEGAN DICKEY, MARISA EDWARDS, VANESSA ESPERAZA, MELISSA EVANS, KEONTE' FISHER, ALISON FITZWILLIAM, SUSAN FLEMING, HANNAH FLETCHER, JUANITA GARCIA, BRITTAINY HALL, JOSEPHINE HARRIS, TARA HASTOO, REBECCA HAWK, LUBNA HECTOR, CINDI HEIN, SHERRY HIDLEBAUGH, TAYLOR HOBBS, MICHELLE HOWARD INDIVIDUALLY AND ON BEHALF OF M.L., A MINOR, MARIUM HUSSAIN, TRACIE HUNT, TERRILYN HUNTER, CHARLYNE | **CASE NO. 1:20-cv-9717**<br><br>**COMPLAINT:**<br><br>1. **BREACH OF EXPRESS WARRANTY**<br>2. **BREACH OF IMPLIED WARRANTY**<br>3. **VIOLATION OF CONSUMER PROTECTION LAWS**<br>4. **NEGLIGENCE – DANGEROUS DESIGN**<br>5. **NEGLIGENCE – FAILURE TO WARN**<br>6. **NEGLIGENCE – FAILURE TO TEST**<br>7. **STRICT PRODUCT LIABILITY**<br><br>**DEMAND FOR JURY TRIAL** |

**JACOBS-BURROWS, LESLIE JETER, ALEXIS JOHNSON, LIANA KANAANEH, TIFFANY KEATING, SARAH KELLY, SUSAN KING, KATHERINE KOZY, KATRINA LEE, SAMITIA LEE, NICOLE LOVITT, AYESHA MALIK, HOLLY MATESKY, ALMA MEDINA, ANA MENDOZA, DANIELA MENDOZA, LAURIE MILLER, NABILA MOHAMMED, HUONG NGUYEN, ANDREA PATIN, ASIA PERKINS, KYTO RAINES, ALLYSON RAINEY, LESLIE RAMOS, VILMA RAMOS, DANIELLE RAND BYRD, TARYN RAY, MIKA REED, CASSIDY REPHANN, KELLY REPHANN, WHITNEY RICE, ANGELA SHUFORD, TARA SPARKS, SEWIT SIUM, TRACI STEO, REBECCA TAYLOR, CHERYL THERIAULT, KRISTINA THOMAS, TARYN TOMASIK, YESSENIA TORRES, ASHLEY VALENTIN, BOBBIE VANSLYKE, KENIA VAZQUEZ, SARINA VERGARA, MICHELLE WALTON, ANGHARAD WARING, SALLY WARM, GINI WARNER, NANCI WEITZMAN, JANICE WILLIAMS, BRITNEY WINTERS, KRISTIN WYNN, JENNIFER ZUNIGA, NIKOLA ZURAK**

            **Plaintiffs,**

    **v.**

**DEVA CONCEPTS, LLC,**

            **Defendant.**

---

Plaintiffs Crystal Adams, Huguette Ampudia, Ericka Applebee, Dayana Ariza-Gonzalez, Steffane Barrett, Rachel Bird, Randy Ellen Blaustein, Mary Ellen Brandt, Corey Cain, Stacey Carpenter, Ashley Carter, Amanda Clay, Janet Cleary, Addison Cline, Dannah Collins, Jessica Collins, Kelsie Coray, LaDawn Craft Parrish, April Creel, Lacey Croker, Alicia Da Cruz, Esraa Darwish, Bailey Davall, Shannon Daversa, Daniele DeGrandis-Kneer, Megan Dickey, Marisa Edwards, Vanessa Esparza, Melissa Evans, Keonte' Fisher, Alison Fitzwilliam, Susan Fleming,

Hannah Fletcher, Juanita Garcia, Brittainy Hall, Josephine Harris, Tara Hastoo, Rebecca Hawk, Lubna Hector, Cindi Hein, Sherry Hidlebaugh, Taylor Hobbs, Michelle Howard individually and on behalf of M.L., a minor, Marium Hussain, Tracie Hunt, Terrilyn Hunter, Charlyne Jacobs-Burrow, Leslie Jeter, Alexis Johnson, Liana Kanaaneh, Tiffany Keating, Sarah Kelly, Susan King, Katherine Kozy, Katrina Lee, Samitia Lee, Nicole Lovitt, Ayesha Malik, Holly Matesky, Alma Medina, Ana Mendoza, Daniela Mendoza, Laurie Miller, Nabila Mohammed, Huong Nguyen, Andrea Patin, Asia Perkins, Kyto Raines, Allyson Rainey, Leslie Ramos, Vilma Ramos, Danielle Rand Byrd, Taryn Ray, Mika Reed, Cassidy Rephann, Kelly Rephann, Whitney Rice, Angela Shuford, Tara Sparks, Sewit Sium, Traci Steo, Rebecca Taylor, Cheryl Theriault, Kristina Thomas, Taryn Tomasik, Yessenia Torres, Ashley Valentin, Bobbie VanSlyke, Kenia Vazquez, Sarina Vergara, Michelle Walton, Angharad Waring, Sally Warm, Gini Warner, Nanci Weitzman, Janice Williams, Britney Winters, Kristin, Wynn, Jennifer Zuniga, Nikola Zurak (collectively, "Plaintiffs"), through counsel, files this Original Complaint against Defendant Deva Concepts, LLC d/b/a DevaCurl ("Defendant") and respectfully state as follows:

## NATURE OF THE ACTION

1.      Plaintiffs have sustained personal and economic injury in connection with and as a result of their purchase and use DevaCurl hair care products, including, but not limited to "DevaCurl No-Poo Original" non-lathering conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch

Coconut Curl Elongator, Wavemaker, and DevaCurl Ultra Defining Gel (the "Products"). Defendant designed, manufactured, marketed, distributed and sold the Products.

2.      By this action, Plaintiffs seek redress for their personal injuries, primarily to their hair and scalp and including injury to or disruption of Plaintiffs' endocrine and autoimmune systems, among other things. Plaintiffs also seek redress for, and to stop, Defendant's unfair, false and deceptive advertising and marketing of the Products.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(a) and 1332(d)(1) because this is a lawsuit is brought by more than 100 plaintiffs in which over $75,000 is at issue per individual and over $5 million at issue in the aggregate and many Plaintiffs are citizens of states other than Defendants' state of citizenship.

4.      This court also has personal jurisdiction over Defendant because Defendant is a New York limited liability company, resides in New York, and has continuous, systematic, and substantial contacts within this District and the State of New York. Further, Defendant has committed unlawful and tortious acts in this District and the State of New York that it knew or should have known would cause injury to Plaintiffs—acts which give rise to the causes of action asserted herein. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York and Defendant's Products are advertised, marketed, distributed, and sold throughout this District and across the State of New York. Defendant is authorized to do business in New York and has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant (1) conducts substantial business in this District, including, but not limited to, sales of the Product and the operation of two DevaCurl salons, (2) has sufficient minimum contacts with this District, and (3) otherwise purposely avail themselves of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

6.      Defendant contends that New York law applies to all claims.[1]

7.      Plaintiff Crystal Adams is a citizen of Oregon, residing in Portland, Oregon.

8.      Plaintiff Huguette Ampudia is a citizen of New York, residing in New York City, New York.

9.      Plaintiff Ericka Applebee is a citizen of New York, residing in Auburn, New York.

10.     Plaintiff Dayana Ariza-Gonzalez is a citizen of New York, residing in Bronx, New York.

11.     Plaintiff Steffane Barrett is a citizen of Canada, residing in Toronto, Ontario, Canada.

12.     Plaintiff Rachel Bird is a citizen of Massachusetts, residing in Boston, Massachusetts.

13.     Plaintiff Randy Ellen Blaustein is a citizen of California, residing in San Francisco, California.

14.     Plaintiff Mary Ellen Brandt is a citizen of Texas, residing in Aledo, Texas.

15.     Plaintiff Mary Corey Cain is a citizen of New York, residing in Brooklyn, New

---

[1] https://www.devacurl.com/us/terms-conditions

York.

16.     Plaintiff Stacey Carpenter is a citizen of North Carolina, residing in Greensboro, North Carolina.

17.     Plaintiff Ashley Carter is a citizen of Maryland, residing in Randallstown, Maryland.

18.     Plaintiff Amanda Clay is a citizen of Illinois, residing in Quincy, Illinois.

19.     Plaintiff Janet Cleary is a citizen of Minnesota, residing in Hopkins, Minnesota.

20.     Plaintiff Addison Cline is a citizen of Montana, residing in Billings, Montana.

21.     Plaintiff Dannah Collins is a citizen of California, residing in North Hollywood, California.

22.     Plaintiff Jessica Collins is a citizen of Texas, residing in Austin, Texas.

23.     Plaintiff Kelsie Coray is a citizen of California, residing in Modesto, California.

24.     Plaintiff LaDawn Craft Parrish is a citizen of Georgia, residing in Athens, Georgia.

25.     Plaintiff April Creel is a citizen of Florida, residing in Lakewood, Florida.

26.     Plaintiff Lacey Croker is a citizen of North Carolina, residing in Charlotte, North Carolina.

27.     Plaintiff Alicia Da Cruz is a citizen of Florida, residing in Homestead, Florida.

28.     Plaintiff Esraa Darwish is a citizen of California, residing in Glendale, California.

29.     Plaintiff Bailey Davall is a citizen of Somerville, residing in Somerville, Massachusetts.

30.     Plaintiff Shannon Daversa is a citizen of Virginia, residing in Aldie, Virginia.

31.     Plaintiff Daniele DeGrandis-Kneer is a citizen of Pennsylvania, residing in Warminster, Pennsylvania.

32.     Plaintiff Megan Dickey is a citizen of Alabama, residing in Enterprise, Alabama.

33.     Plaintiff Marisa Edwards is a citizen of New York, residing in New Rochelle, New York.

34.     Plaintiff Vanessa Esparza is a citizen of Texas, residing in Dallas, Texas.

35.     Plaintiff Melissa Evans is a citizen of New York, residing in Bronx, New York.

36.     Plaintiff Keonte' Fisher is a citizen of Virginia, residing in Norfolk, Virginia.

37.     Plaintiff Alison Fitzwilliam is a citizen of Oklahoma, residing in Choctaw, Oklahoma.

38.     Plaintiff Susan Fleming is a citizen of Georgia, residing in Augusta, Georgia.

39.     Plaintiff Hannah Fletcher is a citizen of Georgia, residing in Dallas, Georgia.

40.     Plaintiff Juanita Garcia is a citizen of Texas, residing in San Antonio, Texas.

41.     Plaintiff Brittainy Hall is a citizen of Tennessee, residing in Antioch, Tennessee.

42.     Plaintiff Josephine Harris is a citizen of Arkansas, residing in Harrison, Arkansas.

43.     Plaintiff Tara Hastoo is a citizen of Canada, residing in Pickering, Ontario.

44.     Plaintiff Rebecca Hawk is a citizen of Washington D.C., residing in Washington D.C.

45.     Plaintiff Lubna Hector is a citizen of Missouri, residing in St. Charles, Missouri.

46.     Plaintiff Cindi Hein is a citizen of Utah, residing in Deweyville, Utah.

47.     Plaintiff Sherry Hidlebaugh is a citizen of Illinois, residing in Sherman, Illinois.

48.     Plaintiff Taylor Hobbs is a citizen of Colorado, residing in Arvada, Colorado.

49.     Plaintiff Michelle Howard is a citizen of Louisiana, residing in Metairie, Louisiana.

50.     Plaintiff Marium Hussain is a citizen of Canada, residing in Mississauga, Ontario, Canada.

51.     Plaintiff Tracie Hunt is a citizen of South Dakota, residing in Sioux Falls, South

Dakota.

52.     Plaintiff Terrilyn Hunter is a citizen of California, residing in Spring Valley, California.

53.     Plaintiff Charlyne Jacobs-Burrow is a citizen of North Carolina, residing in Clayton, North Carolina.

54.     Plaintiff Leslie Jeter is a citizen of Texas, residing in Spring, Texas.

55.     Plaintiff Alexis Johnson is a citizen of Missouri, residing in Kansas City, Missouri.

56.     Plaintiff Liana Kanaaneh is a citizen of California, residing in San Francisco, California.

57.     Plaintiff Tiffany Keating is a citizen of Connecticut, residing in Danbury, Connecticut.

58.     Plaintiff Sarah Kelly is a citizen of South Carolina, residing in Columbia, South Carolina.

59.     Plaintiff Susan King is a citizen of Virginia, residing in Aldie, Virginia.

60.     Plaintiff Katherine Kozy is a citizen of California, residing in Santa Clara, California.

61.     Plaintiff Katrina Lee is a citizen of Minnesota, residing in Saint Paul, Minnesota.

62.     Plaintiff Samitia Lee is a citizen of Virginia, residing in Woodbridge, Virginia.

63.     Plaintiff M. L., a minor, is a citizen of Louisiana, residing in Metairie, Louisiana.

64.     Plaintiff Nicole Lovitt is a citizen of California, residing in Oakland, California.

65.     Plaintiff Ayesha Malik is a citizen of Alaska, residing in Anchorage, Alaska.

66.     Plaintiff Holly Matesky is a citizen of Maryland, residing in Havre de Grace, Maryland.

67.     Plaintiff Alma Medina is a citizen of Massachusetts, residing in Brookline, Massachusetts.

68.     Plaintiff Ana Mendoza is a citizen of Florida, residing in Hialeah, Florida.

69.     Plaintiff Daniela Mendoza is a citizen of Florida, residing in Hialeah, Florida.

70.     Plaintiff Laurie Miller is a citizen of Ohio, residing in Akron, Ohio.

71.     Plaintiff Nabila Mohammed is a citizen of California, residing in Chino Hills, California.

72.     Plaintiff Huong Nguyen is a citizen of Indiana, residing in Jeffersonville, Indiana.

73.     Plaintiff Andrea Patin is a citizen of Burbank, residing in Burbank, California.

74.     Plaintiff Asia Perkins is a citizen of Connecticut, residing in Vernon, Connecticut.

75.     Plaintiff Kyto Raines is a citizen of Georgia, residing in Alpharetta, Georgia.

76.     Plaintiff Allyson Rainey is a citizen of California, residing in Los Angeles, California.

77.     Plaintiff Leslie Ramos is a citizen of Florida, residing in Orlando, Florida.

78.     Plaintiff Vilma Ramos is a citizen of California, residing in Palmdale, California.

79.     Plaintiff Danielle Rand Byrd is a citizen of Virginia, residing in Richmond, Virginia.

80.     Plaintiff Taryn Ray is a citizen of Arizona, residing in Mesa, Arizona.

81.     Plaintiff Mika Reed is a citizen of Illinois, residing in Carterville, Illinois.

82.     Plaintiff Cassidy Rephann is a citizen of California, residing in Northridge, California.

83.     Plaintiff Kelly Rephann is a citizen of South Carolina, residing in Gray Court, South Carolina.

84.     Plaintiff Whitney Rice is a citizen of Georgia, residing in Powder Springs, Georgia.

85.     Plaintiff Angela Shuford is a citizen of Virginia, residing in Arlington, Virginia.

86.     Plaintiff Tara Sparks is a citizen of Indiana, residing in Goshen, Indiana.

87.     Plaintiff Sewit Sium is a citizen of New York, residing in Brooklyn, New York.

88.     Plaintiff Traci Steo is a citizen of Maryland, residing in Randallstown, Maryland.

89.     Plaintiff Rebecca Taylor is a citizen of Texas, residing in Flower Mound, Texas.

90.     Plaintiff Cheryl Theriault is a citizen of Canada, residing in New Maryland, New Brunswick.

91.     Plaintiff Kristina Thomas is a citizen of New York, residing in Hampton Bays, New York.

92.     Plaintiff Taryn Tomasik is a citizen of New York, residing in Albany, New York.

93.     Plaintiff Yessenia Torres is a citizen of California, residing in South El Monte, California.

94.     Plaintiff Ashley Valentin is a citizen of New York, residing in Ridgewood, New York.

95.     Plaintiff Bobbie VanSlyke is a citizen of Mississippi, residing in Ripley, Mississippi.

96.     Plaintiff Kenia Vazquez is a citizen of Florida, residing in Deltona, Florida.

97.     Plaintiff Sarina Vergara is a citizen of Pennsylvania, residing in Philadelphia, Pennsylvania.

98.     Plaintiff Michelle Walton is a citizen of California, residing in Long Beach, California.

99.     Plaintiff Angharad Waring is a citizen of the United Kingdom, residing in Aberystwyth, Ceredigion

100.    Plaintiff Sally Warm is a citizen of Tennessee, residing in Chattanooga, Tennessee.

101.    Plaintiff Gini Warner is a citizen of California, residing in Laguna Beach, California.

102.    Plaintiff Nanci Weitzman is a citizen of Maryland, residing in Bethesda, Maryland.

103.    Plaintiff Janice Williams is a citizen of Texas, residing in Arlington, Texas.

104.    Plaintiff Britney Winters is a citizen of North Carolina, residing in Fayetteville, North Carolina.

105.    Plaintiff Kristin Wynn is a citizen of New York, residing in Brooklyn, New York.

106.    Plaintiff Jennifer Zuniga is a citizen of Florida, residing in Miramar, Florida.

107.    Plaintiff Nikola Zurak is a citizen of Illinois, residing in Chicago, Illinois.

108.    Deva Concept's, LLC is a New York limited liability corporation with its principal place of business at 75 Spring Street, Floor 8, New York, New York 10012.

## FACTUAL BACKGROUND

109.    Defendant designed, manufactured, marketed, sold and distributed the Products throughout the United States at all times relevant to this Complaint.

110.    Defendant markets the Products primarily to curly and wavy-haired women. Defendant's promotions encourage consumers to use the Products to the exclusion of traditional shampoos and all other brands.  It does this in a number of ways.

111.    By way of example, according to Defendant, the Products are revolutionary.  More specifically, Defendant's website devacurl.com/us claims that, in 2002, Defendant developed the No-Poo Original product, a cleansing conditioner Defendant describes as an "innovative new hair category" a "game-changing alternative to traditional shampoo" and "first of its kind."[2] "No-Poo changed the industry and the lives of countless curlfriends."[3]

---

[2] https://www.devacurl.com/us/curl-101/our-story
[3] https://www.devacurl.com/us/curl-101/product-philosophy

112.    Defendant also touts the Products as "rooted in curl science," efficacious and subject to "extensive product testing."[4] "Here at Deva, we're all about the science behind hair."[5] It claims to "partner with talented chemists researching natural and functional ingredients, technologies, product textures, and innovative ways to" make the Products efficacious.[6]

113.    In the name of science and hair health, Defendant has placed "sulfates, parabens and silicones" on its ingredient "No List."[7] Defendant tells consumers it keep its "ingredients simple—everything curls need and nothing they don't."[8] For those reasons, Defendant claims "All DevaCurl products—even the stylers—are gentle,"[9] free of harsh chemicals (as opposed to traditional shampoos),[10] made from "nature and functional ingredients."[11] In other words: Defendant claims the Products are healthy, safe and effective.

114.    At the same time, Defendant demonizes traditional shampoos, which it claims contains harsh ingredients that strip the hair of its natural oil and lead to frizz, damage and other undesirable results:

> The easiest thing you can do to get gorgeous curls and waves is to ditch your shampoo. Without the harsh chemicals found in most traditional formulas, your hair-whether it is wavy, curly or super curly—is transformed. No more dryness. No more frizz. [12]

After a consumer forgoes shampoo to use DevaCurl products exclusively, "all you're left with is

---

[4] https://www.devacurl.com/us/curl-101/product-philosophy
[5] https://www.devacurl.com/blog/devacurl-101-the-structure-of-hair/
[6] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary
[7] https://www.devacurl.com/us/curl-101/product-philosophy, "Ingredient 101," "The DevaCurl Ingredient 'No' List."
[8] https://www.devacurl.com/us/curl-101/our-story
[9] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/
[10] https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html
[11] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary
[12] https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html

beautiful, healthy curls that can handle any style you feel like trying."[13] "[F]rizz, stubborn tangles, dullness and dryness will improve big-time (if not flat-out disappear) when you start using one of our gentle cleaners followed by a nourishing DevaCurl conditioner."[14] A consumer's only fear is how much she will like the results. "Warning: Once you go Deva, you'll be hooked!"[15]

115.    In addition to science, testing and expertise, Defendant attributes the Products' many virtues to input from its customers, to whom it refers to as the "Devoted DevaCurl Community."[16]

> Every product is rooted in what we call, the "curl conversation." This conversation started 25 years ago at Devachan Salon. We listen to your story, your needs, your lifestyle, and develop products that will not only enhance your curls, but also enhance your life.[17]

In this way, Defendant suggests the DevaCurl brand is much more than the Products, it is a "philosophy." Indeed, Defendant uses the tagline, "It's not dogma, it's Deva®."[18]

116.    Furthermore, Defendant claims the Products enjoy wild popularity and celebrity endorsement. On its "Our Story" page from itswebsite as of January 31, 2018, Defendant claims No-Poo "quickly be[came] a cult favorite" after its 2002 launch and has since "won dozens of awards from several different magazines."[19] It also describes the SuperCream Coconut Curl Styler as a "hit" and claims that, with the addition of Low-Poo, One Conditioner Delight and Wavemaker Touchable Texture Whip, "DevaCurl has officially become the go-to brand for all curl kind."[20]

---

[13]   https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html

[14] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, "Getting started with Deva cleansers and conditioners"

[15] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, Introduction

[16] https://www.devacurl.com/us/deva-community-statement

[17] https://www.devacurl.com/us/curl-101/product-philosophy

[18] https://www.linkedin.com/company/devacurl

[19] https://web.archive.org/web/20180216055350/http://www.devacurl.com/about.html, 2002 entry

[20] *Id.*, 2016 entry

Now, Defendant goes as far as to claim, "No-Poo changed the industry and the lives of countless curlfriends."[21]

117.    Similarly, Defendant suggests celebrities and other well-known individuals use the Products, even naming one of its website buttons "celeb news," where it includes pictures of Sarah Jessica Parker, Lisa Bonet, Keri Russell, among others.[22]  Here Defendant features stylists to the stars and other stories that are meant to suggest the Products are the secret to celebrity-looking hair.

118.    By way of example, on September 19, 2017, Defendant's DevaCurl website featured an interview with a Deva Certified Stylist, Christin Brown.[23] Despite its actual subject, the article— which is cleverly titled, "curly hair crush:  yara shahidi—spends very little time on Brown and, instead, works to suggest the actors from the television show, Black-ish, use the Products. In fact, the article begins with reference to show's stars attending the then-recent Emmy's.  It mentions how the show "called out Bow [a show character] for her weekly haircuts at Devachan," a salon operated by Defendant. It is mid-article before the reader learns anything about Brown, its subject, and then, only in connection to her work with Yara Shahidi, one of the show's actors. "So we turn to Christin, who's been working with Yara for about two years, to find out how she achieves those amazing curls." In this way, the article suggests Shahidi endorses the Products and that the Products are her "secret" to a "fierce head of hair."

119.    A July 12, 2019 article offers a more recent example using the same technique.[24]  In this case, the article features an interview of a stylist to Michelle Obama, describing how the stylist "used DevaCurl on Obama to style her beautiful ombre curls for" Essence Fest. "We caught up with

---

[21] https://www.devacurl.com/us/curl-101/our-story, "we took the 'poo; out of shampoo"
[22]

[23] https://www.devacurl.com/blog/curly-hair-crush-yara-shahidi/
[24] https://www.devacurl.com/blog/deva-inspired-stylist-yene-damtew-used-devacurl-michelle-obamas-iconic-curls-essence-fest/

Damtew [the stylist] to learn how she achieved [Obama's] look." In this way, Defendant suggests Michelle Obama, as well as her stylist, endorse the Products.

120.    Defendant reinforces these surreptitious celebrity endorsements with "Transformation" pictures, showing before and after photos that purport to demonstrate how the average person can adopt these celebrity "secrets" as their own.[25]  However, these "average" people are actually paid or sponsored influencers, who often engage professional help for makeup and hair.

121.    In that same vein, Defendant pays to have the Products featured in magazines and then brags about is press coverage, never disclosing the coverage amounts to no more than a purchased ad.[26]  It also pays for mentions on blogs and in other social media.

122.    To proselytize the Deva "philosophy," and further entangle and recruit additional consumers, Defendant engages "DevaCurl ambassadors," whom the company has identified as influencers and whom it incentivizes to promote the Products, in most cases without disclosing that they are affiliated with Defendant. Defendant promoted the Ambassador program on its website until early 2020, when one of its most influential Ambassadors expressed serious concerns about the safety of the Products.

123.    Defendant directly operates two Devachan salons, both in New York City.[27]  But "[d]on't worry" if you are not near the city, Defendant "train[s] stylists all over the country so you can" buy Defendant's services and the Products.[28]  Indeed, Defendant offers a DevaCurl academy at which a stylist can become DevaCurl certified after completing three levels of paid curriculum.[29]

---

[25] https://www.devacurl.com/us/curl-101/transformations
[26] https://web.archive.org/web/20180123163258/http://www.devacurl.com/about/press.html
[27] https://www.devacurl.com/us/salons
[28] *Id.*
[29] https://www.devacurlpro.com/us/education

Core to the DevaCurl curriculum are the Products.[30]  For those, Defendant offers *free* online training so that "anywhere, anytime" a stylist can begin using—and, of course, selling—the Products. Defendant promotes stylists who complete the paid training on its website through a directory program on its website,[31] by providing marketing materials[32] and strategy and through stylist support services.[33]

124.    Defendant also sells the Products through major retailers, such as Sephora, Walgreens, Ulta Beauty, Target and Wal-Mart.

125.    The personal "Deva Transformation" is the denouement to Deva indoctrination.  "If you find your curls damaged, lifeless, or you're just overall unhappy with them, it's time for a transformation."[34]  "[A] Deva Transformation means quitting shampoo." It starts with a "DevaCut" at one of Defendant's salons.[35]  It begins and ends with "completely switching to products that are formulated without sulfates, silicones, and parabens to get the most out of your curls."[36] One testimonial featured on Defendant's website sums up the marketing goal:  "[P]lanning on throwing out all my curly products and being strictly deva curl.  (sic) i'm now a deva girl."[37]

126.    By way of the its website, magazine advertising, salons, Ambassador program, DevaCurl Academy, DevaCurl certified and other DevaCurl-exclusive stylists, endorsements, transformation photos, testimonials, retail suppliers and other direct marketing channels, Defendant's promotion of the Products includes multiple false and/or misleading representations,

---

[30] https://www.devacurlpro.com/us/education, Product Pro

[31] https://www.devacurl.com/finder

[32] https://www.devacurlpro.com/us/marketing-downloads

[33] https://www.devacurlpro.com/us/education/stylist-finder, "got questions, we've got answers!"

[34] https://pblog.devacurl.com/blog/guide-deva-transformations/, "what is a Deva Transformation?"

[35] *Id.*, "where do I start?"

[36] *Id.*, "what is a Deva Transformation?"

[37] https://www.devacurl.com/us/products/kits/how-to-quit-shampoo-kit/v/29942629630034

including, but not limited to:

     a.   The Products are safe;

     b.   The Products clean and condition hair and scalp;

     c.   The Products are gentle;

     d.   The Products are natural;

     e.   The Products are free of harmful chemicals, such as silicones, sulfates, parabens, formaldehyde and other allergens;

     f.   The Products should be used to exclusion of traditional cleansers;

     g.   The Products are efficacious;

     h.   The Products create beautiful, healthy curls and leave hair smoother, shinier, stronger, fuller, and more manageable with no frizz;

     i.   The Products are designed based on science; and

     j.   The Products are extensively and adequately tested.

127. By repeating these claims over and over on its website, in social media pages and sponsored placement ads online and in magazines, Defendant banks on the psychological concept known as the "illusion of truth." The more you repeat a claim, the more likely your audience is to believe it is true.

128. In fact, the Products are none of these things. The Products contain large quantities of non-water soluble oils and insufficient cleansers to remove these oils, leading to build up and impacting of sebum, the Product itself, dirt and debris on the scalp and in the hair follicle. This build up increases over time and is more likely, the more the product is used.

129. These conditioning agents include glycerin and other plasticizing agents, all of which reduce the strength of hair, leading to breakage and damage, particularly with curly hair that

is drier and more fragile than straight hair because of the physiology of the hair follicle.

130.    This overuse of conditioners and plasticizing agents combined with underuse of sufficient cleanser leads to very serious injuries. Because the Products coat the hair and scalp with substances that elude removal by even regular shampoos, must less the Products' inadequate cleaners, in addition to weakened and damaged hair, users develop clogged, inflamed, impacted and infected hair follicles—in other words, Seborrheic Dermatitis ("SD")—characterized by red, itchy, inflamed, blistered, flaking or scaling skin as well as hair loss.  The American Hair Loss Association explains:

> Although all this inflammation is not specifically directed at the hair follicle, if hair follicles are in the vicinity of the inflammatory cells then they can still be adversely affected. Hair follicles find inflamed skin an unhealthy environment in which to grow. Thus seborrheic dermatitis may non-specifically cause diffuse hair loss.[38]

This, in turn, can lead to yeast and bacterial infections as microbes have been shown to increase with SD and thrive on the conditioning agents found in the Products.[39]  Defendant concedes as much.  In a blog about hair shedding, Defendant points to scalp build up as a potential cause of hair loss.[40]

131.    Some of the Products, including Set it Free, which is a leave on product, also contain formaldehyde and/or formaldehyde releasers[41]—an allergen and endocrine disrupter to which such a relatively large and growing portion of the population is allergic or sensitized. In fact the

---

[38] *See* American Hair Loss Association, *Seborrheic Dermatitis.* Found at https://www.americanhairloss.org/types_of_hair_loss/infectious_agents.html.
[39] *Id.*
[40] https://www.devacurl.com/blog/hair-shedding -101
[41] Formaldehyde releaser is term used to refer to ingredients that release formaldehyde over time. As industry standard has moved away from use of the formaldehyde, manufacturers like Defendant use formaldehyde releasers in attempt to fool consumers since the chemical names for these components are not widely known. Hereinafter, Plaintiff refers to both formaldehyde and formaldehyde releasors as "formaldehyde."

American Contact Dermatitis Society named it allergen of the year in 2015. In addition, formaldehyde is one of only five chemicals that have been listed by the Consumer Product Safety Commission as a "strong sensitizer" since 1961.

132.    When it comes to beauty products sold in the U.S., there is an absence of regulation setting standards for the use of formaldehyde and similar allergens and the U.S. Food and Drug Administration ("FDA") has little authority to address it. The law does not require cosmetic companies like Defendant to share formulae, testing or adverse event information with the FDA—before or after the product is placed on the market. Nevertheless, leaders in the industry have abandoned or are in the process of abandoning use of formaldehyde, particularly in leave on products.

133.    The Products also contain plant extracts not commonly used in cosmetic products and to which many consumers may be sensitized or allergic.

134.    Likewise, Defendant generically lists "fragrance" on its ingredient list without disclosing the ingredients it uses for this purpose. This concealment is suspicious, especially given that regulatory agencies and other scientists have long found fragrance ingredients to be problematic in cosmetic products.  Hydroxycitronellal and a related substance, Hydroxyisohexyl 3-Cyclohexene Carboxaldehyde, commonly referred to collectively as HICC, are good examples. Similar to formaldehyde, HICC causes contact allergic dermatitis in a large and quickly growing percentage of the population.[42] "HICC has for more than 10 years been recognized as an important allergen with more cases documented in the scientific literature than for any other fragrance

---

[42] Scientific Committee on Consumer Safety, Opinion on Fragrance Allergens in Cosmetic Products, at 8, 11-14, 98-102, found at
https://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_073.pdf.

chemical in this period.  HICC has been shown to be a significant cause of disease . . . ."[43] Consequently, in 2012, the SCCS recommended HICC be banned for use in all consumer products.[44] In 2017, the SCCS found HICC (and fragrances atranol and chloroatranol) unsafe for use in cosmetic products[45] and the European Union has since banned their use.

135.    As with formaldehyde, there is currently no U.S. regulation for fragrance substances like HICC.  However, the International Fragrance Association ("IFRA") promulgates standards known as the IFRA Standards and part of the IFRA Code of Practice, which "form the basis for globally accepted and recognized risk management system for the safe use of fragrance ingredients." In 2014, IFRA also called for the discontinuation of HICC in consumer products.[46]

136.    Sensitivity to formaldehyde, plant extracts and fragrance ingredients may develop over time, and the likelihood of becoming sensitized or allergic to it increases with the amount and duration of exposure and upon subsequent exposure. Those with sensitivity can have reactions ranging from allergic contact dermatitis ("ACD"), resulting in red, itchy, inflamed and/or blistered skin, to severe chemical burns. ACD (and chemical burns), in turn, lead to extreme diffuse hair loss according to treating physicians[47] and researchers.[48] As one Yale trained dermatologist explained,

> [I]f the scalp gets inflamed enough from the use of a cosmetic product, hair loss can certainly be a symptom. The condition is called allergic contact dermatitis

---

[43] *Id.* at 102.

[44] *Id.* at 8.

[45] *See* http://www.echemi.com/cms/3261.html.

[46] *See* Comments to EU Commission Proposals on Fragrance Allergens, Internt'l Fragrance Assoc'n, May 9, 2014, found at https://ifrafragrance.org/docs/default-source/position-papers/23431_pp_2014_05_09_ifra_comments_to_public_consultation_on_allergens_9_may_2014-(1).pdf?sfvrsn=188bcd9d_6.

[47] *See* Dr. Mona Gohara, Your Conditioner Could Actually be Causing Hair Loss, Fitness, (APP 133-134).

[48] Dr. Antonella Tosti, et al., *Telogen Effluvium After Allergic Contact Dermatitis of the Scalp*, Arch Dermatol., February 2001, (APP 135-147).

(ACD), and it causes irritated, often itchy, red rashes in areas of contact with various chemical products. Preservatives, dyes, surfactants, fragrances, and plant extracts are among the common ingredients that cause this problem.[49]

137.    In more serious cases, exposure to this sort of allergen can trigger a more systemic auto immune disease, such as alopecia areata, an auto-immune related hair loss. As discussed by the National Association of Alopecia Areata, a non-profit that "educates the public about alopecia areata,"[50] although its cause is still somewhat uncertain, alopecia areata is a condition understood at this time to be caused by, among other things, external substances, such as allergens.[51] Just as with ACD, the exposure stimulates the body's immune system, causing it to mistake—and attack— normal cells for foreign invaders.[52]

138.    Defendant's instructions for use of the Products exacerbates these injuries. Defendant tells customers the No-Poo products are the first in a three-step process to beautiful, healthy curls. Again, Defendant instructs customers to use its cleansing conditioner products (the "No-Poo" products) to the exclusion of all other cleansers, most especially traditional shampoo. It also directs users to apply the No-Poo products directly to their scalp one section at a time. "The product won't spread on its own, so use your fingertips to massage it evenly over the scalp. Take the time to really get in there with your fingers and rub vigorously all over your scalp."[53] The videos demonstrating this process encourages consumers to use large palmfuls of the Product for each section of the scalp, much more than is standard for other products.[54]

---

[49] *See* Dr. Mona Gohara, *Your Conditioner Could Actually be Causing Hair Loss*, Fitness Magazine.
[50] Nat'l Alopecia Areata Foundation, *About NAAF*, https://www.naaf.org/about.
[51] *See* Nat'l Alopecia Areata Foundation, *What You Need to Know About Alopecia Areata*, https://www.naaf.org/alopecia-areata.
[52] *See id.*
[53] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/
[54] https://www.devacurl.com/us/curl-101/how-to-deva-3-step/super-curly-deva-3-step

139.    Defendant also recommends use of a whole host of its leave on DevaCurl conditioners and styling products, increasing both the amount and duration of exposure in that way as well.

140.    Defendant's marketing of the Products also exacerbates injury and has prevented Plaintiffs and others from discovering they had suffered cognizable injuries caused by Defendant's wrongful conduct.  It never occurred to Plaintiffs and other users that the Products—touted by Defendant as gentle, safe, free from harsh chemicals and science-based—could actually be hurting their hair and scalp, not helping.  To the contrary, many believed their situation would have been worse but for the Products. Some worried, along with their families, their hair loss, scalp issues and other personal injuries could be symptoms of a dire health condition. Many of them went from doctor to doctor desperate for answers, all to no avail.

141.    Defendant has made matters worse by failing to disclose—indeed, actively concealing— the number of complaints of hair loss, scalp issues and other injuries it has received from customers and the FDA. Defendant describes most hair shedding as normal and unavoidable.[55] Defendant attributes excessive hair loss to a laundry list of other potential causes, such as stress, dandruff, losing weight, medical conditions, birth, among others.[56] Defendant has also removed discussion of these sorts of injuries from social media under its influence or control. Had Defendant disclosed these complaints, some Plaintiff would have identified the Products as the culprit much sooner, some could have avoided injury altogether and all would have had each other for comfort and support.

142.    While Defendant claims to conduct "extensive product testing," that testing amounts

---

[55] https://www.devacurl.com/blog/hair-shedding -101
[56] *Id.*

to no more than using its Products in its own Devachan salons."[57] This so-called testing is not scientific and it does not meet industry standards. At a minimum, a clinical study is controlled to isolate the product and ensure uniformity in its procedure, it includes a statistically significant number of participants and it uses doctors and scientists to assess exposure on par to a consumer's actual use of the product for a time period that allows for scientifically sound results. Rather than engage in scientific studies to ensure product safety, Defendant actually belittles some industry standard testing methods, "[w]e test our products on actual people, not mannequins or hair swatches. Devachan Salon is our thinktank and product *playground* . . . ."[58]

143.    Only now, after thousands of people have reported hair loss, scalp issues and other personal injuries, Defendant claims to have "worked with an independent third-party toxicologist to verify the safety of [its] (sic) formulas."[59] It has refused, however, to make those tests public despite the desperate pleas of Plaintiffs and other injured consumers who are trying to understand why and to what extent they have been harmed. Instead, Defendant has posted summaries of certain testing it now claims was performed prior to marketing the product, including the very testing done on mannequins or hair swatches it denounces in other areas of its website.[60]

144.    A review of the actual test results concealed by Defendant are important; nevertheless, Plaintiffs can draw certain conclusions from the summaries alone. For instance, many of the tests which Defendant claims prove the Products safe, such as the product stability and ocular tests, are not designed to detect defects that would result in Plaintiffs' injuries. These tests

---

[57] https://www.devacurl.com/us/curl-101/our-story, extensive product testing
[58] https://www.devacurl.com/us/curl-101/our-story, curlfriend & stylist tested and approved (emphasis added)
[59] https://www.devacurl.com/us/deva-community-statement, (sic) devacurl statement
[60] https://devacurl-blog.s3.amazonaws.com/wp-content/uploads/2020/03/10140715/DevaCurl-Testing.pdf

do not exonerate the Products.

145.    Other testing, such as the Human Repeat Insult Patch Testing and Forty-Eight Hour Patch Testing, must use adequate concentrations of the product (and with a statistically significant number of test subjects) to give accurate indication of the Products' safety. Scientific standards for these concentrations have changed given new information about reactions at lower dosages. Unless these tests used the latest concentration standards, the results say nothing about product safety. In fact, given use of formaldehyde in some of the Products, we would necessarily expect a reaction in some percentage of the test subjects, and Defendant's claim that results show "no potential for dermal irritation or allergic contact sensitization" suggest the tests were not performed to standard.

146.    By way of a final example, the Toxicology reports to which Defendant refers must also take into account (1) scientific research revealing human reactions at much lower dosages than previously believed, (2) many—even most—of the Products are intended for leave on usage, (3) the extraordinary amount of the No-Poo products recommended for use by Defendant, and (4) how ingredients in the formulae work together, not just in isolation. What is more, Defendant does not even purport to have performed patch testing and toxicology reports for *all* of the Products.

147.    Although Defendant has received thousands of complaints and learned of countless others through the FDA, social media and major media outlets, it has failed and refused to recall any of the Products.  Nor has Defendant issued any new warnings or otherwise disclosed the defects and dangers associated with the Products.

148.    The following photographs depict the type of hair loss and scalp injury damage caused by the Products.











149.    In addition to hair loss and scalp injuries, some Plaintiffs have also suffered injury to their endocrine system—more specifically, infertility—and have experienced systemic auto immune responses.  This is in keeping with what we know about formaldehyde, which is not only an allergen, triggering auto immune responses, but also a carcinogenic linked to cancer as well as disruption of the endocrine system, which is responsible for making and regulating critical hormones.

## PLAINTIFF-SPECIFIC ALLEGATIONS

150.    Plaintiff Crystal Adams purchased the DevaCurl products between 2017-2020 online through Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of women of color using the product. Plaintiff was looking for a product that worked well with her hair type and kept curls hydrated and maintained the health of her hair.  Plaintiff used the Products as directed, including the use of Styling Cream-Touchable Curl Definer, Leave-In Decadence-Ultra Moisturizing Leave-In Conditioner, Ultra Defining Gel and One Condition Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

151.    Plaintiff Huguette Ampudia purchased the DevaCurl products between August 2018-February 2020 online through Ulta, Sephora and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on YouTube influencers, who echoed on representations made by Defendant, see supra, Background Facts.  Plaintiff used the Products as directed, including the use of Light Defining Gel, Supercream Coconut, B'Leave Styling Gel, NoPoo Decadence, Melt into Moisture Mask, One Condition Original and Frizz Volumizing Foam, to the exclusion of regular

shampoos.  Plaintiff suffered hair loss and hair breakage.

152.    Plaintiff Ericka Applebee purchased the DevaCurl products between April 2019-November 2019 online, at the Adonia Salon, Ulta Beauty and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's representation the Product is 100% cruelty free and 100% paraben, sulfate and silicone free.  Plaintiff used the Products as directed, including the use of No Poo, One Condition, B'Leave In, Ultra Defining Gel, Arc Angel Gel, Frizz Free Volumizing Foam, the Supercream Coconut Curl Styler, Styling Cream Touchable Curl Definer, Decadence Shampoo/Conditioner, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, pimple like sores on her chest, scalp and shoulders, and extremely dry skin and scalp.

153.    Plaintiff Dayana Ariza-Gonzalez purchased the DevaCurl products between 2012-May 2019 online through Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. In addition, Plaintiff relied on Defendant's discussion of the curly hair movement and how the Products are natural, including statements made by Sunkissalba in YouTube videos wherein she echoed Defendant's claims the Products were natural, high quality and highly recommended by others embracing their curls. Plaintiff used the Products as directed, including the use of No-Poo Original, No Poo Decadence, DevaCurl One Condition Decadence, DevaCurl Set it Free, DevaCurl Light Defining Gel, Deep Sea Repair Seaweed Strenghtening Mask, DevaCurl Buildup Buster Hair Cleanser, DevaCurl Supercream, DevaCurl Frizz Free Volumizing Foam, Melt into Moisture, Heaven in Hair, One Condition, DevaCurl Styling Cream, DevaCurl Ultra Defining

Gel, DevaCurl Arc Angel and DevaCurl Arc Angel Firm Hold Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and scalp/facial rash.

154.    Plaintiff Steffane Barrett purchased the DevaCurl products between February 2019-January 2020 at the Clore Beauty Supply Store based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on positive reviews of the Products, which we now know were manipulated by Defendant, and Defendant's claim the zero lathering meant the Products were safe and effecive.  Plaintiff used the Products as directed, including the use of DevaCurl No-Poo Original Zero Lather Conditioning Cleanser and DevaCurl One Condition Decadence Ultra Moisturizing Milk Conditioner, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

155.    Plaintiff Rachel Bird purchased the DevaCurl products between 2009-summer of 2019 online through Ulta and received them as gifts based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon she went to for her first DevaCut, who echoed representations made by Defendant, see supra, Background Facts. Plaintiff formed the belief based on those representations that the Productswere the gold standard for curly hair products. Plaintiff used the Products as directed, including the use of Lo-Poo, Buildup Buster, Arc Angel, Volumizing Foam, Wavemaker, One Condition Decadence and Original, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

156.    Plaintiff Randy Ellen Blaustein purchased the DevaCurl products between 2012-

2019 from Glama-Rama Salon and from the DevaCurl website based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff was introduced to the Products at the Madusalon, which is a DevaCurl Salon with stylists Defendant trained to give DevaCuts and sell and use the Products. The stylists at Madusalon echoed the representations made by Defendant, see supra, Background Facts.  Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers.  Plaintiff used the Products as directed, including the use of No-Poo, No-Poo Original, One Condition, One Condition Original, Low Poo Delight, AnGel, Ultra Defining Gel, Set it Free, Supercream, Build Up Buster, Melt into Moisture Mask, Deep Sea Repair, Beautiful Mess and Heaven in Hair, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash, fingernails that were dry, brittle and ridged and chronic eye infections.

157.    Plaintiff Mary Ellen Brandt purchased the DevaCurl products between 2010-2020 online through Amazon and in person at Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on the recommendation of her stylist, who echoed the representations made by Defendant, see supra, Background Facts.  Plaintiff used the Products as directed, including the use of Low Poo Cleanser, One Condition Conditioner, Mist-Er Right Refresher spray, Frizz Free Volumizing Foam, Ultra Defining Gel and Supercream to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

158.    Plaintiff Corey Cain purchased the DevaCurl products between January 2018-August 2020 online through Amazon and Target and in person at Target, Beauty Supply Stores,

CVS, Walgreens and Rite Aid based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products, particularly representations concerning the Products efficacy with regard to ethnic hair and ethnic curl patterns.  Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, No Poo Original Conditioner, Leave In Conditioner, Gel and Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

159.    Plaintiff, Stacey Carpenter purchased the DevaCurl products between January 2020-March 2020 at the Ulta Store, based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed in YouTube influencer videos.  Plaintiff used the Products as directed, including the use of Arc Angel Gel, One Conditioner, One Conditioner Decadence, Supercream, Mist-er Right Spray and Set It Free Spray, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

160.    Plaintiff Ashley Carter purchased the DevaCurl products between July 2017-January 2020 from the Looks Salon and from Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed the DevaSalon where Plaintiff had a DevaCut. Plaintiff used the Products as directed, including the use of No-Poo, One Condition, Mist-er Right, Light Defining Gel, Set it Free and Supercream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

161.    Plaintiff Amanda Clay purchased the DevaCurl products between June 2019-

January 2020 online through devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed, claims that were echoed by influencers on/in websites, posts, blogs, Instagram accounts and YouTube videos. Plaintiff used the Products as directed, including the use of Wavemaker, High Shine, One Condition Delight, Light Defining Gel, Frizz Free Foam, Low Poo Shampoo and Low Poo Delight, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

162.    Plaintiff Janet Cleary purchased the DevaCurl products between December 2014-December 2019 from Uptown Curl Salon, Ulta and online at devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied recommendations by her stylist at Uptown Curly Salon, who repeated representations made by Defendant, see supra, Background Facts, and convinced Plaintiff that getting a curly girl haircut and using DevaCurl products would make her love her curly hair. The Uptown Curly salon was a DevaCurl salon and pushed DevaCurl Products on it clients. Plaintiff used the Products as directed, including the use of Lo Poo Delight Shampoo, No Poo Original Shampoo, No Poo Decadence Shampoo, One Condition Delight, One Condition Original, Ultra Defining Gel, Frizz Free Volumizing Foam, Wavemaker and Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss and bald spots.

163.    Plaintiff Addison Cline purchased the DevaCurl products between September 2019-February 2020 in person at Ulta, based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use

of influencers. Plaintiff researched best product for curly hair and was drawn to DevaCurl as it claimed their entire line was for people with hair like hers. Plaintiff used the Products as directed, including the use of No Poo and One Conditioner to the exclusion of regular shampoos.  Plaintiff suffered hair loss and hair breakage.

164.    Plaintiff Dannah Collins purchased the DevaCurl products between 2017-2019 purchased through her hair stylist based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed in YouTube influencer videos.  Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, Deva Towel, Supercream, Arc Angel, Beautiful Mess, B'Leave-In, Ultra Definig Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration.

165.    Plaintiff Jessica Collins purchased the DevaCurl products between 2014-2020 Ulta and Sephora based on representations made by Defendant, see supra, Background Facts, regarding the brand ethos, packaging, mission and Defendant's representation it was the first come out with a "no poo" hair cleanser. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of NoPoo Original Zero Lather, DevaCurl One Condition Decadence Conditioner, Build Up Buster, DevaCurl Light Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss and hair breakage.

166.    Plaintiff Kelsie Coray purchased the DevaCurl products between January 2017-October 2019 online from devacurl.com and Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff

also relied on Defendant's depictions of hair transformations, product placements in magazines, use of influencers and DevaCurl ambassadors, which she followed online. Plaintiff used the Products as directed, including the use of One Condition Original, Original Low Poo Shampoo, B'Leave In, Ultra Defining Gel, Sea Repair Mask, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and tender spots on her scalp that would flare up.

167.    Plaintiff LaDawn Craft Parrish purchased the DevaCurl products between 2018-2019 online through Ulta and CosmoProf based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed in YouTube influencer videos. Plaintiff used the Products as directed, including the use of Original No Poo, Styling Cream, Spray Gel, Delight Low Poo Cleanser, Delight Conditioner, Wash Day Wonder, Build Up Buster, B'Leave In, Decadence Zero Lather Milk Cleanser, Decadence Ultra Moisturizing Milk Conditioner and Supercream Coconut Cream Styler, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

168.    Plaintiff April Creel purchased the DevaCurl products between October 2018-August 2019 online through Ulta and devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on the depictions of the Product from a friend who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Build Up Buster, Original Low Poo, One Condition Original, Low Poo Delight, One Condition Delight, Wavemaker, Melt Into Moisture, Light Defining Gel and Ultra

Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

169.    Plaintiff Lacey Croker purchased the DevaCurl products between 2018-2020 online through devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's claim the Products were the best available for curly hair,  are harmless for curly hair, contain no harsh chemicals and do not cause damage to curly hair.  Plaintiff used the Products as directed, including the use of PrePoo, Curly & Super Curly Cleanser, Curly & Super Curly Conditioner, Curly & Super Curly Leave ins, Curly & Super Curly Gels, Curly & Super Curly Styling Gel and Cream and hair masks, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

170.    Plaintiff Alicia Da Cruz purchased the DevaCurl products between May 2019-December 2019 in person at Target and Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed at the DevaCurl Salon, and good reviews of the Products for use on curly hair. Plaintiff used the Products as directed, including the use of Supercream Coconut Curl Styler and Arc Angel Gel to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

171.    Plaintiff Esraa Darwish purchased the DevaCurl products between June 2019-February 2020 online through Ulta, Cosmoprof and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's message about loving your natural hair and

DevaCurl's claim to cater to people, who like her, wanted to embrace their natural curls. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Decadence, Light Defining Gel, Styling Cream and Heaven in Hair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

172.    Plaintiff Bailey Davall purchased the DevaCurl products between August 2019-December 2019 in person at the CVS Pharmacy based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on positive reviews that repeated Defendant's claim the Products were the best available for curly hair. Plaintiff used the Products as directed, including the use of No-Poo Original Shampoo and Ultra Defining Gel to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and scalp/facial irritation and/or rash.

173.    Plaintiff, Shannon Daversa purchased the DevaCurl products between April 2018-February 2020 online through devacurl.com and in person at Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed in YouTube influencer videos. Plaintiff used the Products as directed, including the use of Low Poo Original, One Decadence Conditioner, Build Up Buster, Supercream, Ultra Defining Gel, Set it Free Mist, High Shine and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

174.    Plaintiff Daniele DeGrandis-Kneer purchased the DevaCurl products between April 2018-March 2020 in person through Ulta based on representations made by Defendant, see supra,

Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, Lo Poo Shampoo, One Condition Original and DevaCurl Curl Maker, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

175.   Plaintiff Megan Dickey purchased the DevaCurl products between 2012-2019 online from devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff started using DevaCurl shortly after finding The Curly Gurl Handbook by Lorraine Massey who was the owner of DevaCurl at the time. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of NoPoo Original, Original One Condition, Original Low Poo, Wavemaker, Original Styling Cream, Styling Foam and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and scalp/facial rash.

176.   Plaintiff Marisa Edwards purchased the DevaCurl products between 2000-2020 from hair salons including Devachan Salons, online from Amazon and Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff frequented the Devachan Salon in New York, whose stylists echoed the representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No Poo, One Conditioner Original, One Conditioner Decadence, Light Defining Gel and Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, poor hair condition and dry hair.

177.    Plaintiff Vanessa Esparza purchased the DevaCurl products between Early 2017-Fall 2019 through Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. She saw many of Defendant's online advertisements for no poo and Defendant's claim the Products would improve the health of her scalp. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Pre-Poo, B'Leave In, Supercream, Styling Cream, Arc Angel Gel and Ultra Gel Interchanged, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and very itchy scalp.

178.    Plaintiff Melissa Evans purchased the DevaCurl products between 2013-2019 online through Amazon, Ulta, Groupon and Ebay and in person from Target and Beauty Plus Salon Store based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, claims that were echoed by a friend. Plaintiff used the Products as directed, including the use of DevaCurl Ultra Defining Gel, DevaCurl One Condition, DevaCurl Styling Cream, DevaCurl No Poo, DevaCurl One Condition Decadence, DevaCurl B'Leave In Miracle Curl, DevaCurl No Poo Decadence and DevaCurl Low Poo Original Mild Lather and DevaCurl Heaven In Hair to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

179.    Plaintiff Keonte' Fisher purchased the DevaCurl products between April 2018-December 2019 online from devacurl.com and in person at Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff researched ways to take better care of their hair and found DevaCut. Plaintiff

located a Deva Salon and stylist and did a Deva Transformation. The Stylist sold Plaintiff on how amazing DevaCurl products are and how much healthier they would make her hair. Plaintiff used the Products as directed, including the use of Heaven In Hair, Melt Into Moisture, Seaweed Repair, Decadence No Poo Shampoo, Decadence No Poo Conditioner, Build Up Buster, Arc Angel Gel, B'Leave In, Leave in Decadence, Wash Day Wonder, Low Poo and Supercream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

180.    Plaintiff Alison Fitzwilliam purchased the DevaCurl products between October 2018-February 2020 online through devacurl.com and in person from Salon Exclusive based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff received a DevCut and purchased the Products based on the recommendations of the DevaCurl stylist, who echoed representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No-Poo Original, Mist-er Right, Supercream, Arc AnGel Gel and One Condition Original, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

181.    Plaintiff Susan Fleming purchased the DevaCurl products between May 2012-April 2014 through Salon Centric and Cosmoprof based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff frequented a DevaCurl Salon, who echoed representations made by Defendant, see supra, Background Facts. These representations created in the impression Defendant catered to those with curly hair the Products were the best available for curly hair. Plaintiff used the Products as directed, including the use of No Poo Conditioning Cleanser, One Condition, Light Defining Gel and Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage poor hair condition,

hair discoloration and scalp/facial irritation and/or rash.

182.    Plaintiff Hannah Fletcher purchased the DevaCurl products between May 2017-December 2019 in person at Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair and adopted Defendant's invitation to think of her purchases as an investment in her curls, to make her hair beautiful and healthy. Plaintiff used the Products as directed, including the use of Wavemaker, Styling Cream, Ultra Defining Gel, No Poo, Low Poo, Low Poo Delight, One Condition, One Condition Delight, Build Up Buster, B'Leave In and Leave in Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

183.    Plaintiff Juanita Garcia purchased the DevaCurl products between December 2018-February 2020 from Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claims the Products were the best available for curly hair and Defendant's invitation to try the curly girl method as shown on the DevaCurl Facebook and YouTube pages.  Plaintiff used the Products as directed, including the use of Ultra Defining Gel, NO Po Original, One Condition Original, Frizz free Volumizing Foam, B'Leave In, Supercream, Wavemaker, Angel and Was Day Wonder, to the exclusion of regular shampoos.  Plaintiff suffered hair loss and poor hair condition.

184.    Plaintiff Brittainy Hall purchased the DevaCurl products between December 2018-September 2019 at a Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of

influencers. Plaintiff's stylist was a Deva Cut Specialist and used the Products on her clients and recommended them for purchase, echoing representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Original Low Poo, Styling Cream, High Shine, Light Define Gel, Decadence Conditioner and Mister Right, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

185.    Plaintiff Josephine Harris purchased the DevaCurl products between August 2019-August 2019 online from Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's claim the Products were the best available for naturally curly hair and positive online reviews. Plaintiff used the Products as directed, including the use of Low-Poo Delight, One Condition Delight and Wavemaker, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and extreme tangles.

186.    Plaintiff Tara Hastoo purchased the DevaCurl products between 2018-2020 from Clore Beauty and chatters based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on the recommendation of her stylist, who repeated Defendant's claim the Products were the best available for curly hair.  Plaintiff used the Products as directed, including the use of Low Poo Shampoo, One Conditioner, Styling Cream, Supercream, Ultra Defining Gel, Arc Angel Gel, Beautiful Mess and Deep Sea Repair, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial rash.

187.    Plaintiff Rebecca Hawk purchased the DevaCurl products between May 2019-December 2019 online through Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also

relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff further relied on the positive reviews of friends, who echoed representations made by Defendant, see supra, Background Facts, and Defendant's claims the Products did not contain sulfates and was the biggest, most reliable name in curly hair care. Plaintiff used the Products as directed, including the use of One Condition Delight and Supercream Coconut Curl Styler, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and hair thinning.

188.    Plaintiff Lubna Hector purchased the DevaCurl products between June 2012-January 2020 from Cosmoprof and Ebay based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff was attracted to Defendant's claims the Product are a natural hair line, made for all curly hair types. She also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Original One Condition, Original Low Poo, Heaven in Hair, Ultra Defining Gel, Styling Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

189.    Plaintiff Cindi Hein purchased the DevaCurl products between December 2017-June 2019 online from devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff saw a DevaCurl stylist for years, who recommended the Products in the "curly" hair lecture during which she repeated Defendant's claim the Products are the best available for curly hair. Plaintiff used the Products as directed, including the use of Original One Condition, Original Low Poo, B'Leave In, Ultra Defining Gel, Heaven in Hair, Frizz Free Volumizing Foam,

to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and hair discoloration.

190.    Plaintiff Sherry Hidlebaugh purchased the DevaCurl products between April 2019-January 2020 DevaCurl from Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff further relied on the recommendations of a friend, who repeated the representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of DevaCurl No Poo Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

191.    Plaintiff Taylor Hobbs purchased the DevaCurl products between May 2018-April 2020 in person at Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair as was echoed in influencer YouTube videos. Plaintiff used the Products as directed, including the use of One Conditioner Original, One Condition Decadence, Low-Poo Delight, Build Up Buster, Frizz Free Volumizing Foam, B'Leave-In Gel, Leave In Decadence, High Shine, Heaven in Hair, Curls on the Go Kit, to the exclusion of regular shampoos.  Plaintiff suffered hair breakage and poor hair condition.

192.    Plaintiff Michelle Howard purchased the DevaCurl products between November 2014-April 2020 online from Ulta, Sephora, in person at the Hairwear Salon, CVS, Walgreens, Walmart and Target based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on the recommendation of her hair stylist, who got her on her curly hair journey with DevaCurl by

repeating representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No-Poo Shampoo, One Condition Original, Light Defining Gel, Flexible Hold Hair Spray, Curl Maker Curl Boosting, Mist-er Right Lavender Infused Curl, Supercream Touchable Curl Definer, Super Stretch Coconut Curl Elongator, Beautiful Mess, B'Leave In Curl Boost, Melt Into Moisture, No Comb Detangling Spray, Frizz Free Volumizing Foam, Anti-Frizz Gray Microfiber Hair Towel, No Poo Decadence and One Condition Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

193.    Plaintiff Tracie Hunt purchased the DevaCurl products between June 2019-August 2019 in person from Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers as well as recommendations from family and friends, who representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Low Poo Delight, One Condition Delight, Light Defining Gel, B'Leave In, Wavemaker, Volumizing Foam, Build Up Buster and Deep Sea Repair, to the exclusion of regular shampoos.  Plaintiff suffered hair loss.

194.    Plaintiff Terrilyn Hunter purchased the DevaCurl products between 2015-2018 online through devacurl.com, Curlbox Subscription Box and in person from Empire Beauty, Target and Chanel's Hair Boutique based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of No Poo Decadence, Heaven

In Hair, Leave In Decadence, One Condition Decadence, Melt In Moisture Mask, Buildup Buster, Deep Sea Repair, Wash Day Wonder, Supercream, Styling Cream, B'Leave In, Light Defining Gel, Arc Angel, Mist-Er Right, Super Stretch and Set It Free, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

195.    Plaintiff Marium Hussain purchased the DevaCurl products between April 2019-February 2020 in person from Cosmoprof based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Cleanser, conditioner, shine & finish spray, define and control styling cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

196.    Plaintiff Charlyne Jacobs-Burrow purchased the DevaCurl products between March 2019-September 2019 online through Amazon, Sephora and in person from Alter Ego Salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff frequented a DevaCurl salon, where her stylist repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Set It Free, One Condition, Arc Angel Gel, Supercream, High Shine, Ultra Defining Gel, Low Poo and One Condition Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

197.    Plaintiff Leslie Jeter purchased the DevaCurl products between February 2018-January 2020 through a DevaCurl stylist based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff had a DevaCut by a Deva Stylist, who repeated representations made by Defendant, see supra, Background Facts, including claims the Products are natural with no harsh chemicals or sulfates. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Original Low Poo, Wavemaker, B'Leavin, Ultra Defining Gel, Arc Angel Gel and Decadence Leave In, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

198.    Plaintiff Alexis Johnson purchased the DevaCurl products between April 2019-January 2020 online at Walmart, Amazon, Ebay and Fingerhut and at Ulta Beauty Store based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers, particularly representations made in the Ulta store where the clerk repeated claims made by Defendant, see supra, Background Facts, that the Products would transform Plaintiff's hair. Plaintiff used the Products as directed, including the use of No Poo Decadence Cleanse and Conditioner, Supercream Styler and B'Leave In, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and scalp/facial irritation or rash.

199.    Plaintiff Liana Kanaaneh purchased the DevaCurl products between October 2015-January 2020 online through Ulta and Groupon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff

also relied on Defendant's claim the Products are the best available for curly hair as it was also stated in YouTube influencer videos, which echoed Defendant's claim, see supra, Background Facts. Plaintiff used the Products as directed, including the use of One Condition Original, No Poo Deep Conditioner and Supercream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

200.    Plaintiff Tiffany Keating purchased the DevaCurl products between 2017-2019 online through Amazon and in store at Target and Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claims the Products are the "it" brand for curly hair by way of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Ultra Defining Gel, No-Poo Cleanser, Melt Into Moisture Mask, Deep Sea Hair Repair, Set It Free Mist, High Shine, Leave In Decadence, B'Leave In and Super Stretch, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and /or rash.

201.    Plaintiff Sarah Kelly purchased the DevaCurl products between 2011-February 2020 online at Amazon and in person from Shine Hair Color & Design Studio based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on representations made by a DevaStylist who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Lo-Poo, One Condition, Beautiful Mess/Set Up And Above, Mist-er Right, Dry Shampoo, B'Leave-In Curl Boost and Volumizer and Set It Free Moisture Lock, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

202.    Plaintiff Susan King purchased the DevaCurl products between July 2015-February 2020 online through Ulta, Zulily, EBay and devacurl.com and in person from Ulta and CVS based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claims the Products are the best available for curly hair and block humidity from entering the hair shaft to stop hair from frizzing. Plaintiff used the Products as directed, including the use of DevaCurl No Poo Original Non-Lathering Conditioning Cleanser, DevaCurl One Condition Original Hair Conditioner, DevaCurl One Condition Decadence, DevaCurl Arc Angel Gel, DevaCurl Ultra Defining Gel, and DevaCurl Build-up Buster, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and scalp/facial irritation and/or rash.

203.    Katherine Kozy purchased the DevaCurl products between May 2015-May 2015 from Peninsula Beauty based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff was referred to the Products by her hair stylist, who repeated representations made by Defendant, see supra, Background Facts, particularly claims the Products required very little washing, which appealed to Plaintiff who valued low maintenance and had a healthy scalp. Plaintiff used the Products as directed, including the use of No Poo Original and One Condition Original, to the exclusion of regular shampoos.  Plaintiff suffered poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

204.    Plaintiff Katrina Lee purchased the DevaCurl products between November 2016-January 2017 from Cosmo Prof based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on the recommendations of a friend and a DevaCurl salon, those representations being an echo of representations made by Defendant, see supra, Background Facts. Plaintiff used the

Products as directed, including the use of No Poo Original, Low Poo Original, One Condition Original, One Condition Decadence, Supercream, Heaven In Hair, B'Leave In, Light Defining Gel, Wash Day Wonder, Set It Free, Build Up Buster, Curl Maker, Flex Hold Hair Spray, Mister Right, Frizz Free Volumizing Foam, Arc Angel Gel and Melt into Moisture, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

205.     Plaintiff Samitia Lee purchased the DevaCurl products between 2011-2015 from Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Original Low Poo, Style Cream and Arc Angel Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and acne in hair line.

206.     Plaintiff Michelle Howard, on behalf of M.L., a child,  purchased the DevaCurl products between August 2016-April 2020 online from Ulta, Sephora, in person at the Hairwear Salon, CVS, Walgreens, Walmart and Target based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on the recommendation of her hair stylist, who repeated representations made by Defendant, see supra, Background Facts, and encouraged Plaintiff to begin her curly hair journey with DevaCurl.  Plaintiff used the Products as directed, including the use of No-Poo Shampoo, One Condition Original, Light Defining Gel, Flexible Hold Hair Spray, Curl Maker Curl Boosting, Mister Right Lavender Infused Curl, Supercream Touchable Curl Definer, Super Stretch Coconut Curl Elongator, Beautiful Mess, B'Leave In Curl Boost, Melt Into Moisture, No Comb Detangling Spray, Frizz Free Volumizing Foam, Anti-Frizz Gray Microfiber Hair Towel, No Poo Decadence

and One Condition Decadence, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

207.    Plaintiff Nicole Lovitt purchased the DevaCurl products between June 2018-February 2020 in person at Festoon Salon, CVS, Walgreens and Rite Aid based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims by her hair stylist, who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Low Poo, No Poo, One Condition, Leave in Decadence, Arc Angel, Wash Day Wonder and Mister Right, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and change/loss of curl pattern.

208.    Plaintiff Ayesha Malik purchased the DevaCurl products between 2013-March 2019 online through devacurl.com, Nordstrom, Cosmoprof and received free products from the DevaCurl PR Team from 2017 to 2019 based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff chose DevaCurl because, according to Defendant, the Products are the leaders in the curly hair movement, a luxury brand and one of the first hair brands to make you feel safe because of all the "Frees" written on the label: Sulfate free, Paraben free, Gluten free. Plaintiff used the Products as directed, including the use of No-Poo Original, Low-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, Leave-In Decadence, Styling Cream, Supercream, Heaven In Hair, High Shine, B'Leave-In, Light Defining Gel, Frizz-Free Volumizing Foam, Ultra Defining Gel, Arc Angel Gel, Beautiful Mess, Mist-Er Right, Curl Maker Curl Boosting Spray Gel, Flexible Hold Hairspray, Super Stretch, Set It Free, Buildup Buster, Melt Into Moisture, Deep Sea Repair and Wash Day Wonder, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair

breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

209.    Plaintiff Holly Matesky purchased the DevaCurl products between 2010-2020 online through Ulta and Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on Defendant's depiction of the Products as the "it" brand for curly hair by way of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Low Poo, Decadence Conditioner, Heaven In Hair, Arc Angel Conditioner, Arc Angel Gel, Build Up Buster, Styling Cream and Wavemaker, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

210.    Plaintiff Alma Medina purchased the DevaCurl products between October 2019-July 2020 online through Amazon and in person at the beauty salon and CVS Pharmacy based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on the stylist from Le Petite Curly Hair Salon, where they repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of One Condition Original, No-Poo Decadence, One Condition Decadence, Supercream, Ultra Defining Gel and Leave-In Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

211.    Plaintiff Ana Mendoza purchased the DevaCurl products between August 2019-February 2020 online through Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair as was repeated in

YouTube influencer videos. Plaintiff used the Products as directed, including the use of No Poo Decadence Shampoo, One Condition Decadence Conditioner, Supercream and Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and hair thinning.

212.    Plaintiff Daniela Mendoza purchased the DevaCurl products between August 2019-February 2020 online through Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair as was repeated in YouTube influencer videos. Plaintiff used the Products as directed, including the use of No Poo Decadence Shampoo, One Condition Decadence Conditioner, Supercream and Ultra Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and hair thinning.

213.    Plaintiff Laurie Miller purchased the DevaCurl products between April 2016-April 2020 online through devacurl.com, Amazon and in person at Bed, Bath and Beyond based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on recommendations made in the Curly Girl Book, which repeated representations made by Defendant, see supra, Background Facts.  Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, One Condition Original, Ultra Defining Gel, Moisture Lock Set It Free, Supercream Coconut Curl Styler, Mirrorcurls and Styling Cream , to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

Plaintiff Nabila Mohammed purchased the DevaCurl products between June 2019-January 2020 online through devacurl.com based on representations made by Defendant, see supra, Background

Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair as was repeated in YouTube influencer videos and Instagram accounts. Plaintiff used the Products as directed, including the use of Low-Poo Delight, One Condition Delight, Light Defining Gel, Ultra Defining Gel, Frizz-Free Volumizing Foam, Wavemaker and Flexible Hold Hairspray, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and loss of curl pattern.

214.    Plaintiff Huong Nguyen purchased the DevaCurl products between January 2017-December 2019 online through Amazon and in person from the salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims made by her stylist who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No Poo Original, No Poo Conditioner and B'Leave In, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

215.    Plaintiff, Andrea Patin purchased the DevaCurl products between September 2019-February 2020 retail from Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims made by a DevaCurl Salon stylist, who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of One Condition Decadence, Supercream Coconut Curl Styler and B'Leave In Miracle Curl Plumper, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and change/loss of curl pattern.

216.    Plaintiff Asia Perkins purchased the DevaCurl products between April 2018-April 2020 online through devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of No-Poo Decadence Cleanser, One Condition Decadence Hair Conditioner, Leave-In Decadence Conditioner, Supercream, One Condition Original Hair Conditioner, Low Poo Original Cleanser, Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss and scalp/facial irritation and/or rash.

217.    Plaintiff, Kyto Raines purchased the DevaCurl products between November 2018-January 2020 in store at Publix, WalMart and Sally's based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products.  Plaintiff had a DevaCut by a certified DevaStylist who endorsed the Products, repeating representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No-Poo Decadence, Arc Angel Gel, The Curl Maker, B'Leave-In, Styling Cream, Low-Poo and One Condition Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, hair discoloration, poor hair condition, scalp/facial irritation and/or rash, overall frizz and unbearable dryness.

218.    Plaintiff Allyson Rainey purchased the DevaCurl products between May 2016-August 2017 online through Amazon and in person at Walgreens and CVS and based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims made by "Dr. Curl," Shai Amiel, at the Capella Salon, who repeated representations made by Defendant, see supra, Background Facts.

Plaintiff used the Products as directed, including the use of No Poo Original, Low Poo Shampoo, One Condition, B'Leave In, Decadence Line Shampoo, Decadence Conditioner, Ultra Defining Gel, Build Up Buster, Supercream and Heaven In Hair, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

219.    Plaintiff Leslie Ramos purchased the DevaCurl products between March 2017-January 2020 in person at Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims made by a DevaCurl stylist during a DevaCurl photo shoot, who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, One Condition Conditioner, Melt Into Moisture and Style Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

220.    Plaintiff Vilma Ramos purchased the DevaCurl products between February 2019-February 2020 online through devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations from the DevaCurl website, customer reviews, YouTube Video, and use of influencers.  \Plaintiff used the Products as directed, including the use of Original NoPoo, One Conditioner Original, Low Poo Original, Heaven and Hair, B'Leave In, Styling Crème, Ultra Defining Gel, Light Defining Gel, Deva Fresh, High Shine, Set it Free, Build Up Buster, Deep Sea Repair, Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

221.    Plaintiff Danielle Rand Byrd purchased the DevaCurl products between December 2016-February 2020 online through Ulta and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of One Condition Original, No-Poo Original Conditioner, No-Poo Original Cleanse, Mister-Right, B'Leave-In and Arc Angel Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

222.    Plaintiff Taryn Ray purchased the DevaCurl products between April 2019-December 2019 in person at the salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff was recommended to use DevaCurl by a hair stylist who used the product and who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Low Poo Shampoo, Light Conditioner, Gel and Volumizer, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and hair thinning.

223.    Plaintiff Mika Reed purchased the DevaCurl products between 2014- February 2020 online through devacurl.com and Ulta websites and the Ulta store, based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines, trusted the good reviews and use of influencers. Plaintiff used the Products as directed, including the use of Shampoo, Conditioner, Cream and Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss and scalp/facial irritation and/or rash.

224.    Plaintiff Cassidy Rephann purchased the DevaCurl products between May 2017-April 2020 online through devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair as was online reviews. Plaintiff used the Products as directed, including the use of No Poo Decadence, One Condition Decadence, Frizz Free Volumizing Foam, Wavemaker, Build Up Buster, Ultra Defining Gel, Supercream, Leave IN Decadence, Heaven In Hair, B'Leave In, Super Stretch, Melt into Moisture, Deep Sea Repair, Wash Day Wonder and a Deva Towel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

225.    Plaintiff Kelly Rephann purchased the DevaCurl products between 2017-2019 online through devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair as was online reviews. Plaintiff used the Products as directed, including the use of No Poo Decadence, One Condition Decadence, Frizz Free Volumizing Foam, Wavemaker, Build Up Buster, Ultra Defining Gel, Supercream, Leave IN Decadence, Heaven In Hair, B'Leave In, Super Stretch, Melt into Moisture, Deep Sea Repair, Wash Day Wonder and a Deva Towel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

226.    Plaintiff Whitney Rice purchased the DevaCurl products between May 2016-February 2020 in person from Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair and free of harsh

chemicals. Plaintiff used the Products as directed, including the use of No-Poo Decadence, One Condition Decadence, Supercream, No-Poo Original, One Condition Original and Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair breakage and scalp/facial irritation and/or rash.

227.    Plaintiff Angela Shuford purchased the DevaCurl products between 2015-2017 in person from Salons and Sephora based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines, use of influencers. Plaintiff even purchased the Curly Girl Handbook, began using the Products exclusively and getting curly girl haircuts. Plaintiff used the Products as directed, including the use of Wavemaker, No Poo, Low Point, One Condition, Mister Right, Light Defining Gel, Ultra Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

228.    Plaintiff Sewit Sium purchased the DevaCurl products between 2010-2020 from Target based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff also relied on Defendant's claims the Products are safe, gentle, all-natural and formulated for curly hair. Plaintiff  became a loyal customer and even started to only go to DevaCurl Salons in New York City for all her haircuts, too. Plaintiff used the Products as directed, including the use of Original NoPoo, Leave in Decadence, Deva One Condition, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

229.    Plaintiff Tara Sparks purchased the DevaCurl products between June 2020-August

2020 in person from The Cutting Edge Salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims by her stylist, who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No Poo Original, Low Poo Original and B'Leave In, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

230.    Plaintiff Traci Steo purchased the DevaCurl products between 2011-2019 online through devacurl.com and in person at Ulta, Sephora, Cosmoprof and Curl Sanctuary Salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. She also relied on Defendant's claim she needed only four products, all of which Defendant said are made for curly hair. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition, No Poo Decadence, One Condition Decadence, Leave In Decadence, Ultra Defining Gel, Supercream, B'Leave In, Set It Free, Melt Into Moisture, Heaven In Hair, Build Up Buster and Deep Sea Repair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and scalp/facial irritation and/or rash.

231.    Plaintiff Rebecca Taylor purchased the DevaCurl products between November 2015-March 2020 from curlyenvysalon.com and Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on the recommendation of a coworker to go to a DevaCurl Salon, where they repeated representations made by Defendant, see supra, Background Facts, and a certified DevaCurl Stylist taught Plaintiff how to use the Products. Plaintiff used the Products as directed, including

the use of No Poo Decadence Cleanser and Conditioner, Light Defining Gel, Low Poo Delight Cleanser and Conditioner, Frizz-Free Volumizing Foam, Wavemaker, Build Up Buster and Melt Into Moisture Mask, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

232.    Plaintiff Cheryl Theriault purchased the DevaCurl products between May 2015-September 2019 from the Chatter Hair Salon and Shear Beauty Salon and Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of One Condition Delight, Frizz Free Volumizing Foam, B'Leave In, NoPoo Original Conditioner, One Condition Delight, Wash Day Wonder, Curl Maker, Set It Free, Mister Right, Leave In Decadence, Flexible Hold Hairspray, Set Up and Above, Heaven and Hair, Arc Angel Gel, Low Poo Cleanser Shampoo, Low Poo Delight Shampoo, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

233.    Plaintiff Kristina Thomas purchased the DevaCurl products between January 2006-August 2020 online through devacurl.com and in person from Devachan Salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff was introduced to the Products by way of Lorraine Massey's book, "The Curly Girl Handbook," which echoed representations made by Defendant, see supra, Background Facts. Plaintiff began using the Products and going to Devachan Salons. Plaintiff used the Products as directed, including the use of No Poo Original, No Poo Decadence, One Condition Original, One Condition Decadence, Styling Cream, Supercream, Heaven In Hair, B'Leave In,

Light Defining Gel, Ultra Defining Gel, Frizz-Free Volumizing Foam, Wavemaker, Arc AnGel Gel, Mist-er Right, Flexible Hold Hairspray, Set It Free, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

234.   Plaintiff Taryn Tomasik purchased the DevaCurl products between February 2019- December 2019 online through devacurl.com and at a DevaSalon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims the business was run by a female who had made Products specifically for curly hair. In addition, Plaintiff relied on influencers that favored the Product, repeating representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Low Poo Delight, Frizz Free Volumizing Foam and One Condition, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

235.   Plaintiff Yessenia Torres purchased the DevaCurl products between December 2019-January 2020 online through Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair and its promotion of on the Products on Instagram. Plaintiff used the Products as directed, including the use of No-Poo Original, One Condition Original, Set It Free Moisture Lock, Light Defining Gel and Heaven In Hair Divine Deep Conditioner, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

236.   Plaintiff Ashley Valentin purchased the DevaCurl products between April 2017- February 2020 online through the devacurl.com based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff

also relied on claims made by stylists at a DevaCurl salon, who representations made by Defendant, see supra, Background Facts, including, but not limited to, a statement that the Products are the best available for Plaintiff's type of curls. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, No Poo Original Conditioner, Heaven In Hair, Coconut Curl Style Cream, Super Hold Gel, Decadence Conditioner, Decadence Shampoo and B'Leave In, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

237.    Plaintiff Bobbie VanSlyke purchased the DevaCurl products between 2015-2019 online through Amazon and my salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available and claims made by Plaintiff's hair stylist, who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of Low Poo, One Conditioner, Decadence One Conditioner, Delight Low Poo, Delight One Conditioner and Wash Day Wonder, to the exclusion of regular shampoos. Plaintiff suffered hair loss and hair discoloration.

238.    Plaintiff Kenia Vazquez purchased the DevaCurl products between 2011-2020 online at Cosmoprof and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff was attracted to the products as they were solely marketed for curly hair. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Heaven in Hair, Wavemaker, Set it Free, B'Leave In, Melt into Moisture, Light Defining Gel, Build Up Buster and Deep Sea Repair, to the exclusion of regular shampoos. Plaintiff suffered

hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

239.    Plaintiff Sarina Vergara purchased the DevaCurl products between August 2019-October 2019 in store through Ulta and Cosmoprof based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on positive reviews for the Products and the recommendations of an esthetician, who repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of One Condition Original, No-Poo Original, Ultra Defining Gel, Light Defining Gel, Curl Maker, Styling Cream, High Shine and DevaFresh, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

240.    Plaintiff Michelle Walton purchased the DevaCurl products between 2014-February 2020 online through Amazon and local stores Ulta and 2ND Street Beauty based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff served as a hair model for the Devachan Salon to teach stylists how to give proper DevaCuts. The salon used the Products on Plaintiff's hair while teaching the class to stylists. Plaintiff also relied on representations made at the Devaschan salon, which repeated representations made by Defendant, see supra, Background Facts. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, Ultra Defining Gel, One Condition Decadence, One Condition Decadence, Arc Angel, One Condition No Poo Decadence and Styling Cream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

241.    Plaintiff Angharad Waring purchased the DevaCurl products between October 2018-October 2019 online from Naturalistic Products, Kiyo Beauty and London Loves Beauty

based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Original One Condition, Original Low Poo, Ultra Defining Gel and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial rash.

242.    Plaintiff, Sally Warm purchased the DevaCurl products between May 2019-December 2019 online through Ulta based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair and allow users to shampoo less. Plaintiff used the Products as directed, including the use of Low Poo and One Condition Delight, to the exclusion of regular shampoos. Plaintiff suffered hair loss.

243.    Plaintiff Gini Warner purchased the DevaCurl products between 2012-2020 online from Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Original Low Poo, Heaven in Hair, Decadence Leave-In, B'Leave-In, Original Styling Crème, Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

244.    Plaintiff Nanci Weitzman purchased the DevaCurl products between January 2020-June 2020 online through Oasis Curl Salon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also

relied on her hair stylist who gave Plaintiff the curly girl haircut and who recommended the Products by repeating representations made by Defendant, see supra, Background Facts, including, but not limited to, statements that the Products are designed for the texture and care of curly hair. Plaintiff used the Products as directed, including the use of One Condition Original, No Poo Original Zero Lather Conditioning Cleanser, Low Poo Original Mild Lather Cleanser, AnGel, B'Leave IN Frizz Free Volumizing Foam, SetUp & Above, Set It Free, Spray Gel and Limited Edition Mist-er Right Lavender Curl Revitalizer, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, and scalp/facial irritation and/or rash.

245.    Plaintiff Janice Williams purchased the DevaCurl products between June 2017-December 2019 through her stylist and from Armstrong, through an esthetician friend, based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's depictions of hair transformations, product placements in magazines and use of influencers. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Decadence Leave In and Heaven in Hair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, scalp/facial irritation and/or rash.

246.    Plaintiff Britney Winters purchased the DevaCurl products between November 2017-September 2019 from Ulta and was given products as a gift based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair. Plaintiff used the Products as directed, including the use of Light Defined Gel, One Condition Original, One Condition Decadence, No Poo Condition Decadence, No Poo Decadence, Styling Cream and Deep Sea Repair Seaweed, to the exclusion of regular shampoos. Plaintiff suffered hair

loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash, matting, frizz and unmanageable hair.

247.    Plaintiff Kristin Wynn purchased the DevaCurl products between 2008-2020 through the following places DevaCurl Salons, DevaCurl websites, Target, Ricky's NYC, Neergard and Duane Reade based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff was attracted to Defendant's whole model and marketing approach of embracing, celebrating and taking good care of curls. Plaintiff used the Products as directed, including the use of No-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, Styling Cream, Heaven in Hair, Light Defining Gel, Arc AnGEL Gel, Super Stretch and Melt into Moisture-Matcha Butter Conditioning Mask, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and hair discoloration.

248.    Plaintiff Jennifer Zuniga purchased the DevaCurl products between October 2019-January 2020 online through Ulta and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair. Plaintiff used the Products as directed, including the use of DevaCurl One Condition and No Poo Decadence Shampoo and Conditioner, to the exclusion of regular shampoos. Plaintiff suffered hair loss and poor hair condition.

249.    Plaintiff Nikola Zurak purchased the DevaCurl products between 2018- 2020 online through devacurl.com, Ulta, Walmart and Amazon based on representations made by Defendant, see supra, Background Facts, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on claims made at a DevaCurl a salon, where they repeated

representations made by Defendant, see supra, Background Facts and used Products on Plaintiff's hair. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, No-Comb Detangling Spray and Light Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

### FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

250.   Plaintiffs hereby incorporate and restates the above allegations by reference as though fully set forth herein.

251.   Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and Defendant.

252.   Defendant, through its advertising and packaging, creates express warranties that the Products are: safe, effective, more effective than other products on the market; provide sulfate, silicone, paraben and harsh chemical-free hair cleansing; and offer conditioning and styling treatments that limit or repair damage caused by other hair treatments.

253.   All conditions precedent to Defendant's liability under this contract were performed by Plaintiffs when they purchased and used the Products.

254.   Defendant breached express warranties about the Products and their qualities because their statements about the Products were false and the Products do not conform to their affirmations and promises. Plaintiffs would not have purchased the Products had they known the

true nature of the Products and the misstatements regarding what the Products are and what they contain.

255.    Plaintiff has notified Defendant of these breaches and provided Defendant an opportunity to address them.  Defendant has failed to do so.

256.    As a result of Defendant's breach of warranty, Plaintiffs have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases, including the cost to repair their hair loss and damage.

<u>SECOND CAUSE OF ACTION</u>

**(Breach of Implied Warranty)**

257.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

258.    At all times relevant hereto, there was a duty imposed by law on Defendant which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that product be acceptable in trade for the product description.

259.    Notwithstanding Defendant's aforementioned duty, at the time of delivery, the Products sold to Plaintiffs were not merchantable because they contain defect(s) that cause hair loss and other injuries upon proper application and do not otherwise perform as represented.

260.    Plaintiffs notified Defendant that the Products were not merchantable within a reasonable time after the defect manifested to Plaintiffs and other consumers.

261.    As a result of the non-merchantability of the Products, Plaintiffs and other consumers sustained damages.

### THIRD CAUSE OF ACTION

### (Violation of Consumer Protection Laws)

262.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

263.    Plaintiffs, as purchasers of the Products, are consumers within the meaning of the all applicable consumer protection laws given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

264.    As detailed above, Defendant, through its advertisements and packaging, used unconscionable commercial practices, deception, fraud, false promise and misrepresentation in connection with the marketing of the Products, as alleged.

265.    Defendants also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiffs and other consumers knowing that consumers would rely on the advertisements, packaging and Defendant's uniform representations to purchase the Products.

266.    Once defects in the Products appeared including their tendency to cause hair loss and other injuries in the face of proper application (or based upon foreseeable misapplication), Defendant owed consumers including Plaintiffs a duty to disclose that information because a significant risk of hair loss and other injury would be a material fact in a consumer's decision-making process, and, without Defendant's disclosure, consumers would not necessarily know that there is such a risk.

267.    Defendant intended that Plaintiffs and other consumers would rely on the continued deception by purchasing the Products, unaware of these material facts and omissions. Defendant knew that customers would continue to rely on the representations and omission as to any known

risk of hair loss and other injuries as evidence that the Products were safe and would perform as represented. This conduct, and Defendant's breaches of express and implied warranties, constitutes consumer fraud within the meaning of all applicable consumer protection laws.

268.    Defendant's material non-disclosure constitutes an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods in violation of all applicable consumer protection laws.

269.    In addition, upon information and belief, Defendant removed from the Internet and social media sites unfavorable reviews of the Products that would have warned consumers that the Products are dangerous.  Similarly, also upon information and belief, Defendant paid for false and misleading product placement and blogging about the Products in magazines, on the Internet and social media sites but failed to attribute the statements to Defendant or identify it as advertising. These acts also constitute a violation of all applicable consumer protection laws.

270.    Defendants are the producing and proximate cause of Plaintiffs' injuries.

## FOURTH CAUSE OF ACTION

### (Negligence and/or Gross Negligence)

271.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

272.    Defendant owed Plaintiffs a duty to use due care in the development, testing, planning, design, marketing and sale of the Products offered for use by consumers.

273.    Through its failures to exercise due care, Defendant breached this duty by producing, processing, manufacturing, distributing and/or offering for sale the Products in a defective condition that was unsafe for use at home by consumers.

274.    Defendant breached this duty of care to Plaintiffs by failing to use sufficient quality

control, perform adequate research or testing, proper manufacturing, production or processing, and failing to take sufficient measures to prevent the Products from being offered for sale in an unsafe and hazardous form.

275.    Defendant further breached this duty of due care by failing to properly and adequately inform consumers once safety concerns, including hair loss and other injuries, were brought to the Defendant's attention, and further breached this duty of care by failing to fully and appropriately discontinue the sale of and recall the Products.

276.    Defendant knew, or in the exercise of reasonable care should have known, that the Products present an unacceptable risk to consumers, and would result in damages that were foreseeable and reasonably avoidable.

277.    As a direct and proximate result of Defendant's above-referenced negligence and/or gross negligence, Plaintiffs have suffered and are entitled to recover damages, both compensatory and punitive.

## FIFTH CAUSE OF ACTION

### (Strict Liability)

278.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

279.    Defendant is producer, manufacturer, marketer, distributor and/or seller of the Products.

280.    The Products are defective in design or formulation in that the Products are unreasonably dangerous and the foreseeable risks of harm exceed the benefits associated with the design or formulation.   The Products are also defective due to inadequate and unsafe warnings/instructions, testing, study and/or reporting regarding the results of such efforts.

Similarly, Defendant's post-market warnings/instructions are inadequate and unsafe because, after Defendant knew or should have known of the risk of injury from the Products, Defendant failed to immediately provide adequate warnings/instructions to Plaintiffs and the public.

281.    As the direct and legal result of the defective condition of the Products as produced, manufactured, designed, marketed, distributed and/or sold by Defendant, and of the negligence, carelessness, other wrongdoing and actions of Defendant described herein, Plaintiffs suffered damages.

## SIXTH CAUSE OF ACTION

### (Unjust Enrichment)

282.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

283.    Defendant has been unjustly enriched in retaining the revenues  derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will  obtain  the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs and the Class Members. Defendant failed  to adequately compensate the Plaintiffs for the benefits conferred by providing the No-Poo Products without those products having the characteristics and benefits promised.

284.    Retention of those moneys under these circumstances is unjust and Defendant falsely and misleadingly represented that the Products, Plaintiffs paid a price premium for the  Products  based  on the false and misleading representations, and the Products did not have the characteristics and benefits promised and instead are rendered dangerous due to defects that cause hair loss, scalp issues and other injuries.  Plaintiff have suffered injuries as a result.

285.    Plaintiffs would not have purchased (or paid a price premium) for the Products had

they known of the defects that cause injuries.

286.    Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## ATTORNEYS' FEES, EXPENSES AND COSTS

287.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

288.    Plaintiffs have been forced to secure the assistance of counsel to protect their legal rights and mitigate their damages as a result of the Defendant's wrongful conduct.

289.    Having made proper presentment and provided actual and sufficient notice of their claims to Defendant, Plaintiffs seek recovery of their reasonable attorneys' fees, expenses and costs pursuant to all applicable statutes, regulations and agreements.

## PRAYER

WHEREFORE Plaintiffs pray for Judgment against Defendant as follows:

1.    For an award of actual and consequential damages according to proof;

2.    For an award of punitive damages according to proof;

3.    For restitution in the form of disgorgement of Defendant's ill-gotten profits;

4.    For an award of reasonable attorneys' fees, costs and expenses incurred herein;

5.    For an award of pre- and post-judgment interest; and;

6.    For all other relief to which they may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury under Fed. R. Civ. P. 38.

Dated: November 18, 2020

Respectfully submitted,

CHRISTIANSEN DAVIS, LLC


By:   /s/ *Amy E. Davis*
        Amy E. Davis (*pro hac vice pending*)
        CHRISTIANSEN DAVIS, LLC

        Lucian C. Chen
        Criston E. Cicala
        Todd M. Nosher
        CALHOUN BHELLA & SECHREST LLP

        *Attorneys for Plaintiffs*