Amy E. Davis (*pro hac vice*)
LAW CENTER OF AMY E. DAVIS, LLC
1021 N. Bishop Ave.
Dallas, TX 75208
Telephone: (214) 838-3501
Facsimile: (972) 332-2306
adavis@cdfirm.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRYSTAL ADAMS, HUGUETTE AMPUDIA, ERICKA APPLEBEE, DAYANA ARIZA-GONZALEZ, CHARLENE AVILES, STEFFANE BARRETT, RACHEL BIRD, RANDY ELLEN BLAUSTEIN, MARY ELLEN BRANDT, COREY CAIN, STACEY CARPENTER, ASHLEY CARTER, MONICA CASTELLO, AMANDA CLAY, JANET CLEARY, ADDISON CLINE, DANNAH COLLINS, JESSICA COLLINS, KELSIE CORAY, LA DAWN CRAFT PARRISH, ELIZABETH CRAMPSEY, APRIL CREEL, LACEY CROKER, ALICIA DA CRUZ, ESRAA DARWISH, BAILEY DAVALL, SHANNON DAVERSA, DANIELE DEGRANDIS-KNEER, LYNN DEJONGE, FELICIA DICKERSON, MEGAN DICKEY, MARISA EDWARDS, LINDSAY EINHORN VANESSA ESPARZA, MELISSA EVANS, KEONTE' FISHER, ALISON FITZWILLIAM, SUSAN FLEMING, HANNAH FLETCHER, JUANITA GARCIA, BRITTAINY HALL, JOSEPHINE HARRIS, TARA HASTOO, REBECCA HAWK, LUBNA HECTOR INDIVIDUALLY AND ON BEHALF OF A. H., A MINOR, CINDI HEIN, SHERRY HIDLEBAUGH, TAYLOR HOBBS, MICHELLE HOWARD INDIVIDUALLY AND ON BEHALF OF M. L., A MINOR, MARIUM HUSSAIN, TRACIE HUNT, TERRILYN HUNTER, CHARLYNE JACOBS-BURROWS, LESLIE JETER, ALEXIS JOHNSON, LIANA KANAANEH, TIFFANY KEATING, SARAH KELLY, KHANSA KHATOON, SUSAN KING, | CASE NO. 1:20-cv-9717<br><br>**FOURTH AMENDED COMPLAINT:**<br><br>1. **BREACH OF EXPRESS WARRANTY**<br>2. **BREACH OF IMPLIED WARRANTY**<br>3. **VIOLATION OF CONSUMER PROTECTION LAW**<br>4. **NEGLIGENCE AND/OR GROSS NEGLIGENCE**<br>5. **STRICT PRODUCT LIABILITY**<br><br>**DEMAND FOR JURY TRIAL** |

1

**KATHERINE KOZY, KATRINA LEE, SAMITIA LEE, MEREDITH LEWIS, NICOLE LOVITT, AYESHA MALIK, TARA MANDEL, HOLLY MATESKY, ALMA MEDINA, ANA MENDOZA, DANIELA MENDOZA, LAURIE MILLER, ERICKA MITCHELL, NABILA MOHAMMED, HUONG NGUYEN, ANDREA PATIN, LILLY PERCIVAL, ASIA PERKINS, NADA POTTINGER, KYTO RAINES, ALLYSON RAINEY, LESLIE RAMOS, VILMA RAMOS, DANIELLE RAND-BYRD, TARYN RAY, MIKA REED, CASSIDY REPHANN, KELLY REPHANN, WHITNEY RICE, KATHERINE ROBAINA, DANA RYSZETNYK, ANGELA SHUFORD, SEWIT SIUM, TARA SPARKS, TRACI STEO, REBECCA TAYLOR, CHERYL THERIAULT, KRISTINA THOMAS, TARYN TOMASIK, CARLA TORRELLI, YESSENIA TORRES, ASHLEY VALENTIN, BOBBIE VANSLYKE, KENIA VAZQUEZ, SARINA VERGARA, GEENA VILLOTTI, MICHELLE WALTON, ANGHARAD WARING, SALLY WARM, GINI WARNER, NANCI WEITZMAN, JANICE WILLIAMS, BRITNEY WINTERS, KRISTIN WYNN, JENNIFER ZUNIGA, NIKOLA ZURAK**

    **Plaintiffs,**

   **v.**

**DEVA CONCEPTS, LLC,**

    **Defendant.**

_____

   Plaintiffs Crystal Adams, Huguette Ampudia, Ericka Applebee, Dayana Ariza-Gonzalez,

Charlene Aviles, Steffane Barrett, Rachel Bird, Randy Ellen Blaustein, Corey Cain, Stacey

Carpenter, Ashley Carter, Monica Castello, Amanda Clay, Janet Cleary, Dannah Collins, Jessica

Collins, Kelsie Coray, La Dawn Craft Parrish, Elizabeth Crampsey, April Creel, Lacey Croker,

Alicia Da Cruz, Esraa Darwish, Bailey Davall, Shannon Daversa, Daniele DeGrandis-Kneer, Lynn

2

Dejonge, Felicia Dickerson, Megan Dickey, Marisa Edwards, Lindsay Einhorn, Vanessa Esparza, Melissa Evans, Keonte' Fisher, Alison Fitzwilliam, Juanita Garcia, Brittainy Hall, Josephine Harris, Tara Hastoo, Rebecca Hawk, Lubna Hector individually and on behalf of A. H., a minor, Cindi Hein, Sherry Hidlebaugh, Taylor Hobbs, Michelle Howard individually and on behalf of M. L., a minor, Tracie Hunt, Terrilyn Hunter, Marium Hussain, Charlyne Jacobs-Burrow, Leslie Jeter, Alexis Johnson, Tiffany Keating, Sarah Kelly, Khansa Khatoon, Susan King, Katherine Kozy, Katrina Lee, Samitia Lee, Meredith Lewis, Nicole Lovitt, Ayesha Malik, Tara Mandel, Holly Matesky, Ana Mendoza, Daniela Mendoza, Laurie Miller, Ericka Mitchell, Nabila Mohammed, Andrea Patin, Lilly Percival, Asia Perkins, Nada Pottinger, Allyson Rainey, Leslie Ramos, Vilma Ramos, Danielle Rand-Byrd, Taryn Ray, Mika Reed, Cassidy Rephann, Kelly Rephann, Katherine Robaina, Dana Ryszetnyk, Angela Shuford, Sewit Sium, Tara Sparks, Traci Steo, Rebecca Taylor, Cheryl Theriault, Kristina Thomas, Taryn Tomasik, Carla Torrelli, Yessenia Torres, Ashley Valentin, Bobbie VanSlyke, Kenia Vazquez, Sarina Vergara, Geena Villotti, Michelle Walton, Angharad Waring, Sally Warm, Gini Warner, Nanci Weitzman, Janice Williams, Britney Winters, Kristin, Wynn, Jennifer Zuniga, Nikola Zurak (collectively, "Plaintiffs"), through counsel, files this Fourth Amended Complaint against Defendant Deva Concepts, LLC d/b/a DevaCurl ("Defendant") and respectfully state as follows:

## NATURE OF THE ACTION

1.    Plaintiffs have sustained personal and economic injury in connection with and as a result of their purchase and use DevaCurl hair care products, including, but not limited to "DevaCurl No-Poo Original" non-lathering conditioning cleanser    (the    "No-Poo    Product"), DevaCurl    One    Condition®    Original    hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo    Delight    cleanser,    DevaCurl

No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker, and DevaCurl Ultra Defining Gel (the "Products"). Defendant designed, manufactured, marketed, distributed and sold the Products.

2.    By this action, Plaintiffs seek redress for their personal injuries, primarily to their hair and scalp and including injury to or disruption of Plaintiffs' endocrine and autoimmune systems, among other things. Plaintiffs also seek redress for, and to stop, Defendant's unfair, false and deceptive advertising and marketing of the Products.

## JURISDICTION AND VENUE

3.    The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(a) because this is a lawsuit is brought by more than 100 plaintiffs in which over $75,000 is at issue per individual and over $5 million at issue in the aggregate and many Plaintiffs are citizens of states other than Defendants' state of citizenship.

4.    This court also has personal jurisdiction over Defendant because Defendant is a New York limited liability company, resides in New York, and has continuous, systematic, and substantial contacts within this District and the State of New York. Further, Defendant has committed unlawful and tortious acts in this District and the State of New York that it knew or should have known would cause injury to Plaintiffs—acts which give rise to the causes of action asserted herein. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York and Defendant's Products are advertised, marketed, distributed, and sold throughout this District and across the State of New York. Defendant is authorized to do business in New York and has sufficient minimum contacts with New York and/or otherwise has

4

intentionally availed itself of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant (1) conducts substantial business in this District, including, but not limited to, sales of the Product and the operation of two DevaCurl salons, (2) has sufficient minimum contacts with this District, and (3) otherwise purposely avail themselves of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

## CHOICE OF LAW

6.      As a federal court sitting in diversity, the Court must apply the choice of law rules for the forum state of New York. *Negri v Friedman*, No. 1:14-CV-10233,GHW, 2017 WL 2389697, at *3 (S.D.N.Y. May 31, 2017) (Woods, J.). That analysis begins with consideration of whether there is an actual conflict between the laws of the jurisdictions involved. *Id.* If an actual conflict exists, the law of the jurisdiction having the greatest interest in the litigation will be applied. *Id.* In tort cases such as this, the interest analysis distinguishes between conduct-regulating and loss-allocating rules. *Id.* Plaintiffs' causes of action are conduct-regulating. *See id.,* at *4 (fraudulent misrepresentation and unjust enrichment); *Emslie v. Recreative Indus., Inc.*, No. 08-CV-423-JTC, 2010 WL 1840311, at *9 (W.D.N.Y. May 7, 2010), aff'd sub nom. *Emslie v. Borg-Warner Auto.*, Inc., 655 F.3d 123 (2d Cir. 2011) (negligence, breach of warranty and strict liability). In such cases, the state where the wrongful conduct occurred has the greatest interest. *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399 (S.D.N.Y. 2018) (Nathan, J.).

7.      As described in detail below, the wrongful conduct underlying Plaintiffs' claims occurred in New York, where Defendant has its principal place of business, including, but not limited to, the planning, creation and execution of an international advertising campaign by which Defendant misrepresented the nature, safety and efficacy of the hair care products that injured Plaintiffs, the design of the dangerous hair care products, the development of instructions and warnings for the hair care products, the testing of the dangerous hair care products and Defendant's receipt of monies paid for the products.  Thus, New York law applies to Plaintiffs' claims.

### PARTIES

8.      Plaintiff Crystal Adams is a citizen of Oregon, residing in Portland, Oregon.

9.      Plaintiff Huguette Ampudia is a citizen of New York, residing in New York City, New York.

10.     Plaintiff Ericka Applebee is a citizen of New York, residing in Auburn, New York.

11.     Plaintiff Dayana Ariza-Gonzalez is a citizen of New York, residing in Bronx, New York.

12.     Plaintiff Charlene Aviles is a citizen of North Carolina, residing in Mount Holly, North Carolina.

13.     Plaintiff Steffane Barrett is a citizen of Canada, residing in Toronto, Ontario, Canada.

14.     Plaintiff Rachel Bird is a citizen of Massachusetts, residing in Boston, Massachusetts.

15.     Plaintiff Randy Ellen Blaustein is a citizen of California, residing in San Francisco, California.

16.     Plaintiff Corey Cain is a citizen of New York, residing in Brooklyn, New York.

6

17.     Plaintiff Stacey Carpenter is a citizen of North Carolina, residing in Greensboro, North Carolina.

18.     Plaintiff Ashley Carter is a citizen of Maryland, residing in Randallstown, Maryland.

19.     Plaintiff Monica Castello is a citizen of New Jersey, residing in North Bergen, New Jersey.

20.     Plaintiff Amanda Clay is a citizen of Illinois, residing in Quincy, Illinois.

21.     Plaintiff Janet Cleary is a citizen of Minnesota, residing in Hopkins, Minnesota.

22.     Plaintiff Dannah Collins is a citizen of California, residing in North Hollywood, California.

23.     Plaintiff Jessica Collins is a citizen of Texas, residing in Austin, Texas.

24.     Plaintiff Kelsie Coray is a citizen of California, residing in Modesto, California.

25.     Plaintiff La Dawn Craft Parrish is a citizen of Georgia, residing in Athens, Georgia.

26.     Plaintiff Elizabeth Crampsey is a citizen of Maine, residing in Yarmouth, Maine.

27.     Plaintiff April Creel is a citizen of Florida, residing in Lakewood, Florida.

28.     Plaintiff Lacey Croker is a citizen of North Carolina, residing in Charlotte, North Carolina.

29.     Plaintiff Alicia Da Cruz is a citizen of Florida, residing in Homestead, Florida.

30.     Plaintiff Esraa Darwish is a citizen of California, residing in Glendale, California.

31.     Plaintiff Bailey Davall is a citizen of Somerville, residing in Somerville, Massachusetts.

32.     Plaintiff Shannon Daversa is a citizen of Virginia, residing in Aldie, Virginia.

33.     Plaintiff Daniele DeGrandis-Kneer is a citizen of Pennsylvania, residing in Warminster, Pennsylvania.

34.     Plaintiff Lynn Dejonge is a citizen of New York, residing in Rochester, New York.

35.     Plaintiff Felicia Dickerson is a citizen of North Carolina, residing in Fayetteville, North Carolina.

36.     Plaintiff Megan Dickey is a citizen of Alabama, residing in Enterprise, Alabama.

37.     Plaintiff Marisa Edwards is a citizen of New York, residing in New Rochelle, New York.

38.     Plaintiff Lindsay Einhorn is a citizen of New York, residing in Brooklyn, New York.

39.     Plaintiff Vanessa Esparza is a citizen of Texas, residing in Dallas, Texas.

40.     Plaintiff Melissa Evans is a citizen of New York, residing in Bronx, New York.

41.     Plaintiff Keonte' Fisher is a citizen of Virginia, residing in Norfolk, Virginia.

42.     Plaintiff Alison Fitzwilliam is a citizen of Oklahoma, residing in Choctaw, Oklahoma.

43.     Plaintiff Juanita Garcia is a citizen of Texas, residing in San Antonio, Texas.

44.     Plaintiff Brittainy Hall is a citizen of Tennessee, residing in Antioch, Tennessee.

45.     Plaintiff Josephine Harris is a citizen of Arkansas, residing in Harrison, Arkansas.

46.     Plaintiff Tara Hastoo is a citizen of Canada, residing in Pickering, Ontario.

47.     Plaintiff Rebecca Hawk is a citizen of Washington D.C., residing in Washington D.C.

48.     Plaintiff Lubna Hector is a citizen of Missouri, residing in St. Charles, Missouri.

49.     Plaintiff A. H., a minor, is a citizen of Missouri, residing in St. Charles, Missouri.

50.     Plaintiff Cindi Hein is a citizen of Utah, residing in Deweyville, Utah.

51.     Plaintiff Sherry Hidlebaugh is a citizen of Illinois, residing in Sherman, Illinois.

52.     Plaintiff Taylor Hobbs is a citizen of Colorado, residing in Arvada, Colorado.

53.     Plaintiff Michelle Howard is a citizen of Louisiana, residing in Metairie, Louisiana.

54.     Plaintiff Tracie Hunt is a citizen of South Dakota, residing in Sioux Falls, South Dakota.

55.     Plaintiff Terrilyn Hunter is a citizen of California, residing in Spring Valley, California.

56.     Plaintiff Marium Hussain is a citizen of Canada, residing in Mississauga, Ontario, Canada.

57.     Plaintiff Charlyne Jacobs-Burrow is a citizen of North Carolina, residing in Clayton, North Carolina.

58.     Plaintiff Leslie Jeter is a citizen of Texas, residing in Spring, Texas.

59.     Plaintiff Alexis Johnson is a citizen of Missouri, residing in Kansas City, Missouri.

60.     Plaintiff Tiffany Keating is a citizen of Connecticut, residing in Danbury, Connecticut.

61.     Plaintiff Sarah Kelly is a citizen of South Carolina, residing in Columbia, South Carolina.

62.     Plaintiff Khansa Khatoon is a citizen of Texas, residing in Allen, Texas.

63.     Plaintiff Susan King is a citizen of Virginia, residing in Aldie, Virginia.

64.     Plaintiff Katherine Kozy is a citizen of California, residing in Santa Clara, California.

65.     Plaintiff Katrina Lee is a citizen of Minnesota, residing in Saint Paul, Minnesota.

66.     Plaintiff Samitia Lee is a citizen of Virginia, residing in Woodbridge, Virginia.

67.     Plaintiff Meredith Lewis is a citizen of Arkansas, residing in Eagle River, Arkansas.

68.     Plaintiff M. L., a minor, is a citizen of Louisiana, residing in Metairie, Louisiana.

9

69.     Plaintiff Nicole Lovitt is a citizen of California, residing in Oakland, California.

70.     Plaintiff Ayesha Malik is a citizen of Alaska, residing in Anchorage, Alaska.

71.     Plaintiff Tara Mandel is a citizen of Florida, residing in Tampa, Florida.

72.     Plaintiff Holly Matesky is a citizen of Maryland, residing in Havre de Grace, Maryland.

73.     Plaintiff Ana Mendoza is a citizen of Florida, residing in Hialeah, Florida.

74.     Plaintiff Daniela Mendoza is a citizen of Florida, residing in Hialeah, Florida.

75.     Plaintiff Laurie Miller is a citizen of Ohio, residing in Akron, Ohio.

76.     Plaintiff Ericka Mitchell is a citizen of Florida, residing in Orlando, Florida.

77.     Plaintiff Nabila Mohammed is a citizen of California, residing in Chino Hills, California.

78.     Plaintiff Andrea Patin is a citizen of California, residing in Burbank, California.

79.     Plaintiff Lilly Percival is a citizen of Massachusetts, residing in Lynn, Massachusetts.

80.     Plaintiff Asia Perkins is a citizen of Connecticut, residing in Vernon, Connecticut.

81.     Plaintiff Nada Pottinger is a citizen of New York, residing in Brooklyn, New York.

82.     Plaintiff Allyson Rainey is a citizen of California, residing in Los Angeles, California.

83.     Plaintiff Leslie Ramos is a citizen of Florida, residing in Orlando, Florida.

84.     Plaintiff Vilma Ramos is a citizen of California, residing in Palmdale, California.

85.     Plaintiff Danielle Rand-Byrd is a citizen of Virginia, residing in Richmond, Virginia.

86.     Plaintiff Taryn Ray is a citizen of Arizona, residing in Mesa, Arizona.

87.    Plaintiff Mika Reed is a citizen of Illinois, residing in Carterville, Illinois.

88.    Plaintiff Cassidy Rephann is a citizen of California, residing in Northridge, California.

89.    Plaintiff Kelly Rephann is a citizen of South Carolina, residing in Gray Court, South Carolina.

90.    Plaintiff Katherine Robaina is a citizen of Connecticut, residing in Glastonbury, Connecticut.

91.    Plaintiff Dana Ryszetnyk is a citizen of Illinois, residing in Elmhurst, Illinois.

92.    Plaintiff Angela Shuford is a citizen of Virginia, residing in Arlington, Virginia.

93.    Plaintiff Sewit Sium is a citizen of New York, residing in Brooklyn, New York.

94.    Plaintiff Tara Sparks is a citizen of Indiana, residing in Goshen, Indiana.

95.    Plaintiff Traci Steo is a citizen of Maryland, residing in Randallstown, Maryland.

96.    Plaintiff Rebecca Taylor is a citizen of Texas, residing in Flower Mound, Texas.

97.    Plaintiff Cheryl Theriault is a citizen of Canada, residing in New Maryland, New Brunswick.

98.    Plaintiff Kristina Thomas is a citizen of New York, residing in Hampton Bays, New York.

99.    Plaintiff Taryn Tomasik is a citizen of New York, residing in Albany, New York.

100.    Plaintiff Carla Torrelli is a citizen of Pennsylvania, residing in Waterford, Pennsylvania.

101.    Plaintiff Yessenia Torres is a citizen of California, residing in South El Monte, California.

102.    Plaintiff Ashley Valentin is a citizen of New York, residing in Ridgewood, New

York.

103.    Plaintiff Bobbie VanSlyke is a citizen of Mississippi, residing in Ripley, Mississippi.

104.    Plaintiff Kenia Vazquez is a citizen of Florida, residing in Deltona, Florida.

105.    Plaintiff Sarina Vergara is a citizen of Pennsylvania, residing in Philadelphia, Pennsylvania.

106.    Plaintiff Geena Villotti is a citizen of Illinois, residing in Plainfield, Illinois.

107.    Plaintiff Michelle Walton is a citizen of California, residing in Long Beach, California.

108.    Plaintiff Angharad Waring is a citizen of the United Kingdom, residing in Aberystwyth, Ceredigion

109.    Plaintiff Sally Warm is a citizen of Tennessee, residing in Chattanooga, Tennessee.

110.    Plaintiff Gini Warner is a citizen of California, residing in Laguna Beach, California.

111.    Plaintiff Nanci Weitzman is a citizen of Maryland, residing in Bethesda, Maryland.

112.    Plaintiff Janice Williams is a citizen of Texas, residing in Arlington, Texas.

113.    Plaintiff Britney Winters is a citizen of North Carolina, residing in Fayetteville, North Carolina.

114.    Plaintiff Kristin Wynn is a citizen of New York, residing in Brooklyn, New York.

115.    Plaintiff Jennifer Zuniga is a citizen of Florida, residing in Miramar, Florida.

116.    Plaintiff Nikola Zurak is a citizen of Illinois, residing in Chicago, Illinois.

117.    Defendant Deva Concepts, LLC is a New York limited liability corporation with its principal place of business at 75 Spring Street, Floor 8, New York, New York 10012. Deva Concepts, LLC has appeared in this case.

## FACTUAL BACKGROUND

118.    Defendant designed, manufactured, marketed, sold and distributed the Products throughout the United States at all times relevant to this Complaint.

119.    Defendant markets the Products primarily to curly and wavy-haired women. Defendant's promotions encourage consumers to use the Products to the exclusion of traditional shampoos and all other brands.  It does this in a number of ways.

120.    By way of example, according to Defendant, the Products are revolutionary.  More specifically, Defendant's website devacurl.com/us claims that, in 2002, Defendant developed the No-Poo Original product, a cleansing conditioner Defendant describes as an "innovative new hair category" a "game-changing alternative to traditional shampoo" and "first of its kind."[1] "No-Poo changed the industry and the lives of countless curlfriends."[2]

121.    Defendant also touts the Products as "rooted in curl science," efficacious and subject to "extensive product testing."[3] "Here at Deva, we're all about the science behind hair."[4] It claims to "partner with talented chemists researching natural and functional ingredients, technologies, product textures, and innovative ways to" make the Products efficacious.[5]

122.    In the name of science and hair health, Defendant has placed "sulfates, parabens and

---

[1] https://www.devacurl.com/us/curl-101/our-story, as of November 11, 2018. *See also* Defendant's January 2018 and January 2019 archived website pages, Exhibit A, 1-3.

[2] https://www.devacurl.com/us/curl-101/product-philosophy, as of November 11, 2018. *See also* Exhibit A, 1-3.

[3] https://www.devacurl.com/us/curl-101/product-philosophy, as of November 11, 2018. *See also* Exhibit A, 16, 17, 19, 21, 30, 40, 43.

[4] https://www.devacurl.com/blog/devacurl-101-the-structure-of-hair/, as of November 11, 2018.

[5] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary, as of November 11, 2018.

silicones" on its ingredient "No List."[6] Defendant tells consumers it keep its "ingredients simple—everything curls need and nothing they don't."[7]  For those reasons, Defendant claims "All DevaCurl products—even the stylers—are gentle,"[8] free of harsh chemicals (as opposed to traditional shampoos),[9] made from "nature and functional ingredients."[10]  Defendant even represents that it "test[s] and validate[s] every product for quality, safety and performance."[11] In other words: Defendant claims the Products are healthy, safe and effective.

123.    At the same time, Defendant demonizes traditional shampoos, which it claims contains harsh ingredients that strip the hair of its natural oil and lead to frizz, damage and other undesirable results:

> The easiest thing you can do to get gorgeous curls and waves is to ditch your shampoo.  Without the harsh chemicals found in most traditional formulas, your hair-whether it is wavy, curly or super curly—is transformed.  No more dryness.  No more frizz.[12]

After a consumer forgoes shampoo to use DevaCurl products exclusively, "all you're left with is

---

[6] https://www.devacurl.com/us/curl-101/product-philosophy, "Ingredient 101," "The DevaCurl Ingredient 'No' List," as of November 11, 2018. *See also* Exhibit A, 15, 20, 22, 25, 28, 34, 35-38.

[7] https://www.devacurl.com/us/curl-101/our-story, as of November 11, 2018. *See also* Exhibit A, 34.

[8] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/ as of November 11, 2018.

[9] https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html as of November 11, 2018.

[10]  https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary as of November 11, 2018.

[11] Exhibit A, 21.

[12] https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html, as of November 11, 2018. *See also* Exhibit A, 35-38 ("How to Quit Shampoo" and "Why to Quit Shampoo").

beautiful, healthy curls that can handle any style you feel like trying."[13] "[F]rizz, stubborn tangles, dullness and dryness will improve big-time (if not flat-out disappear) when you start using one of our gentle cleaners followed by a nourishing DevaCurl conditioner."[14] A consumer's only fear is how much she will like the results. "Warning: Once you go Deva, you'll be hooked!"[15]

124.    In addition to science, testing and expertise, Defendant attributes the Products' many virtues to input from its customers, to whom it refers to as the "Devoted DevaCurl Community."[16]

> Every product is rooted in what we call, the "curl conversation." This conversation started 25 years ago at Devachan Salon. We listen to your story, your needs, your lifestyle, and develop products that will not only enhance your curls, but also enhance your life.[17]

In this way, Defendant suggests the DevaCurl brand is much more than the Products, it is a "philosophy." Indeed, Defendant uses the tagline, "It's not dogma, it's Deva®."[18]

125.    Furthermore, Defendant claims the Products enjoy wild popularity and celebrity endorsement. On its "Our Story" page from its website as of January 31, 2018, Defendant claims No-Poo "quickly be[came] a cult favorite" after its 2002 launch and has since "won dozens of awards from several different magazines."[19] It also describes the SuperCream Coconut Curl Styler

---

[13]   https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html, as of November 11, 2018.

[14]  https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, "Getting started with Deva cleansers and conditioners," as of November 11, 2018; Exhibit A 1-3, 13-14.

[15]  https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, Introduction, as of November 11, 2018; Exhibit A 1-3, 13-14.

[16]  https://www.devacurl.com/us/deva-community-statement, as of November 11, 2018; Exhibit A 1-3, 13-14.

[17]  https://www.devacurl.com/us/curl-101/product-philosophy, as of November 11, 2018; Exhibit A 1-3, 13-14.

[18]  https://www.linkedin.com/company/devacurl, as of November 11, 2018; Exhibit A 1-3, 13-14.

[19]  https://web.archive.org/web/20180216055350/http://www.devacurl.com/about.html, 2002 entry, as of November 11, 2018.

as a "hit" and claims that, with the addition of Low-Poo, One Conditioner Delight and Wavemaker Touchable Texture Whip, "DevaCurl has officially become the go-to brand for all curl kind."[20] Now, Defendant goes as far as to claim, "No-Poo changed the industry and the lives of countless curlfriends."[21]

126.    Similarly, Defendant suggests celebrities and other well-known individuals use the Products, even naming one of its website buttons "celeb news," where it includes pictures of Sarah Jessica Parker, Lisa Bonet, Keri Russell, among others.[22]  Here Defendant features stylists to the stars and other stories that are meant to suggest the Products are the secret to celebrity-looking hair.

127.    By way of example, on September 19, 2017, Defendant's DevaCurl website featured an interview with a Deva Certified Stylist, Christin Brown.[23] Despite its actual subject, the article—which is cleverly titled, "curly hair crush:  yara shahidi—spends very little time on Brown and, instead, works to suggest the actors from the television show, Black-ish, use the Products. In fact, the article begins with reference to show's stars attending the then-recent Emmy's.  It mentions how the show "called out Bow [a show character] for her weekly haircuts at Devachan," a salon operated by Defendant. It is mid-article before the reader learns anything about Brown, its subject, and then, only in connection to her work with Yara Shahidi, one of the show's actors. "So we turn to Christin, who's been working with Yara for about two years, to find out how she achieves those amazing curls." In this way, the article suggests Shahidi endorses the Products and that the Products are her "secret" to a "fierce head of hair."

---

[20] *Id.*, 2016 entry, as of November 11, 2018.
[21] https://www.devacurl.com/us/curl-101/our-story, "we took the 'poo; out of shampoo"
[22] https://www.devacurl.com/blog/?sfid=1632&_sft_category=celeb-news, as of January 25, 2022.
[23] https://www.devacurl.com/blog/curly-hair-crush-yara-shahidi/, as of November 11, 2018.

16

128.    A July 12, 2019 article offers a more recent example using the same technique.[24]  In this case, the article features an interview of a stylist to Michelle Obama, describing how the stylist "used DevaCurl on Obama to style her beautiful ombre curls for" Essence Fest. "We caught up with Damtew [the stylist] to learn how she achieved [Obama's] look." In this way, Defendant suggests Michelle Obama, as well as her stylist, endorse the Products. On information and belief, these celebrities do not regularly use the Products, do not sponsor or endorse the Products and are, in fact, unaffiliated with the Products or Defendant in any way.

129.    Defendant reinforces these surreptitious celebrity endorsements with "Transformation" pictures, showing before and after photos that purport to demonstrate how the average person can adopt these celebrity "secrets" as their own.[25]  However, these "average" people are actually paid models who do not regularly use the Products as recommended by Defendant[26] and, unbeknownst to consumers, Plaintiffs, in particular, the posted pictures show hair that has been styled by a  professional.

130.    In that same vein, Defendant pays to have the Products featured in magazines and then brags about its press coverage, never disclosing the coverage amounts to no more than a purchased ad.[27]  It also pays for mentions on blogs and in other social media, using influencers, usually those influencers who identify as members of the curly hair community and dedicate a significant portion of their content to curly hair maintenance, routines and other tutorials. An

---

[24] https://www.devacurl.com/blog/deva-inspired-stylist-yene-damtew-used-devacurl-michelle-obamas-iconic-curls-essence-fest/, as of November 11, 2018.

[25] https://www.devacurl.com/us/curl-101/transformations, as of November 11, 2018. *See also* Exhibit A, 23.

[26] That is to say, to the exclusion of all other products or, at the very least, without use of traditional shampoos.

[27]https://web.archive.org/web/20180123163258/http://www.devacurl.com/about/press.html

influencer accepts payment to promote a particular good or service on social media, such as Instagram, YouTube and/or Twitter, for which they have a large audience. Defendant hires influencers as part of its overall marketing strategy and directs these influencers with regard to Products-related content. *See, infra,* Allegations regarding Agency. Below is an example of social media content posted by influencer Ayesha Malik (known as "spisha"), a Plaintiff in this lawsuit, hired by Defendant, offering a product package named by Defendant after the influencer (the "Ayesha Bundle") and a promotional code created by Defendant specifically for this post ("spisha"):



131.    Defendant compensates influencers based on the size of their audience, commissions on sales of the Products made through "affiliate links" on their social media sites and/or with free Products. Defendant does not disclose to consumers its financial relationship with influencers. Similarly, it does not disclose to consumers that it controls the content of its sponsored influencers.

132.    To proselytize the Deva "philosophy," and further entangle and recruit additional

consumers, Defendant engages "DevaCurl ambassadors" or brand ambassadors. As opposed to influencers, brand ambassadors are existing customers whom the Defendant has identified as brand loyalists willing and capable of promoting the Products with their friends. Brand ambassadors usually have a much smaller audience than influencers and, thus, are sometimes referred to as micro-influencers. Defendant incentivizes these brand ambassadors to promote the Products, on information and belief, through direct payment, commissions on sales through affiliate links and/or free Products or hair styling services. Defendant controls the Products-related content of brand ambassador posts as with influencers. Defendant solicited brand ambassadors on its website until early 2020,[28] when one of its most prominent influencers expressed serious concerns about the safety of the Products.  As with influencers, Defendant does not disclose its financial relationship with brand ambassadors nor its role in the process of developing Products-related content.

133.    Research shows influencer marketing to be quite compelling. Researchers found that influencer advertisement generates 277% greater emotional intensity and 87% higher memory encoding than television ads.[29] In one study, 93% of women, all of whom consider themselves "social media savvy," had purchased something at an influencer's suggestion.[30] Another report found businesses earned an extraordinary 520% return on every dollar spend toward influencer

---

[28] *See* Exhibit A, 4.
[29] Alexandra J. Roberts, *False Influencing*, Georgetown Law J., p. 4, vol. 109, No. 1, 2020 ("False Influencing") (citing Blake Droesch, What Does Your Brain on Influencer Marketing Look Like?, eMarketer (Aug. 26, 2019) https://www.emarketer.com/contect/your-brain-on-influencers-neuroscience-study-explains-the-effects-of-influencer-marketing [https://perma.cc/5GXUFY8L].
[30] False Influencing, 4 (citing Stefania Pomponi Butler, Social Media and the Female Holiday Shopper (Infographic), BUSINESS2COMMUNITY (Nov. 15, 2012) https://www.business2community.com/social-media/social-media-and-the-female-holiday-shopper-infographic-0332987 [https://perma.cc/U6QW-JF89].

marketing.[31] It is not surprising then, that by 2018, Defendant relied heavily on influencer marketing. The apparent authenticity of the influencer marketing drives its success.[32] Consumers find influencers to be much more credible than the brand and, consequently, trust influencers more than even their real-world friends.[33]

134.    In addition to its social media promotions and influencer marketing, Defendant directly operates two Devachan salons, both in New York City.[34] But "[d]on't worry" if you are not near the city, Defendant "train[s] stylists all over the country so you can" buy Defendant's services and the Products.[35] Indeed, Defendant offers a DevaCurl academy at which a stylist can become DevaCurl certified after completing three levels of paid curriculum.[36] Core to the DevaCurl curriculum are the Products.[37] For those, Defendant offers *free* online training so that "anywhere, anytime" a stylist can begin using—and, of course, selling—the Products. Defendant promotes

---

[31] False Influencing, 4 (citing NeoReach, Influencer Marketing Benchmark Report 2019, (Feb. 12, 2019)                    https://neoreach.com/influencer-marketing-benchmark-report-2019/ [https://perma.cc/QT44-LEM3] and Dominique Jackson, Social Proof: How to Use Marketing Psychology    to    Boost    Conversions,    SPROUT    SOCIAL    (May    29,    2018) https://sproutsocial.com/insights/social-proof/ [https://perma.cc/2P39-ZQY9] ("Businesses are averaging $6.50 for every $1 spent on influencer marketing.")).

[32] False Influencing, 3.

[33] False Influencing, 3-4 (citing Gavin O'Malley, *Many Followers Trust Influencers' Opinions More    Than    Friends'*,    Digital    World    Daily    (Aug.    21,    2019) https://www.mediapost.com/publications/article/339579/many-followers-trustinfluencers-opinions-more-th.html [https://perma.cc/F7NH-SNRC] (In a 2019 Sideqik poll, 70% of consumers surveyed said that they trust the opinions of influencers as much or more than those of their real-world friends.).

[34] https://www.devacurl.com/us/salons, as of November 11, 2018. *See also* Exhibit A, 19.

[35] *Id.*

[36] https://www.devacurlpro.com/us/education, as of November 11, 2018. *See also* Exhibit A, 24, 26, 27.

[37] https://www.devacurlpro.com/us/education, Product Pro, as of November 11, 2018. *See also* Exhibit A, 24, 26, 27.

stylists who complete the paid training on its website through a directory program on its website,[38] by providing marketing materials[39] and strategy and through stylist support services.[40]

135.    Defendant also sells the Products through major retailers, such as Sephora, Walgreens, Ulta Beauty, Target and Wal-Mart, pursuant to written agreements. Defendant provides these retailers with product descriptions and other promotional materials, which the retailers are required to use in their promotion of the Products.

136.    Pursuant to guidance issued by the Federal Trade Commission (the "FTC") in 2009, "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed." Guides Concerning Use of Endorsements and Testimonials in Advertising, 16 C.F.R. § 255.5 ("FTC Guidelines"). Defendant's failure to disclose its payments and other financial incentives offered to influencers, brand ambassadors, hair stylists, celebrities and retailers and its control over the content of the promotional message of these third parties constitutes a violation of FTC Guidelines. The personal "Deva Transformation" is the denouement to Deva indoctrination. "If you find your curls damaged, lifeless, or you're just overall unhappy with them, it's time for a transformation."[41] "[A] Deva Transformation means quitting shampoo." It starts with a "DevaCut" at one of Defendant's salons.[42]  It begins and ends with "completely switching to products that are formulated without

---

[38] https://www.devacurl.com/finder, as of November 11, 2018. *See also* Exhibit A, 24, 26, 27.
[39] https://www.devacurlpro.com/us/marketing-downloads
[40] https://www.devacurlpro.com/us/education/stylist-finder, "got questions, we've got answers!"
[41]    https://pblog.devacurl.com/blog/guide-deva-transformations/, "what is a Deva Transformation?", as of November 11, 2018. *See also* Exhibit A, 36.
[42] *Id.*, "where do I start?" , as of November 11, 2018. *See also* Exhibit A, 36.

sulfates, silicones, and parabens to get the most out of your curls."[43] One testimonial featured on Defendant's website sums up the marketing goal:  "[P]lanning on throwing out all my curly products and being strictly deva curl.  (sic) I'm now a deva girl."[44]

137.    Defendant plans, creates and executes the website, social media accounts, magazine advertising, community of affiliated salons, influencer and brand ambassador programs, DevaCurl Academy, DevaCurl certified and other DevaCurl-exclusive and trained stylists, apparent endorsements, transformation photos and videos, testimonials, retail suppliers and other direct marketing channels as part of an overall international advertising campaign (the "Campaign"). Defendant's Campaign includes multiple false and/or misleading representations, including, but not limited to:

a.    The Products are "safe;"

b.    The Products are gentle, and do not strip hair of natural oils or weigh hair down as opposed to shampoos;

c.    The Products contain only "good" ingredients and are "100% free of sulfate, silicone, paraben, Phthalate, mineral oil and gluten," which creates the false impression that the Products do not contain formaldehyde, a known allergen with carcinogenic effects, or other harmful or harsh ingredients;

d.    The Products should be used to exclusion of traditional shampoos and other brands of hair care products;

e.    The Products clean and condition hair and scalp;

---

[43] *Id.*, "what is a Deva Transformation?" , as of November 11, 2018. *See also* Exhibit A, 36.
[44] https://www.devacurl.com/us/products/kits/how-to-quit-shampoo-kit/v/29942629630034, as of November 11, 2018. *See also* Exhibit A, 36-38.

    f.   The Products are "rooted in science" "extensively tested," "validate[d] . . . for quality, safety and performance," "perfected" and "introduced to the market only after . . . undergoing strict safety testing protocols;"

    g.   Influencers, brand ambassadors, stylists, celebrities and retailers endorse the Products without the influence of financial or other gain, and, with regard to all but retailers, regularly used the Products as recommended by Defendants, that is to say, to the exclusion of other competitive products or, at the least, traditional shampoos. In addition, with regard to influencers, brand ambassadors and celebrities, Defendant affirmatively mispresented that these third parties could achieve their hair styles without the use of professional hair stylists.

138.    By repeating these claims over and over on its website, in social media pages and sponsored placement ads online and in magazines, Defendant banks on the psychological concept known as the "illusion of truth." The more you repeat a claim, the more likely your audience is to believe it is true.

139.    In fact, the Products are none of these things. The Products contain large quantities of non-water-soluble oils and silicones but lack sufficient cleansers to remove these non-water-soluble ingredients, leading to build up and impacting of dead skin cells, the Products themselves, dirt and debris on the scalp and in the hair follicle. This buildup increases over time as consumers use more of the Products.

140.    These conditioning agents include glycerin and other plasticizing agents, all of which reduce the strength of hair, leading to breakage and damage, particularly with curly hair that is drier and more fragile than straight hair because of the physiology of the hair follicle.

141.    This overuse of conditioners and plasticizing agents combined with underuse of sufficient cleanser leads to very serious injuries. Because the Products coat the hair and scalp with substances that elude removal by even regular shampoos, must less the Products' inadequate cleaners, in addition to weakened and damaged hair, users develop clogged, inflamed, impacted and infected hair follicles—in other words, Seborrheic Dermatitis ("SD")—characterized by red, itchy, inflamed, blistered, flaking or scaling skin as well as hair loss.  The American Hair Loss Association explains:

> Although all this inflammation is not specifically directed at the hair follicle, if hair follicles are in the vicinity of the inflammatory cells then they can still be adversely affected. Hair follicles find inflamed skin an unhealthy environment in which to grow. Thus seborrheic dermatitis may non-specifically cause diffuse hair loss.[45]

This, in turn, can lead to yeast and bacterial infections as microbes have been shown to increase with SD and thrive on the conditioning agents found in the Products.[46]  Defendant concedes as much.  In a blog about hair shedding, Defendant points to scalp build up as a potential cause of hair loss.[47]

142.    At the time this suit was filed, many of the Products contained ingredients Defendant expressly stated they did not, including sulfates and silicones.

143.    At the time this suit was filed, some of the Products, including Set it Free, which is a leave on product, also contained formaldehyde and/or formaldehyde releasers[48]—an allergen,

---

[45]  *See* American Hair Loss Association, *Seborrheic Dermatitis.*  Found at https://www.americanhairloss.org/types_of_hair_loss/infectious_agents.html.
[46]  *Id.*
[47]  https://www.devacurl.com/blog/hair-shedding -101
[48]  Formaldehyde releaser is term used to refer to ingredients that release formaldehyde over time.

carcinogen and endocrine disrupter to which such a relatively large and growing portion of the population is allergic or sensitized. In fact, the American Contact Dermatitis Society named it allergen of the year in 2015. In addition, formaldehyde is one of only five chemicals that have been listed by the Consumer Product Safety Commission as a "strong sensitizer" since 1961.

144.    When it comes to beauty products sold in the U.S., there is an absence of regulation setting standards for the use of formaldehyde and similar allergens and the U.S. Food and Drug Administration ("FDA") has little authority to address it. The law does not require cosmetic companies like Defendant to share formulae, testing or adverse event information with the FDA—before or after the product is placed on the market. Nevertheless, leaders in the industry have abandoned or are in the process of abandoning use of formaldehyde, particularly in leave on products.

145.    The Products also contain plant extracts not commonly used in cosmetic products and to which many consumers may be sensitized or allergic.

146.    Likewise, Defendant generically lists "fragrance" on its ingredient list without disclosing the ingredients it uses for this purpose. This concealment is suspicious, especially given that regulatory agencies and other scientists have long found fragrance ingredients to be problematic in cosmetic products. Hydroxycitronellal and a related substance, Hydroxyisohexyl 3-Cyclohexene Carboxaldehyde, commonly referred to collectively as HICC, are good examples. Similar to formaldehyde, HICC causes contact allergic dermatitis in a large and quickly growing

---

As industry standard has moved away from use of the formaldehyde, manufacturers like Defendant use formaldehyde releasers in attempt to fool consumers since the chemical names for these components are not widely known. Hereinafter, Plaintiff refers to both formaldehyde and formaldehyde releasors as "formaldehyde."

percentage of the population.[49] "HICC has for more than 10 years been recognized as an important allergen with more cases documented in the scientific literature than for any other fragrance chemical in this period.  HICC has been shown to be a significant cause of disease . . . ."[50] Consequently, in 2012, the SCCS recommended HICC be banned for use in all consumer products.[51] In 2017, the SCCS found HICC (and fragrances atranol and chloroatranol) unsafe for use in cosmetic products[52] and the European Union has since banned their use.

147.    As with formaldehyde, there is currently no U.S. regulation for fragrance substances like HICC. However, the International Fragrance Association ("IFRA") promulgates standards known as the IFRA Standards and part of the IFRA Code of Practice, which "form the basis for globally accepted and recognized risk management system for the safe use of fragrance ingredients." In 2014, IFRA also called for the discontinuation of HICC in consumer products.[53]

148.    Sensitivity to formaldehyde, plant extracts and fragrance ingredients may develop over time, and the likelihood of becoming sensitized or allergic to it increases with the amount and duration of exposure and upon subsequent exposure. Those with sensitivity can have reactions ranging from allergic contact dermatitis ("ACD"), resulting in red, itchy, inflamed and/or blistered skin, to severe chemical burns. ACD (and chemical burns), in turn, lead to extreme diffuse hair

---

[49] Scientific Committee on Consumer Safety, Opinion on Fragrance Allergens in Cosmetic Products, at 8, 11-14, 98-102, found at
https://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_073.pdf.
[50] *Id.* at 102.
[51] *Id.* at 8.
[52] *See* http://www.echemi.com/cms/3261.html.
[53] *See* Comments to EU Commission Proposals on Fragrance Allergens, Internt'l Fragrance Assoc'n, May 9, 2014, found at https://ifrafragrance.org/docs/default-source/position-papers/23431_pp_2014_05_09_ifra_comments_to_public_consultation_on_allergens_9_may_2014-(1).pdf?sfvrsn=188bcd9d_6.

loss according to treating physicians[54] and researchers.[55] As one Yale trained dermatologist explained,

> [I]f the scalp gets inflamed enough from the use of a cosmetic product, hair loss can certainly be a symptom. The condition is called allergic contact dermatitis (ACD), and it causes irritated, often itchy, red rashes in areas of contact with various chemical products. Preservatives, dyes, surfactants, fragrances, and plant extracts are among the common ingredients that cause this problem.[56]

149.    In more serious cases, exposure to this sort of allergen can trigger a more systemic auto immune disease, such as alopecia areata, an auto-immune related hair loss. As discussed by the National Association of Alopecia Areata, a non-profit that "educates the public about alopecia areata,"[57] although its cause is still somewhat uncertain, alopecia areata is a condition understood at this time to be caused by, among other things, external substances, such as allergens.[58] Just as with ACD, the exposure stimulates the body's immune system, causing it to mistake—and attack— normal cells for foreign invaders.[59]

150.    Defendant's instructions for use of the Products exacerbates these injuries. Defendant tells customers the No-Poo products are the first in a three-step process to beautiful, healthy curls. Again, Defendant instructs customers to use its cleansing conditioner products (the "No-Poo" products) to the exclusion of all other cleansers, most especially traditional shampoo. It

---

[54] *See* Dr. Mona Gohara, *Your Conditioner Could Actually be Causing Hair Loss*, Fitness, (APP 133-34).

[55] Dr. Antonella Tosti, et al., *Telogen Effluvium After Allergic Contact Dermatitis of the Scalp*, Arch Dermatol., February 2001, (APP 135-147).

[56] *See* Dr. Mona Gohara, *Your Conditioner Could Actually be Causing Hair Loss*, Fitness Magazine.

[57] Nat'l Alopecia Areata Foundation, *About NAAF*, https://www.naaf.org/about.

[58] *See* Nat'l Alopecia Areata Foundation, *What You Need to Know About Alopecia Areata*, https://www.naaf.org/alopecia-areata.

[59] *See id.*

also directs users to apply the No-Poo products directly to their scalp one section at a time. "The product won't spread on its own, so use your fingertips to massage it evenly over the scalp. Take the time to really get in there with your fingers and rub vigorously all over your scalp."[60] The videos demonstrating this process encourages consumers to use large palmfuls of the Product for each section of the scalp, much more than is standard for other products.[61]

151.    Defendant also recommends use of a whole host of its leave on DevaCurl conditioners and styling products, increasing both the amount and duration of exposure in that way as well.

152.    Defendant's marketing of the Products as part of the Campaign also exacerbates injury and has prevented Plaintiffs and others from discovering they had suffered cognizable injuries caused by Defendant's wrongful conduct. It never occurred to Plaintiffs and other users that the Products—touted by Defendant as gentle, safe, free from harsh chemicals and science-based— could actually be hurting their hair and scalp, not helping. To the contrary, many believed their situation would have been worse but for the Products. Some worried, along with their families, their hair loss, scalp issues and other personal injuries could be symptoms of a dire health condition. Many of them went from doctor to doctor desperate for answers, all to no avail.

153.    Defendant has made matters worse by failing to disclose—indeed, actively concealing— the number of complaints of hair loss, scalp issues and other injuries it has received from customers and the FDA. Defendant describes most hair shedding as normal and

_____

[60] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, as of November 11, 2018. *See also* Exhibit A, 29, 30, 31, 41, 42.
[61] https://www.devacurl.com/us/curl-101/how-to-deva-3-step/super-curly-deva-3-step

unavoidable.[62] Defendant attributes excessive hair loss to a laundry list of other potential causes, such as stress, dandruff, losing weight, medical conditions, birth, among others.[63] Defendant has also removed discussion of these sorts of injuries from social media under its influence or control. Had Defendant disclosed these complaints, some Plaintiff would have identified the Products as the culprit much sooner, some could have avoided injury altogether and all would have had each other for comfort and support.

154.     While Defendant claims to conduct "extensive product testing" prior to placing the Products on the market, that pre-market testing often amounts to no more than using its Products in its own Devachan salons."[64] This so-called testing is not scientific, and it does not meet industry standards. At a minimum, a clinical study is controlled to isolate the product and ensure uniformity in its procedure, it includes a statistically significant number of participants, and it uses doctors and scientists to assess exposure on par to a consumer's actual use of the product for a time period that allows for scientifically sound results. Rather than engage in scientific studies to ensure product safety, Defendant actually belittles some industry standard testing methods, "[w]e test our products on actual people, not mannequins or hair swatches. Devachan Salon is our thinktank and product *playground* . . . ."[65]

155.     Only now, after thousands of people have reported hair loss, scalp issues and other personal injuries, Defendant claims to have "worked with an independent third-party toxicologist

---

[62] https://www.devacurl.com/blog/hair-shedding -101
[63] *Id.*
[64] https://www.devacurl.com/us/curl-101/our-story, extensive product testing, as of November 11, 2018. *See also* Exhibit A, 19, 21.
[65] https://www.devacurl.com/us/curl-101/our-story, curlfriend & stylist tested and approved (emphasis added), as of November 11, 2018. *See also* Exhibit A, 21.

to verify the safety of [its] (sic) formulas."[66] It has refused, however, to make those tests public despite the desperate pleas of Plaintiffs and other injured consumers who are trying to understand why and to what extent they have been harmed. Instead, Defendant has posted summaries of certain testing it now claims was performed prior to marketing the product, including the very testing done on mannequins or hair swatches it denounces in other areas of its website.[67]

156.    A review of the actual test results concealed by Defendant are important; nevertheless, Plaintiffs can draw certain conclusions from the summaries alone. For instance, many of the tests which Defendant claims prove the Products safe, such as the product stability and ocular tests, are not designed to detect defects that would result in Plaintiffs' injuries. These tests do not exonerate the Products.

157.    Other testing, such as the Human Repeat Insult Patch Testing and Forty-Eight Hour Patch Testing (collectively "HRIPT"), must use adequate concentrations of the product (and with a statistically significant number of test subjects) to give accurate indication of the Products' safety. Scientific standards for these concentrations have changed given new information about reactions at lower dosages. Unless these tests used the latest concentration standards, the results say nothing about product safety. In fact, given use of formaldehyde in some of the Products, we would necessarily expect a reaction in some percentage of the test subjects, and Defendant's claim that results show "no potential for dermal irritation or allergic contact sensitization" suggest the tests were not performed to standard.

158.    By way of a final example, the Toxicology reports to which Defendant refers must

---

[66] https://www.devacurl.com/us/deva-community-statement, (sic) devacurl statement
[67] https://devacurl-blog.s3.amazonaws.com/wp-content/uploads/2020/03/10140715/DevaCurl-Testing.pdf, as of November 11, 2018.

also take into account (1) scientific research revealing human reactions at much lower dosages than previously believed, (2) many—even most—of the Products are intended for leave on usage, (3) the extraordinary amount of the No-Poo products recommended for use by Defendant, and (4) how ingredients in the formulae work together, not just in isolation. What is more, Defendant does not even purport to have performed patch testing and toxicology reports for *all* of the Products.

159.    Although Defendant has received thousands of complaints and learned of countless others through the FDA, social media and major media outlets, it has failed and refused to formally recall any of the Products. Nor has Defendant issued any new warnings or otherwise disclosed the defects and dangers associated with the Products. Defendant has undertaken what is essentially a voluntary recall. Defendant usually accepts returns and issues refunds only for Products returned within sixty (60) days of purchase. However, after concerns about the safety and efficacy of the Products became public, Defendant allowed customers to return Products, "no questions asked," for a full refund without regard to the date of purchase and the amount of product left in the returned bottle(s).

160.    The following photographs depict the type of hair loss and scalp injury damage caused by the Products.










161.    In addition to hair loss and scalp injuries, some Plaintiffs have also suffered injury to their endocrine system—more specifically, infertility—and have experienced systemic auto immune responses. This is in keeping with what we know about formaldehyde, which is not only an allergen, triggering auto immune responses, but also a carcinogenic linked to cancer as well as disruption of the endocrine system, which is responsible for making and regulating critical hormones.

## PLAINTIFF-SPECIFIC ALLEGATIONS

162.    Plaintiff Crystal Adams purchased the DevaCurl products between 2017-2020 online through Ulta based on representations made by Defendant on its website see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff saw and purchased the Product at the Ulta store. She then went online to the DevaCurl website to see the whole line of Products.  Plaintiff saw depictions of women of color

using the product. Plaintiff was looking for a product that worked well with her hair type and kept curls hydrated and maintained the health of her hair. On information and belief, Ulta made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of Styling Cream-Touchable Curl Definer, Leave-In Decadence-Ultra Moisturizing Leave-In Conditioner, Ultra Defining Gel and One Condition Decadence, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

163.    Plaintiff Huguette Ampudia purchased the DevaCurl products between August 2018-February 2020 online through Ulta, Sephora and Amazon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers The Glam Belle, Manes by Melle and India Baston in 2018, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff did not access the DevaCurl website until after the lawsuit. Plaintiff used the Products as directed, including the use of Light Defining Gel, Supercream Coconut, B'Leave Styling Gel, NoPoo Decadence, Melt into Moisture Mask, One Condition Original and Frizz Volumizing Foam, to the exclusion of regular shampoos. Plaintiff suffered hair loss and hair breakage.

164.    Plaintiff Ericka Applebee purchased the DevaCurl products between April 2019-

November 2019 online, at the Adonia Salon, Ulta Beauty and Amazon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  Plaintiff accessed the DevaCurl website prior to purchase and relied on Defendant's representation on its website that the Product is 100% cruelty free and 100% paraben, sulfate and silicone free.  Plaintiff used the Products as directed, including the use of No Poo, One Condition, B'Leave In, Ultra Defining Gel, Arc Angel Gel, Frizz Free Volumizing Foam, the Supercream Coconut Curl Styler, Styling Cream Touchable Curl Definer, Decadence Shampoo/Conditioner, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, pimple like sores on her chest, scalp and shoulders, and extremely dry skin and scalp.

165.    Plaintiff Dayana Ariza-Gonzalez purchased the DevaCurl products between 2012-May 2019 online through Amazon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on YouTube influencer Sunkissalba, and to the best of her knowledge, accessed the DevaCurl website prior to purchase of the Product, both of which echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-1333. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No-Poo Original, No Poo Decadence, DevaCurl One Condition Decadence, DevaCurl Set it Free, DevaCurl Light Defining Gel, Deep Sea Repair Seaweed Strengthening Mask, DevaCurl Buildup Buster Hair Cleanser, DevaCurl Supercream, DevaCurl Frizz Free Volumizing Foam, Melt

into Moisture, Heaven in Hair, One Condition, DevaCurl Styling Cream, DevaCurl Ultra Defining Gel, DevaCurl Arc Angel and DevaCurl Arc Angel Firm Hold Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and scalp/facial rash.

166.    Plaintiff Charlene Aviles purchased the DevaCurl products between January 2014-January 2020 online from Ulta based on representations made by Defendant's on its website and in person based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. To the best of her knowledge, Plaintiff accessed the DevaCurl website prior to her initial purchase when she was researching the Product when it was recommended to her by a friend. In February 2014, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Joy Rudisill, at Joyfully Curly, 2134 N. Sharon Amity Road, Charlotte, NC 28205, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, including claims the Products are natural with no harsh chemicals or sulfates. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff conducted a Google search for her stylist by name, she was not looking for a Deva stylist at the time, when she clicked

on the map to see where she was located it took her to the DevaCurl website. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, and Ultra Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, poor hair condition, hair discoloration, scalp/facial irritation or rash.

167.    Plaintiff Steffane Barrett purchased the DevaCurl products between February 2019-January 2020 at the Clore Beauty Supply Store based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, Plaintiff heard about the Product through word of mouth form a the Urban Curls Salon in 2018, who echoed representations made by Defendants, see *supra*, Background Facts, paras. 118-133, and again from a student in 2019. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of DevaCurl No-Poo Original Zero Lather Conditioning Cleanser and DevaCurl One Condition Decadence Ultra Moisturizing Milk Conditioner, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

168.    Plaintiff Rachel Bird was gifted the DevaCurl products between 2009-2018 until she could purchase it on her own from 2018-summer of 2019 online through Ulta based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Oasis Salon, 825-C Rockville Pike, Rockville, MD 20852, when she went to for her first DevaCut as a child around 2010. This first cut gave her the idea that Deva was the gold standard for curly hair, and in 2018, by the time Plaintiff graduated and had income of her own, she used Deva exclusively, accessed the DevaCurl website prior to her first independent purchase and saw a Deva stylist from Anitakurl Salon, 1661 Washington Street, Boston, MA 02118 and McKayla from Shan Salon, 169 Amory St., Brookline, MA 02446, who also encouraged her use of Deva and echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Lo-Poo, Buildup Buster, Arc Angel, Volumizing Foam, Wavemaker, One Condition Decadence and Original, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

169.    Plaintiff Randy Ellen Blaustein purchased the DevaCurl products between 2012-2019 from Glama-Rama Salon and from the DevaCurl website www.devacurl.com, based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2012, Plaintiff also relied on recommendations made to her by the stylists from the DevaCurl Salon, Adrian and Theresa, at Madusalon, 2250 Union St., Suite 1A, San Francisco, CA 94123 where she went for her first DevaCut, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her DevaCut and first purchase and began to purchase the Product online.  On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  Plaintiff used the Products as directed, including the use of No-Poo, No-Poo Original, One Condition, One Condition Original, Low Poo Delight, AnGel, Ultra Defining Gel, Set it Free, Supercream, Build Up Buster, Melt into Moisture Mask, Deep Sea Repair, Beautiful Mess and Heaven in Hair, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash, fingernails that were dry, brittle and ridged and chronic eye infections.

170.    Plaintiff Corey Cain purchased the DevaCurl products between January 2018-August 2020 online through Amazon and Target based on representations made by Defendant on its website as well as in person at Target, Beauty Supply Stores, CVS, Walgreens and Rite Aid

based on representations made by these retailers that echoed those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff was also encouraged to use the Products by virtue of a friend who was also biracial and used DevaCurl with seemingly great results. Plaintiff wanted a product that worked well for ethnic hair and ethnic curl patterns.  On information and belief, Target, CVS, Walgreens, Beauty Supply Stores and Rite Aid made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, No Poo Original Conditioner, Leave In Conditioner, Gel and Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

171.    Plaintiff, Stacey Carpenter purchased the DevaCurl products between 2005- 2020 at the Ulta Store, based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the Devacurl website before purchasing the Product to research the type of Product for her curl pattern and also found information about DevaCurl stylists in her area and North Carolina. It also told her which stores to purchase the Product from near her.  Plaintiff purchased her first Product from Ulta in 2005. Over the years Plaintiff used DevaCurl and relied on You Tube influencers Mahogany Curls, Stephanie Mero, BiancaReneetoday and DevaCurl YouTube, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133.  On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other

incentives. On information and belief, Ulta made these representations on Defendant's behalf pursuant to the retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Arc Angel Gel, One Conditioner, One Conditioner Decadence, Supercream, Mist-er Right Spray and Set It Free Spray, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

172.    Plaintiff Ashley Carter purchased the DevaCurl products between July 2017-January 2020 from the Looks Salon and from Ulta based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website prior to purchase and relied on Defendant's claim the Products were the best available for curly hair. In July 2017, Plaintiff also relied on recommendations made to her by stylist from the DevaCurl Salon, Amanda Payne at Looks Salon and Spa, 6822 Oak Hall Lane, Colombia, MO 21045, when she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's

control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No-Poo, One Condition, Mist-er Right, Light Defining Gel, Set it Free and Supercream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

173.    Plaintiff Monica Castello purchased the DevaCurl products between July 2018-February 2020 online through the DevaCurl website www.devacurl.com, based on representations made by Defendant on its website, and in person at Ulta based on representations made by Defendants, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencer Ayesha Malik in 2018, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of One Condition Shampoo, One Condition Decadence Conditioner, Melt into Moisture Deep Mask, Beautiful Mess Pomade, Ayesha product bundle, Matcha Butter Conditioning Mask and Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, poor hair condition, scalp/facial irritation or rash, and scalp/facial rash.

174.    Plaintiff Amanda Clay purchased the DevaCurl products between June 2019-

January 2020 online through devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website prior to purchasing the Product and relied on Defendant's claim the Products were the best available for curly hair. Plaintiff also relied on influencers HiFelicia and BiancaReneeToday that Plaintiff watched in 2019. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Wavemaker, High Shine, One Condition Delight, Light Defining Gel, Frizz Free Foam, Low Poo Shampoo and Low Poo Delight, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

175. Plaintiff Janet Cleary purchased the DevaCurl products between 2015-December 2019 from Uptown Curl Salon, Ulta and online at devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In March 2015, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Dede at Uptown Curl, 2006 Hennepin Ave., Minneapolis, MN 55405, where she went for her first DevaCut, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133, and convinced Plaintiff that getting a curly girl haircut and using DevaCurl products would make her love her curly hair. Plaintiff accessed the DevaCurl website after her first purchase and but before she purchased additional Products online. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise

subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Lo Poo Delight Shampoo, No Poo Original Shampoo, No Poo Decadence Shampoo, One Condition Delight, One Condition Original, Ultra Defining Gel, Frizz Free Volumizing Foam, Wavemaker and Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss and bald spots.

176.    Plaintiff Dannah Collins purchased the DevaCurl products between 2018-2019 purchased through her hair stylist based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products, including, but not limited to, Defendant's claim the Products were the best available for curly hair Plaintiff accessed the DevaCurl website prior to purchasing the Product. Plaintiff also relied on YouTube influencer Ayesha Malik that Plaintiff saw in 2018, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, Deva Towel, Supercream, Arc Angel, Beautiful Mess, B'Leave-In, Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration.

177.    Plaintiff Jessica Collins purchased the DevaCurl products between 2014-2020 Ulta and Sephora based on representations made by Defendant, see *supra*, Background Facts, paras.

118-133, regarding the safety, formulation and efficacy of the Products, regarding the brand ethos, packaging, mission and Defendant's representation it was the first come out with a "no poo" hair cleanser. Plaintiff also relied on reviews that she read on a natural hair care blog called, "Naturally Curly" in 2012 that promotes the Product. Plaintiff accessed the DevaCurl website after making her first purchase of the Product but before making additional purchases. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Original Zero Lather, DevaCurl One Condition Decadence Conditioner, Build Up Buster, DevaCurl Light Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss and hair breakage.

178.    Plaintiff Kelsie Coray purchased the DevaCurl products between January 2017-October 2019 online from devacurl.com and Ulta based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers HiFelicia, Stephanie Mero, Ayesha Malik, Boss Curl, Penny Tovar, Bianca Renee Today, and India Batson beginning in early 2017, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after watching influencers and before making her first purchase. Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Erin Boyle at Urban Retreat Salon and Spa, 12504 NW 36TH Avenue, Vancouver, WA, US 98685, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional

program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of One Condition Original, Original Low Poo Shampoo, B'Leave In, Ultra Defining Gel, Sea Repair Mask, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and tender spots on her scalp that would flare up.

179.    Plaintiff LaDawn Craft Parrish purchased the DevaCurl products between 2018-2019 online through Ulta and CosmoProf based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2017/early 2018 Plaintiff also relied on YouTube influencers HiFelicia, BiancaReneetoday, Discocurls, Leximarcellaa, Amanda Bicket and Curlsandblondies who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website before purchasing the Product. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting

the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Original No Poo, Styling Cream, Spray Gel, Delight Low Poo Cleanser, Delight Conditioner, Wash Day Wonder, Build Up Buster, B'Leave In, Decadence Zero Lather Milk Cleanser, Decadence Ultra Moisturizing Milk Conditioner and Supercream Coconut Cream Styler, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

180.    Plaintiff April Creel purchased the DevaCurl products between October 2018-August 2019 online through Ulta and www.devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first learned of the Products in the fall of 2018, when a friend used DevaCurl with seemingly great results. Plaintiff purchased trial size Products. After her initial purchase, she accessed the DevaCurl website to make additional purchases.  Plaintiff watched informational videos on the DevaCurl website that echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Build Up Buster, Original Low Poo, One Condition Original, Low Poo Delight, One Condition Delight, Wavemaker, Melt Into Moisture, Light Defining Gel and Ultra Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

181.    Plaintiff Elizabeth Crampsey purchased the DevaCurl products between 2008-2020 online through www.devacurl.com and Amazon, at salons that sold Deva Products and possibly in

person from Ulta, based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  Plaintiff first learned of the Product from a friend who used the Product and liked the way her hair looked. In 2008, Plaintiff also relied on recommendations made to her by the stylist from a Salon, Mindy at Carriage House Salon in Cambridge, MA. To the best of her knowledge, Plaintiff is unsure if it was a DevaCurl Salon, but Mindy used the Products on her hair. After purchasing the Product from the salon and having the Product used on her hair, Plaintiff accessed the DevaCurl website in order to purchase additional Products.  Plaintiff used the Products as directed, including the use of Light Defining Gel, Ultra Defining Gel, No-Poo Shampoo, One Condition, Frizz Free Volumizing Foam, Angel Conditioning Gel and Arc Angel Firm Hold Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

182.    Plaintiff Lacey Croker purchased the DevaCurl products between 2018-2020 online through the DevaCurl website www.devacurl.com and Amazon and in person at Target based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  In 2016 Plaintiff saw advertisements on Facebook and Instagram along with advertisements of the Products in the stores, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, Target and Amazon made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff also saw random influencers online, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On

information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair, are harmless for curly hair, contain no harsh chemicals and do not cause damage to curly hair. Plaintiff used the Products as directed, including the use of PrePoo, Curly & Super Curly Cleanser, Curly & Super Curly Conditioner, Curly & Super Curly Leave ins, Curly & Super Curly Gels, Curly & Super Curly Styling Gel and Cream and hair masks, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

183.    Plaintiff Alicia Da Cruz purchased the DevaCurl products between May 2019-December 2019 in person at Target and Ulta based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff's friend was going to get a DevaCut, so Plaintiff accompanied her friend to the Curl Whisperer Miami, 5891 Sunset Dr. #6, South Miami, FL 33143. Plaintiff liked the representations made about the Products, the overall experience, service and the way her friend's hair turned out so much that she decided to use the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and

promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. To the best of her knowledge, Plaintiff first accessed the DevaCurl website after the lawsuit although she had heard the same representations from Defendant through other means. Plaintiff used the Products as directed, including the use of Supercream Coconut Curl Styler and Arc Angel Gel to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

184.    Plaintiff Esraa Darwish purchased the DevaCurl products between June 2019-February 2020 online through Ulta, Cosmoprof and Amazon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's message about loving your natural hair and DevaCurl's claim to cater to people, who like her, wanted to embrace their natural curls. In June 2019, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Kurdistan Ali from a salon in New Hampshire, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and

promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff accessed the DevaCurl website after her initial purchase to find places to purchase more Products. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Decadence, Light Defining Gel, Styling Cream and Heaven in Hair, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

185.    Plaintiff Bailey Davall purchased the DevaCurl products between August 2019-December 2019 in person at the CVS Pharmacy based on representations made by CVS that echoed those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, CVS made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff also relied on positive reviews that she read on various reddit threads in the curly hair boards and on beauty blogs as early as 2017.  Plaintiff used the Products as directed, including the use of No-Poo Original Shampoo and Ultra Defining Gel to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and scalp/facial irritation and/or rash.

186.    Plaintiff, Shannon Daversa purchased the DevaCurl products between April 2018-February 2020 online through devacurl.com and in person at Ulta based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products

were the best available for curly hair. In January 2018, Plaintiff started following the DevaCurl Instagram page, which echoed the representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products to purchase additional Products Plaintiff used the Products as directed, including the use of Low Poo Original, One Decadence Conditioner, Build Up Buster, Supercream, Ultra Defining Gel, Set it Free Mist, High Shine and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

187.    Plaintiff Daniele DeGrandis-Kneer purchased the DevaCurl products in 2013 and again in April 2018-March 2020 in person through Ulta based on representations that echoed those made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Around 2013, Plaintiff heard about DevaCurl from a coworker. She purchased a bottle of Low Poo and a bottle of Conditioner and stopped using it when she ran out. In 2018, Plaintiff remembered the Products, she was in a better financial situation, she started using the Products again. On information and belief, Ulta made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff also relied on Defendant's claim the Products were the best available for curly hair. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, Lo Poo Shampoo, One Condition Original and DevaCurl Curl Maker, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

188.    Plaintiff Lynn Dejonge purchased the DevaCurl products between July 2018-February 2020 through a Deva salon, online from the DevaCurl website www.devacurl.com and

Ulta based on representations made by Defendant on its website, see *supra*, Background Facts,

paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2018, Plaintiff

also relied on recommendations made to her by the stylist from the DevaCurl Salon, Jennifer

Fowler, at Minto Salon, 2198 Monroe Ave., Rochester, NY 14618, where she went for her first

DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras.

118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On

information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's

behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which

offered training and promotional materials for hair care businesses and professionals for the

express purpose that these businesses and professionals would use and promote the Products based

on the training provided by Defendant for that purpose and otherwise subject to Defendant's

control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva

website and through the website helped customers find this salon and/or stylist by offering a

geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the

Products as directed, including the use of Light Defining Gel, Deep Sea Repair, Heaven in Hair,

Super Stretch, Set it Free, Leave in Decadence, Super Defining Gel, Wash Day Wonder, Super

Cream, High Shine, No Poo Decadence, and One Condition Decadence, to the exclusion of regular

shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation

and/or rash.

189.    Plaintiff Felicia Dickerson purchased the DevaCurl products between 2014-

December 2019 through Cosmoprof based on representations made by Defendant, see *supra*,

Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In

2013 Plaintiff also relied on YouTube influencers Sunkissalba, who echoed the representations

made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff used the Products as directed, including the use of Original No Poo, Original One Condition, Heaven in Hair, B'leave In, Set it Free, Ultra Defining Gel, Decadence No Poo and Decadence One Condition, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, and scalp/facial rash.

190.    Plaintiff Megan Dickey purchased the DevaCurl products between 2012-2019 online from devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on recommendations made by way of Lorraine Massey's book, "The Curly Girl Handbook," in 2012- 2013, and on the DevaCurl website prior to purchase of the Product, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff also relied on YouTube influencer India Batson in 2015, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. When India Batson became an official DevaCurl spokesperson it validated Plaintiff's choice to use DevaCurl. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program,

the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of NoPoo Original, Original One Condition, Original Low Poo, Wavemaker, Original Styling Cream, Styling Foam and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and scalp/facial rash.

191.    Plaintiff Marisa Edwards purchased the DevaCurl products between 2000-2020 from hair salons, including Devachan Salons, and online from Amazon and Sephora based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2000-2002, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, at the Deva Salon in Soho, NYC on Broadway, where she went for her first DevaCut, which echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase but before making subsequent purchases. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo, One Conditioner Original, One Conditioner Decadence,

Light Defining Gel and Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, poor hair condition and dry hair.

192.    Plaintiff Lindsay Einhorn purchased the DevaCurl products between January 2005-February 2020 online from Amazon, the DevaCurl website www.devacurl.com based on representations made by Defendant on its website and in person through Walgreens, Walmart and Macy's based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first learned of the Products around 2005, when a friend referred her to the Products. In 2008 Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, the stylist at the DevaChan Salon, Broadway, Soho, New York, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, including claims the Products are natural with no harsh chemicals or sulfates. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Decadence Conditioner, One Condition, No Poo, Light Gel and Ultra Defining Gel to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation/or rash.

193.    Plaintiff Vanessa Esparza purchased the DevaCurl products between early 2017-fall 2019 through Ulta based on representations that echoed those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers, Ayesha Malik, Manes by Mel and Amanda Guido in 2016-2017, who echoed the representations made by Defendant, see *supra*, background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her purchase of the Products, where she saw many of Defendant's online advertisements for no poo and Defendant's claim the Products would improve the health of her scalp. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Pre-Poo, B'Leave In, Supercream, Styling Cream, Arc Angel Gel and Ultra Gel Interchanged, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and very itchy scalp.

194.    Plaintiff Melissa Evans purchased the DevaCurl products between 2013-2019 online through Amazon, Ulta, Groupon and Ebay, based on representations made by Defendant on its website, and in person from Target and Beauty Plus Salon Store based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first learned of the Products through a friend who recommended the Products in 2013. Plaintiff accessed the DevaCurl website to research the Product prior to her purchase.  Plaintiff used the Products as directed, including the use of DevaCurl Ultra Defining Gel, DevaCurl One Condition, DevaCurl Styling Cream, DevaCurl No Poo, DevaCurl One Condition

Decadence, DevaCurl B'Leave In Miracle Curl, DevaCurl No Poo Decadence and DevaCurl Low Poo Original Mild Lather and DevaCurl Heaven In Hair to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

195.    Plaintiff Keonte' Fisher purchased the DevaCurl products between April 2018-December 2019 online from www.devacurl.com based on representations made by Defendant on its website, and in person at Ulta based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  In April 2018, Plaintiff also relied on recommendations to her by the stylist from the DevaCurl Salon, Kat, a Deva Stylist who gave Plaintiff a Deva Transformation at the Muse Salon and Spa, 717 Battlefield Blvd. #5, Chesapeake, VA 23322, and who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133 and sold Plaintiff on how amazing DevaCurl products are and how much healthier they would make her hair. Plaintiff accessed the DevaCurl website prior to purchase of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Heaven In Hair, Melt Into Moisture, Seaweed Repair, Decadence No Poo Shampoo, Decadence No

Poo Conditioner, Build Up Buster, Arc Angel Gel, B'Leave In, Leave in Decadence, Wash Day Wonder, Low Poo and Supercream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and poor hair condition.

196.    Plaintiff Alison Fitzwilliam purchased the DevaCurl products between October 2018-February 2020 online through www.devacurl.com based on representations made by Defendant on its website, and in person from Salon Exclusive based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In October 2018, Plaintiff also relied on recommendations made to her by stylist from the DevaCurl Salon, Elisa Witten, a level 3 certified DevaCurl stylist at Exclusive Salon, 13813 N. May, Oklahoma City, OK 73134, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to making a purchase of the Product. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No-Poo Original, Mist-er Right, Supercream, Arc AnGel Gel and One Condition Original, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

197.    Plaintiff Juanita Garcia purchased the DevaCurl products between late 2018-February 2020 from Ulta based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff saw an ad on Facebook for DevaCurl, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff then accessed the DevaCurl website prior to her initial purchase to locate suppliers and made her first purchase at Ulta. On information and belief, Ulta made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control.  Plaintiff used the Products as directed, including the use of Ultra Defining Gel, No Po Original, One Condition Original, Frizz free Volumizing Foam, B'Leave In, Supercream, Wavemaker, Angel and Was Day Wonder, to the exclusion of regular shampoos.  Plaintiff suffered hair loss and poor hair condition.

198.    Plaintiff Brittainy Hall purchased the DevaCurl products between December 2018-September 2019 at a Ulta based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  In December 2018, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Unique Johnson at Poise Blu, 1113 Murfreesboro Rd., Suite 21, Franklin, TN 37064, when she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and

promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Original Low Poo, Styling Cream, High Shine, Light Define Gel, Decadence Conditioner and Mister Right, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

199.    Plaintiff Josephine Harris purchased the DevaCurl products between August 2019-August 2019 online from Sephora based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  Plaintiff first read about the Product in July 2019. She was introduced to "The Curly Girl Handbook" on Reddit and saw users promoting the Product as top of the line, gentle and relatively natural products for curly hair. Plaintiff researched the Product by watching YouTube tutorial videos, reading blogs and other information provided about the Products on the Ulta and Sephora websites. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products. On information and belief, Defendant requested that the influencers on whom she relied, acted on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Low-Poo Delight, One Condition Delight and Wavemaker, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash and extreme tangles.

200.    Plaintiff Tara Hastoo purchased the DevaCurl products between 2018-2020 from

Clore Beauty and chatters based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In July/August 2017, after reading about the salon, Plaintiff went to the Curl Ambassadors Salon, 18-376 Highway 2, Pickering, ON L1V6K4, Canada, and spoke to a stylist about the Products, the stylist echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Low Poo Shampoo, One Conditioner, Styling Cream, Supercream, Ultra Defining Gel, Arc Angel Gel, Beautiful Mess and Deep Sea Repair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial rash.

201. Plaintiff Rebecca Hawk purchased the DevaCurl products between 2018-2019 online through Amazon based on representations made by Defendant on its website and by Amazon, which repeated the claims made by Defendant on its website and, more generally, as part of the Campaign, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website after her initial purchase of the product but before subsequent purchases. In 2015 Plaintiff also relied on recommendations made

to her by the stylist from the DevaCurl Salon, Ken Odette at Fiddleheads Salon, a Washington D.C. based salon for curly hair, where she went for her first DevaCut. Odette echoed representations made by Defendant in the Campaign, see *supra*, Background Facts, paras. 118-133. Plaintiff purchased a Super Cream at the time of her DevaCut, but it would be years before she would be able to afford to purchase the product on a regular basis. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. On information and belief, Amazon made statement concerning the Products on Defendant's behalf pursuant to a retailer agreement using materials and information provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of One Condition Delight and Supercream Coconut Curl Styler, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and hair thinning.

202.    Plaintiff Lubna Hector purchased the DevaCurl products between June 2012-January 2020 from Cosmoprof and Ebay based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff was attracted to Defendant's claims the Products are a natural hair line, made with only ingredients that help hair and are free of harsh ingredients that hurt hair.

Plaintiff was also moved by Defendant's representation that the Products are made for all curly hair types. In 2012, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Jen Belsky at the Govero Salon, 11681 Manchester Rd., St. Louis, MO 63131, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her first purchase of the Product but before making subsequent purchases. She also watched YouTube tutorials and other influencers for advice about the Products. These influencers also repeated the representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133. On information and belief, the salon, Plaintiff's stylist and the influencers watched by Plaintiff repeated Defendant's claims about the Products on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Original One Condition, Original Low Poo, Heaven in Hair, Ultra Defining Gel, Styling Cream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and poor hair condition.

203.    Plaintiff Lubna Hector, on behalf of A. H., a minor, purchased the DevaCurl products between June 2013-January 2020 from Cosmoprof and Ebay based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the

safety, formulation and efficacy of the Products. Plaintiff was particularly attracted to claims the Products were all natural and designed especially for all curly hair types. In 2013, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Jen Belsky at the Govero Salon, 11681 Manchester Rd., St. Louis, MO 63131, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. . . Plaintiff accessed the DevaCurl website after her first purchase of the Product but before making subsequent purchases. She also watched YouTube tutorials and other influencers for advice about the Products. These influencers also repeated the representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133. On information and belief, the salon, Plaintiff's stylist and the influencers watched by Plaintiff repeated Defendant's claims about the Products on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Original One Condition, Original Low Poo, Heaven in Hair, Ultra Defining Gel, Styling Cream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and poor hair condition.

204.    Plaintiff Cindi Hein purchased the DevaCurl products between 2005-June 2019 online from the DevaCurl website www.devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and

efficacy of the Products.  Plaintiff also relied on recommendations made to her by the stylist from

the DevaCurl Salon, Ann Marie Lasater, at a Salon in Salt Lake City, Utah, where she went for her

first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras.

118-133. To the best of her knowledge, Plaintiff accessed the DevaCurl website after her initial

purchase of the Products but before subsequent purchases of the Products but before subsequent

purchases. On information and belief, both this salon and Plaintiff's stylist made these statements

on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional

program, which offered training and promotional materials for hair care businesses and

professionals for the express purpose that these businesses and professionals would use and

promote the Products based on the training provided by Defendant for that purpose and otherwise

subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or

stylist on the Deva website and through the website helped customers find this salon and/or stylist

by offering a geographic search for customers to find a salon or Deva trained stylist near them.

Plaintiff used the Products as directed, including the use of Original One Condition, Original Low

Poo, B'Leave In, Ultra Defining Gel, Heaven in Hair, Frizz Free Volumizing Foam, to the exclusion

of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and hair

discoloration.

     205.    Plaintiff Sherry Hidlebaugh first learned of the Products after receiving a

recommendation from her friend, which repeated claims made by Defendant, see *supra*,

Background Facts, paras. 118-133. Plaintiff purchased the DevaCurl products between April 2019-

January 2020 DevaCurl from Sephora based on representations made by Sephora that echoed those

made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation

and efficacy of the Products. (Plaintiff accessed the DevaCurl website after the lawsuit.) On

information and belief, Sephora made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of DevaCurl No Poo Decadence, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and poor hair condition.

206. Plaintiff Taylor Hobbs purchased the DevaCurl products between May/June 2018-April 2020 in person at Ulta based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In May 2018, Plaintiff accessed the DevaCurl website prior to purchasing the Product to research the Product and during that time Plaintiff also relied on YouTube influencer Ayesha Malik who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of One Conditioner Original, One Condition Decadence, Low-Poo Delight, Build Up Buster, Frizz Free Volumizing Foam, B'Leave-In Gel, Leave In Decadence, High Shine, Heaven in Hair, Curls on the Go Kit, to the exclusion of regular shampoos. Plaintiff suffered hair breakage and poor hair condition.

207. Plaintiff Michelle Howard purchased the DevaCurl products between November 2014-April 2020 online from Ulta, Sephora, in person at the Hairwear Salon, CVS, Walgreens, Walmart and Target based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2014, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Terri Malone,

Hairwear/Home of the Crescent City Curly Girl located at 3213 17TH St., Metairie, LA 70002, she went to for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her DevaCut and initial purchase of the Product but before subsequent purchases. On information and belief, Defendant requested that retailers like Ulta, Sephora, Hairwear Salon, CVS, Walgreens, Walmart and Target make the representations made to Plaintiff on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Furthermore, the salon and stylist made statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No-Poo Shampoo, One Condition Original, Light Defining Gel, Flexible Hold Hair Spray, Curl Maker Curl Boosting, Mist-er Right Lavender Infused Curl, Supercream Touchable Curl Definer, Super Stretch Coconut Curl Elongator, Beautiful Mess, B'Leave In Curl Boost, Melt Into Moisture, No Comb Detangling Spray, Frizz Free Volumizing Foam, Anti-Frizz Gray Microfiber Hair Towel, No Poo Decadence and One Condition Decadence, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

208.    Plaintiff Tracie Hunt purchased the DevaCurl products between June 2019-August

2019 in person from Ulta which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers in May of 2019, such as Ayesha Malik, The Glam Belle and India Batson, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase of the Products after her initial purchase of the Products but before subsequent purchases of the Products but before she purchased subsequent Products. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Low Poo Delight, One Condition Delight, Light Defining Gel, B'Leave In, Wavemaker, Volumizing Foam, Build Up Buster and Deep Sea Repair, to the exclusion of regular shampoos. Plaintiff suffered hair loss.

209.    Plaintiff Terrilyn Hunter purchased the DevaCurl products between 2015-2018 online through www.devacurl.com, Curlbox Subscription Box based on representations made by Defendant on its website and in person from Empire Beauty, Target and Chanel's Hair Boutique based on representations that echoed those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers like Ayesha Malik, Manes by Mell, Happycurlhappygirl, Bianca Renee Today, It's Beauty Elise and Franchelli Rodriguez who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program,

the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Decadence, Heaven In Hair, Leave In Decadence, One Condition Decadence, Melt In Moisture Mask, Buildup Buster, Deep Sea Repair, Wash Day Wonder, Supercream, Styling Cream, B'Leave In, Light Defining Gel, Arc Angel, Mist-Er Right, Super Stretch and Set It Free, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

210.    Plaintiff Marium Hussain purchased the DevaCurl products between April 2019-February 2020 in person from Cosmoprof based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2018, Plaintiff began noticing advertisements in stores, on Instagram and when she went to Cosmoprof with family, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products to research the Product line. Plaintiff used the Products as directed, including the use of Cleanser, conditioner, shine & finish spray, define and control styling cream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

211.    Plaintiff Charlyne Jacobs-Burrow purchased the DevaCurl products between 2018-September 2019 online through Amazon, Sephora and in person from Alter Ego Salon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2014, Plaintiff accessed the DevaCurl website and saw videos and tutorials from influencers on the DevaCurl Facebook and Instagram pages which echoed representations made by Defendant, see *supra*, Background Facts,

paras. 118-133. Plaintiff did not make her first purchase of the Product until 2018. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Set It Free, One Condition, Arc Angel Gel, Supercream, High Shine, Ultra Defining Gel, Low Poo and One Condition Decadence, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

212.    Plaintiff Leslie Jeter purchased the DevaCurl products between February 2018-January 2020 through a DevaCurl stylist based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In February 2018, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Brittney Trivette, at Reserve Salon and Spa, Row 34 Hair Studio in Reserve Salon and Spa, 26400 Kuykendahl Road, Tomball, TX 77375, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, including claims the Products are natural with no harsh chemicals or sulfates. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for

customers to find a salon or Deva trained stylist near them. Plaintiff conducted a Google search for her stylist by name, she was not looking for a Deva stylist at the time, when she clicked on the map to see where she was located it took her to the DevaCurl website. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Original Low Poo, Wavemaker, B'Leavin, Ultra Defining Gel, Arc Angel Gel and Decadence Leave In, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

213.     Plaintiff Alexis Johnson purchased the DevaCurl products between April 2019-January 2020 online at Walmart, Amazon, Ebay and Fingerhut based on representations made by Defendant on its website and in person at Ulta Beauty Store based on representations made by Ulta that repeated those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers The Manes by Melle and Biancareneetoday in 2019, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Decadence Cleanse and Conditioner, Supercream Styler and B'Leave In, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and scalp/facial irritation or rash.

214.    Plaintiff Tiffany Keating purchased the DevaCurl products between 2017-2019 online through Amazon based on representations made by Defendant on its website, and in store at Target and Ulta based on representations made by those retailers that repeated the claims made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products.  In 2017, Plaintiff Googled "Best products for wash and go on natural hair;" DevaCurl came up as the number one product on most lists., which were published by brand ambassadors, influencers or by apparent industry-related blogs. Plaintiff watched a few of the ambassador/influencer videos and read more about the Products on Amazon before making her first order. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. On information and belief, Amazon repeated claims made by Defendant about the Products, see *supra*, Background Facts, paras. 118-133, on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of Ultra Defining Gel, No-Poo Cleanser, Melt Into Moisture Mask, Deep Sea Hair Repair, Set It Free Mist, High Shine, Leave In Decadence, B'Leave In and Super Stretch, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and /or rash.

215.    Plaintiff Sarah Kelly purchased the DevaCurl products between 2011-February 2020 online at Amazon based on representations made by Defendant on its website and in person from Shine Hair Color & Design Studio based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In

2009, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Chris McPhearson at Flo Salon at 911 Lady Street, Columbia, SC 29201, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Lo-Poo, One Condition, Beautiful Mess/Set Up And Above, Mister Right, Dry Shampoo, B'Leave-In Curl Boost and Volumizer and Set It Free Moisture Lock, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

216. Plaintiff Khansa Khatoon purchased the DevaCurl products between March 2016-May 2020 online from the DevaCurl website www.devacurl.com based on representations made by Defendant on its website and in person from Ulta based on Ulta's representations that repeated statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Around 2016, Plaintiff also relied on YouTube influencer Ayesha Malik, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff was under the impression based on what she learned from Defendant that

the Products were a Holy Grail for her curls. Plaintiff accessed the DevaCurl website before her initial purchase of the Product. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, Styling Cream, Ultra Defining Gel and Build Up Buster, to the exclusion of regular shampoos. Plaintiff suffered hair loss and hair breakage.

217.    Plaintiff Susan King purchased the DevaCurl products between July 2015-February 2020 online through Ulta, Zulily, EBay and the DevaCurl website www.devacurl.com and in person from Ulta and CVS based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first learned about the Products from a fellow soldier who had beautiful curly hair that did not frizz in the Georgia humidity. This soldier told Plaintiff about DevaCurl. After speaking to this fellow soldier, Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products and researched the Products, see *supra*, Background Facts, paras. 118-133. Plaintiff also relied on Defendant's claims the Products are the best available for curly hair and block humidity from entering the hair shaft to stop hair from frizzing. Plaintiff used the Products as directed, including the use of DevaCurl No Poo Original Non-Lathering Conditioning Cleanser, DevaCurl One Condition Original Hair Conditioner, DevaCurl One Condition Decadence, DevaCurl Arc Angel Gel, DevaCurl Ultra Defining Gel, and DevaCurl Build-up Buster, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and scalp/facial irritation and/or rash.

218.    Katherine Kozy purchased the DevaCurl products between May 2015-Februry 2020 from Peninsula Beauty based on representations made by Peninsula Beauty that repeated those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In May 2015, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Tegan Squires at Salon DNA, 555 Sutter #200, San Francisco, CA 94102, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, particularly claims the Products required very little washing, which appealed to Plaintiff who valued low maintenance and had a healthy scalp. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo Original and One Condition Original, to the exclusion of regular shampoos.  Plaintiff suffered poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

219.    Plaintiff Katrina Lee purchased the DevaCurl products between November 2016-January 2017 from Cosmo Prof based on representations made by Cosmo Prof that repeated those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation

and efficacy of the Products. In April 2016, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Carolyn Long at Curl Power Salon, 5015 Ewing Ave. S., Minneapolis, MN 55410, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo Original, Low Poo Original, One Condition Original, One Condition Decadence, Supercream, Heaven In Hair, B'Leave In, Light Defining Gel, Wash Day Wonder, Set It Free, Build Up Buster, Curl Maker, Flex Hold Hair Spray, Mister Right, Frizz Free Volumizing Foam, Arc Angel Gel and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and poor hair condition.

220.    Plaintiff Samitia Lee purchased the DevaCurl products between 2011-2015 from Ulta based on representations made by Ulta that repeated those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products. Plaintiff relied on videos done at the DevaChan Salon in New York on YouTube, which echoed the

representations made by Defendant, see *supra*, Background Facts, paras. 118-133. When Plaintiff

saw the Product at Ulta, she purchased it. On information and belief, both this salon and Plaintiff's

stylist made these statements on Defendant's behalf as participants in Defendant's Pro,

Ambassador or similar promotional program, which offered training and promotional materials for

hair care businesses and professionals for the express purpose that these businesses and

professionals would use and promote the Products based on the training provided by Defendant

for that purpose and otherwise subject to Defendant's control. Further on information and belief,

Defendant listed the salon and/or stylist on the Deva website and through the website helped

customers find this salon and/or stylist by offering a geographic search for customers to find a

salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of

Original NoPoo, Original One Condition, Original Low Poo, Style Cream and Arc Angel Gel, to

the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition,

scalp/facial irritation and/or rash and acne in hair line.

221.    Plaintiff Meredith Lewis purchased the DevaCurl products between 2009-2020 in

person from Ulta, Fred Meyers and BX and online from Ulta and Amazon based on representations

made by these retailers that echoes those made by Defendant, see *supra*, Background Facts, paras.

118-133, regarding the safety, formulation and efficacy of the Products. In 2010, Plaintiff was

approached by two women that worked for Deva and asked Plaintiff to be a hair model to introduce

new Deva Products to stylists in town. These women taught Plaintiff how to use all the Products

and the Curly Girl Method, making the same representations as made by Defendant, see *supra*,

Background Facts, paras. 118-133. On information and belief, these women made these

representations on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar

promotional program, which offered training and promotional materials for hair care businesses

and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No-Poo, One Conditioner, B'Leave In, Ultra Defining Gel, Light Defining Gel, Build Up Buster, Wash Day Wonder, Set It Free, Mister Right, Set Up & Above, Frizz Free Volumizing Foam and Mirror Curls, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

222.    Plaintiff Michelle Howard, on behalf of M.L., a child, purchased the DevaCurl products between August 2016-April 2020 online from Ulta, Sephora, in person at the Hairwear Salon, CVS, Walgreens, Walmart and Target based on representations made by these retailers that repeated those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2016, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Terri Malone, Hairwear/Home of the Crescent City Curly Girl located at 3213 17TH St., Metairie, LA 70002, where she went to for her first DevaCut. Malone echoed representations made by Defendant see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her DevaCut and initial purchase of the Products but before subsequent purchases. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and

professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No-Poo Shampoo, One Condition Original, Light Defining Gel, Flexible Hold Hair Spray, Curl Maker Curl Boosting, Mist-er Right Lavender Infused Curl, Supercream Touchable Curl Definer, Super Stretch Coconut Curl Elongator, Beautiful Mess, B'Leave In Curl Boost, Melt Into Moisture, No Comb Detangling Spray, Frizz Free Volumizing Foam, Anti-Frizz Gray Microfiber Hair Towel, No Poo Decadence and One Condition Decadence, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

223. Plaintiff Nicole Lovitt purchased the DevaCurl products between June 2018-February 2020 in person at Festoon Salon, CVS, Walgreens and Rite Aid based on representations made by these retailers that repeated those statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2018, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Brittany McGowan at Festoon Salon, 1401 Martin Luther King, Jr Way, Berkeley, CA 94709, where she went for her first DevaCut, and who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care

businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Low Poo, No Poo, One Condition, Leave in Decadence, Arc Angel, Wash Day Wonder and Mister Right, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and change/loss of curl pattern.

224.    Plaintiff Ayesha Malik purchased the DevaCurl products between 2013-March 2019 online through the DevaCurl website www.devacurl.com based on representations made by Defendants on its website, see *supra*, Background Facts, paras. 118-133, as well as representations about the Products by Nordstrom, Cosmoprof, which repeated representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff also accepted and used free products from the DevaCurl PR Team from 2017 to 2019 based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2013 Plaintiff first learned off the Products when a stranger at Walmart approached to say she had a product at her salon that would be good for her hair. Plaintiff come to her salon and purchase one of the Products. Plaintiff accessed the DevaCurl website prior to her initial purchase to research the Product and went to the stranger's salon and made her purchase. The salon echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and

promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  Plaintiff used the Products as directed, including the use of No-Poo Original, Low-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, Leave-In Decadence, Styling Cream, Supercream, Heaven In Hair, High Shine, B'Leave-In, Light Defining Gel, Frizz-Free Volumizing Foam, Ultra Defining Gel, Arc Angel Gel, Beautiful Mess, Mist-Er Right, Curl Maker Curl Boosting Spray Gel, Flexible Hold Hairspray, Super Stretch, Set It Free, Buildup Buster, Melt Into Moisture, Deep Sea Repair and Wash Day Wonder, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash, tinnitus, delayed speech, memory loss and changes to her menstrual cycle.

225.    Plaintiff Tara Mandel purchased the DevaCurl products between 2017-September 2020 online Sephora, Ulta based on representations made by these retailers that repeated representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2017, Plaintiff also relied on recommendations made to her by the stylist from Salon, in Washington D.C, where the Products were used on her hair for the first time, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, to the best of her knowledge, Plaintiff is unsure if the salon was a Deva Salon. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional

program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff accessed the DevaCurl website after to her initial purchase of the Product. Plaintiff used the Products as directed, including the use of Hairspray, Low Poo Delight, One Condition Delight, No Poo, Super Cream, Build Up Buster, Melt into Moisture, Mister Right, Set it Free, Deep Sea Repair, Frizz Free Volumizing Foam and Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered poor hair condition, hair discoloration, and scalp/facial irritation or rash.

226.    Plaintiff Holly Matesky purchased the DevaCurl products between 2010-2020 online through Ulta and Sephora based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers Ayesha Malik, The Glam Belle, IndiaBatson and HiFelicia in 2015, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Low Poo, Decadence Conditioner, Heaven In Hair, Arc Angel Conditioner, Arc Angel

Gel, Build Up Buster, Styling Cream and Wavemaker, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

227.    Plaintiff Ana Mendoza purchased the DevaCurl products between August 2019-February 2020 online through Sephora based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers Ayesha Malik and Hif3licia in 2018, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Decadence Shampoo, One Condition Decadence Conditioner, Supercream and Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and hair thinning.

228.    Plaintiff Daniela Mendoza purchased the DevaCurl products between August 2019-February 2020 online through Sephora based on representations made by Sephora that repeated those made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencers Ayesha Malik and Hif3licia in 2018, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, Defendant requested that these influencers act

on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No Poo Decadence Shampoo, One Condition Decadence Conditioner, Supercream and Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and hair thinning.

229.    Plaintiff Laurie Miller purchased the DevaCurl products between April 2016-April 2020 online through www.devacurl.com, Amazon based on representations made by Defendant on its website, and in person at Bed, Bath and Beyond based on representations made by this retailer that echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2016, Plaintiff first learned about the Products online. She accessed the DevaCurl website to research the Products prior to purchase. She made her initial purchase of a trial kit that came with "The Curly Girl Handbook." In April 2016, Plaintiff also relied on recommendations made by way of Lorraine Massey's Book "The Curly Girl Handbook," Massey is the founder of the Deva brand and former owner of Defendant. Her representations about the Products echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. After starting the Product in April, Plaintiff also relied on recommendations made to her by the stylist from DevaCurl Salon, Tara at Mod A Salon, 357 Reed Ave., Akron OH, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133.On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional

materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, One Condition Original, Ultra Defining Gel, Moisture Lock Set It Free, Supercream Coconut Curl Styler, Mirrorcurls and Styling Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash. Plaintiff Ericka Mitchell purchased the DevaCurl products between 2018-2020 in person from Ulta and online from Ulta and Sephora based on representations made by these retailers that repeated those made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, Ulta and Sephora made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff also relied on YouTube influencer Ayesha Malik in 2018, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133.  Defendant requested that Malik act on its behalf by way of the Ambassador Program or a similar promotional program, Malik consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of DevaCurl How to Quit Shampoo Kit, Supercream Coconut Curl Styler, One Condition Daily Cream Conditioner, and Low Poo Original Mild Cleanser, to the exclusion of regular

shampoos. Plaintiff suffered hair loss, poor hair condition and scalp/facial irritation and/or rash.

230.    Plaintiff Ericka Mitchell purchased the DevaCurl products between 2018-2020 in person from Ulta and online from Ulta and Sephora based on representations made by these retailers that repeated those made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, Ulta and Sephora made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff also relied on YouTube influencer Ayesha Malik in 2018, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Defendant requested that Malik act on its behalf by way of the Ambassador Program or a similar promotional program, Malik consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of DevaCurl How to Quit Shampoo Kit, Supercream Coconut Curl Styler, One Condition Daily Cream Conditioner, and Low Poo Original Mild Cleanser, to the exclusion of regular shampoos. Plaintiff suffered hair loss, poor hair condition and scalp/facial irritation and/or rash.

230.    Plaintiff Nabila Mohammed purchased the DevaCurl products between June 2019-January 2020 online through devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2018 Plaintiff also relied on YouTube and Instagram influencers Spisha and IndiaBatson, who echoed representations made by Defendant, see *supra*, Background Facts, paras.118-133. Plaintiff accessed the DevaCurl website to make her initial purchase of the Product. On information and belief, Defendant requested that these influencers act on its behalf by

way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Low-Poo Delight, One Condition Delight, Light Defining Gel, Ultra Defining Gel, Frizz-Free Volumizing Foam, Wavemaker and Flexible Hold Hairspray, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and loss of curl pattern.

231.    Plaintiff Andrea Patin purchased the DevaCurl products between September 2019-February 2020 and, in the few years prior to that, Plaintiff used Products at the home of one or two friends. Plaintiff first purchased the Products from Curls LA salon, located at 900 E. First Street, Ste. 230, Los Angeles, California 90012, based on representations made to her by Curls LA stylist Ashley Elback, who gave Plaintiff a Deva Cut, and statements made by Curls LA. The statements made by Elback and Curls LA echoed representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Later, Plaintiff purchased the Products from Ulta, further relying on statements made by Ulta that were in substance the same as those made by stylist Elback and the Curls LA salon and

the Deva website. On information and belief, Ulta made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Subsequent to her first purchase but before making some purchases of the Products, Plaintiff accessed the DevaCurl website and relied on statements made by Defendant there. Plaintiff used the Products as directed, including the use of One Condition Decadence, Supercream Coconut Curl Styler and B'Leave In Miracle Curl Plumper, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and change/loss of curl pattern.

232.    Plaintiff Lilly Percival purchased the DevaCurl products between October 2019-January 2020 directly from the DevaCurl website www.devacurl.com, based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2018-2019 Plaintiff also relied online reviews from the DevaCurl website, which she accessed prior to purchasing the product, as well as DevaCurl's marketing and videos showing that their product was reliable and safe. Plaintiff used the Products as directed, including the use of the No-Poo Original and Devacurl One Condition Original, and the Curly So Extra Kit to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and change/loss of curl pattern.

233.    Plaintiff Asia Perkins purchased the DevaCurl products between April 2018-April 2020 online through devacurl.com based on representations made by Defendant on its website, which she accessed prior to her first purchase of the Products, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on

YouTube influencer Ayesha Malik in 2017, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Defendant requested that Malik act on its behalf by way of an Ambassador Program or a similar promotional program, Malik consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of No-Poo Decadence Cleanser, One Condition Decadence Hair Conditioner, Leave-In Decadence Conditioner, Supercream, One Condition Original Hair Conditioner, Low Poo Original Cleanser, Ultra Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss and scalp/facial irritation and/or rash.

234.    Plaintiff Nada Pottinger purchased the DevaCurl products between July 2016-July 2020 online through devacurl.com and in person from DevaChan Salon and Ricky's based on representations made by stylists and Ricky's who repeated representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Around 2015, Plaintiff relied on recommendations made to her by multiple stylists at the DevaChan Salon, 425 Broome Street, New York, NY 10013, where she went for her first DevaCut. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. Plaintiff used the Products as directed, including the use of Original No-Poo, Original One Conditioner, Curl Cream, Curly make them Gel-out Kit, Decadence No-Poo, One Conditioner and Light Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

235.    Plaintiff Allyson Rainey purchased the DevaCurl products between May 2016-August 2017 online through Amazon and in person at Walgreens and CVS and based on representations made by these retailers that repeated those made by Defendant, see *supra*,

Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, these retailers made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Prior to that time, Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product and relied on statements made by Defendant there. In 2016, Plaintiff relied on recommendations made to her by the stylist from the DevaCurl Salon, The "Curl Doctor," Shai Amiel at the Capella Salon, 12930 Ventura Blvd. #216, Studio City, CA 91604, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo Original, Low Poo Shampoo, One Condition, B'Leave In, Decadence Line Shampoo, Decadence Conditioner, Ultra Defining Gel, Build Up Buster, Supercream and Heaven In Hair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

236.    Plaintiff Leslie Ramos purchased the DevaCurl products between March 2017-January 2020. In 2015, Plaintiff was hired to do wardrobe for the models at a DevaCurl photo shoot

for an ad campaign. Plaintiff watched as stylists styled the models hair using DevaCurl products. Plaintiff purchased Products later based on what she saw and heard that day from the Deva stylists, who repeated representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Later, Plaintiff purchased Products in person at Ulta based on representations made by Ulta that repeated statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. Plaintiff used the Products as directed, including the use of No Poo Original Shampoo, One Condition Conditioner, Melt Into Moisture and Style Cream, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

237.    Plaintiff Vilma Ramos purchased the DevaCurl products between February 2019-February 2020 online through devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Later, Plaintiff also relied on YouTube influencers Ayesha Malik, Courtany Alexis and Oxspiffyxo, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Original No Poo, One Conditioner Original, Low Poo Original, Heaven and Hair, B'Leave In, Styling Crème, Ultra Defining Gel, Light Defining Gel, Deva Fresh, High Shine, Set it Free, Build Up Buster, Deep Sea Repair, Melt into Moisture, to the exclusion of regular

shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

238.    Plaintiff Danielle Rand-Byrd purchased the DevaCurl products between December 2017-February 2020 online through Ulta and Amazon based on representations made by these retailers that echoed those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Prior to that time, in December 2017, Plaintiff relied on recommendations made to her by the stylist from the DevaCurl Salon, Mary Munden at Imago A Salon for Hair, 2602 W. Main St., Richmond, VA 23220, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. Plaintiff used the Products as directed, including the use of One Condition Original, No-Poo Original Conditioner, No-Poo Original Cleanse, Mister-Right, B'Leave-In and Arc Angel Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

239.    Plaintiff Taryn Ray purchased the DevaCurl products between April 2019-December 2019 in person at the recommendation of her stylist Torrey Ray at the Eden Salon, 825 S. Cooper Rd. #89, Gilbert, AZ 85233, neither of which are Deva certified, trained or related. Plaintiff used the Products as directed, including the use of Low Poo Shampoo, Light Conditioner, Gel and Volumizer, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash and hair thinning.

240.    Plaintiff Mika Reed purchased the DevaCurl products between 2014- February 2020 online through the DevaCurl www.devacurl.com website and Ulta website based on representations made by Defendant on its website and along with similar representations made by Ulta on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2014 Plaintiff Googled something similar to "best products for curly hair" and found the DevaCurl website, which she accessed prior to any purchase to research the Products. Plaintiff began to follow the DevaCurl Facebook and Instagram pages and would see random influencers, who echoed representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133.  On information and belief, Ulta made representations about the Products on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. In addition to the many affirmative statements made by Defendant on its website, Plaintiff also relied on Defendant's depictions of hair transformations, and use of influencers on its website, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that the influencers on whom Plaintiff relied act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for

payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Shampoo, Conditioner, Cream and Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss and scalp/facial irritation and/or rash.

241.    Plaintiff Cassidy Rephann purchased the DevaCurl products between May 2017-April 2020 online through the DevaCurl website www.devacurl.com and Ulta based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first heard about the Product in 2017 through an online ad on Facebook /Instagram and Ulta, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133 Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. On information and belief, Ulta made representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of No Poo Decadence, One Condition Decadence, Frizz Free Volumizing Foam, Wavemaker, Build Up Buster, Ultra Defining Gel, Supercream, Leave In Decadence, Heaven In Hair, B'Leave In, Super Stretch, Melt into Moisture, Deep Sea Repair, Wash Day Wonder and a Deva Towel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

242.    Plaintiff Kelly Rephann purchased the DevaCurl products between 2017-2019 online through the Devacurl website www.devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first heard about the Product in 2017 through her daughter who told her about online ads on Facebook /Instagram, which echoed representations

made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product.  Plaintiff used the Products as directed, including the use of No Poo Decadence, One Condition Decadence, Frizz Free Volumizing Foam, Wavemaker, Build Up Buster, Ultra Defining Gel, Supercream, Leave IN Decadence, Heaven In Hair, B'Leave In, Super Stretch, Melt into Moisture, Deep Sea Repair, Wash Day Wonder and a Deva Towel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

243.    Plaintiff Katherine Robaina purchased the DevaCurl products between 2013-2020. To the best of her knowledge, Plaintiff accessed the DevaCurl website to research the Products before she began to purchase and use the Products. Plaintiff purchased the Products online from Amazon, Sephora and Groupon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2013, Plaintiff first learned of the Products when a Sephora employee recommended them.  . In 2014, Plaintiff further relied on recommendations made to her by the stylist from the DevaCurl Salon, Danielle at Hair Gallery at the Mill, 101 Main Street, Collinsville, CT 06019, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or

stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff started purchasing all the DevaCurl Products that the stylist used on her hair. Plaintiff used the Products as directed, including the use of Styling Cream, No-Poo Cleanser, One Condition Conditioner, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation or rash.

244.    Plaintiff Dana Ryszetnyk purchased the DevaCurl products between August 2012-October 2020 online from Amazon and in person from Harmons, Ulta and CVS based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2012, Plaintiff relied on recommendations made to her by the stylist from the DevaCurl Salon, Patricia Perry at Utopia, 349 South Ave E, Westfield, NJ 07090, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. The stylist raved about the products and Plaintiff trusted her. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff started purchasing

all the DevaCurl Products that the stylist used on her hair. Plaintiff used the Products as directed, including the use of No-Poo Decadence, Low-Poo Original, One Condition Decadence, Ultra Defining Gel, Frizz Free Volumizing Foam, Mist-er Right, Curl Maker, Flexible Hold Hairspray, Arc Angel Gel, No-Poo Quick Cleanser and Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

245.    Plaintiff Angela Shuford purchased the DevaCurl products between 2015-2017 in person from Salons and Sephora based on representations made by her stylist and Sephora, which repeated statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2014 Plaintiff also relied on recommendations made by way of the book, "The Curly Girl Handbook," written by Deva founder, Lorraine Massey. Later Plaintiff relied on the DevaCurl website prior to her purchase of the Product, see *supra*, Background Facts, paras. 118-133. In 2015, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Leslie Braswell at Braswell Hair and Skin Body, 410 Johnston St., Ste. B, Decatur, AL 35601, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a

geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Wavemaker, No Poo, Low Point, One Condition, Mister Right, Light Defining Gel, Ultra Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

246.    Plaintiff Sewit Sium purchased the DevaCurl products between 2010-2020 from Target based on representations made by Target that repeated statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2010 Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Anna at the DevaChan Salon on Broome Street, New York, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133.  Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff used the Products as directed, including the use of Original NoPoo, Leave in Decadence, Deva One Condition, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

247.    Plaintiff Tara Sparks purchased the DevaCurl products between June 2020-August 2020 in person from The Cutting Edge Salon.   In 2020, Plaintiff relied on recommendations made to her by the stylist from the DevaCurl Salon, Alayanna at The Cutting Edge Salon and Day Spa, 914 East Emerald Street, Elkhart, IN 46514, where she went for her first DevaCut, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the

training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff did not access the DevaCurl website until after the lawsuit. Plaintiff used the Products as directed, including the use of No Poo Original, Low Poo Original and B'Leave In, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

248.    Plaintiff Traci Steo purchased the DevaCurl products between 2011-2019 online through the DevaCurl website www.devacurl.com and in person at Ulta, Sephora, Cosmoprof and Curl Sanctuary Salon based on representations made by Defendant on its website and by these retailers and the salon based on representations that repeated statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, the retailers made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control. In 2011, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Jessica Mc Taggart, Frontenac Salon and Spa, Frontenac, MO, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133.  Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. On information and belief, both the salon and Plaintiff's stylist made statements to Plaintiff on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care

businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition, No Poo Decadence, One Condition Decadence, Leave In Decadence, Ultra Defining Gel, Supercream, B'Leave In, Set It Free, Melt Into Moisture, Heaven In Hair, Build Up Buster and Deep Sea Repair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage and scalp/facial irritation and/or rash.

249.     Plaintiff Rebecca Taylor purchased the DevaCurl products between November 2015-March 2020 from curlyenvysalon.com and Ulta based on representations made by the salon and Ulta which echoed those made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2015, Plaintiff relied on recommendations made to her by the stylist at the DevaCurl Salon, Level 3 DevaCurl Specialist James Bailey at Curl Envy Salon, 631 Miami Circle, Atlanta, GA 30324, where she went for her first DevaCut, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or

stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of No Poo Decadence Cleanser and Conditioner, Light Defining Gel, Low Poo Delight Cleanser and Conditioner, Frizz-Free Volumizing Foam, Wavemaker, Build Up Buster and Melt Into Moisture Mask, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

250.    Plaintiff Cheryl Theriault purchased the DevaCurl products between May 2015-September 2019 online from www.curlspecialist.com and from the Chatter Hair Salon, Shear Beauty Salon and Ulta based on representations made by Defendant on its website and by these retailers and salons based on representations that repeated statements made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In May 2015 Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Krista Leavitt at Shear Beauty Salon, 55 King St., Fredericton, NB, Canada, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist

near them. On information and belief, the retailers from which Plaintiff purchased Products made claims about the Products on behalf of Defendant, using materials and information provided by Defendant for that purpose and otherwise subject to Defendant's control. Plaintiff used the Products as directed, including the use of One Condition Delight, Frizz Free Volumizing Foam, B'Leave In, NoPoo Original Conditioner, One Condition Delight, Wash Day Wonder, Curl Maker, Set It Free, Mister Right, Leave In Decadence, Flexible Hold Hairspray, Set Up and Above, Heaven and Hair, Arc Angel Gel, Low Poo Cleanser Shampoo, Low Poo Delight Shampoo, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

251.    Plaintiff Kristina Thomas purchased the DevaCurl products between January 2006-August 2020 online through www.devacurl.com based on representations made by Defendant on its website, and in person from Devachan Salon based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2007, Plaintiff also relied on recommendations made to her by Julie at the DevaChan Salon, 425 Broome Street, New York, NY 10013, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Plaintiff accessed the DevaCurl website after her initial purchase of the Products but before subsequent purchases of the Products. Plaintiff used the Products as directed, including the use of No Poo Original, No Poo Decadence, One Condition Original, One Condition Decadence, Styling Cream, Supercream, Heaven In Hair, B'Leave In, Light Defining Gel, Ultra Defining Gel, Frizz-Free Volumizing Foam, Wavemaker, Arc AnGel Gel, Mist-er Right, Flexible Hold Hairspray, Set It Free, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage and poor hair condition.

252.    Plaintiff Taryn Tomasik purchased the DevaCurl products between February 2019-December 2019. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products. Plaintiff purchased Products online through www.devacurl.com and at a DevaSalon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In addition, in 2019, Plaintiff Googled Curly Girl Method, which listed DevaCurl Products as "CG approved," and watched YouTube Influencers real life+curly girl, Curly Susie and Curly Girl Method, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives.  In August 2019, Plaintiff further relied on recommendations made to her by the stylist at the DevaCurl Salon, Moisture Salon, 158 Barrett St., Schenectady, NY 12305, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Low Poo Delight, Frizz Free

Volumizing Foam and One Condition, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

253.    Plaintiff Carla Torrelli purchased the DevaCurl products between April 2020-September 2020. In April 2020, Plaintiff first learned about the Products from a coworker who had similar hair texture. The coworker gave her samples to try. Plaintiff accessed the DevaCurl website prior to her initial purchase to review all the Products and make a purchase. She made purchases online through www.devacurl.com and using Amazon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also saw advertisements of the Product in Ulta, which echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Ulta made these representations on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to the Defendant's control. Plaintiff used the Products as directed, including the use of DevaCurl Low Poo Delight Cleanser, DevaCurl Ulta Defining Hair Gel and DevaCurl One Condition Original, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

254.    Plaintiff Yessenia Torres purchased the DevaCurl products between December 2019-January 2020. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff purchased the Products online through Ulta based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on Defendant's claim the Products are the best available for curly hair. The most impactful part of Defendant's advertisement with regard to Plaintiff was its promotion of the Products on the DevaCurl Instagram page in December

of 2019. Plaintiff was influenced by the hair transformations featured by Defendant on its Instagram page both in photos and in videos, which echoed the same representations as discussed above, see *supra*, Background Facts, paras. 118-133.Plaintiff used the Products as directed, including the use of No-Poo Original, One Condition Original, Set It Free Moisture Lock, Light Defining Gel and Heaven In Hair Divine Deep Conditioner, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

255.     Plaintiff Ashley Valentin purchased the DevaCurl products between April 2017-February 2020. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff purchased the Products online through the devacurl.com based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In April 2017 Plaintiff relied on recommendations made to her by the stylist at the DevaCurl Salon, Lois Stoeffhass at Vasken Demirjian Salon in White Plains, NY, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, including, but not limited to, a statement that the Products are the best available for Plaintiff's type of curls. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of

107

No Poo Original Shampoo, No Poo Original Conditioner, Heaven In Hair, Coconut Curl Style Cream, Super Hold Gel, Decadence Conditioner, Decadence Shampoo and B'Leave In, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

256.    Plaintiff Bobbie VanSlyke purchased the DevaCurl products between 2015-2019. Plaintiff accessed the DevaCurl website prior to purchase of the Products. Plaintiff purchased the Products online through Amazon and my salon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2013, Plaintiff was first introduced to the Products by way of "The Curly Girl Handbook," by Lorraine Massey, a founder of Deva Curl and who echoed the representations later made by Defendant, see *supra*, Background Facts, paras. 118-133. After reading the Handbook, Plaintiff located and relied on recommendations made to her by the stylist from the DevaCurl Salon Laurie Cain at Belle Ross Salon, 5960 Getwell Road, Southaven, MS 38672, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of

Low Poo, One Conditioner, Decadence One Conditioner, Delight Low Poo, Delight One Conditioner and Wash Day Wonder, to the exclusion of regular shampoos. Plaintiff suffered hair loss and hair discoloration.

257.    Plaintiff Kenia Vazquez purchased the DevaCurl products between 2011-2020 online at Cosmoprof and Amazon based on representations made by Defendant on its website and on representations by the retailers that repeated Defendant's statements from its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff first heard about the Product from one of her sisters that works in the beauty industry and keeps up with the latest trends. Plaintiff was attracted to the products as the name implies the Products cater to curly hair. Plaintiff is unsure if she accessed the website before or after her initial purchase of the Products but certainly before subsequent purchases of the Products. On information and belief, Cosmoprof and Amazon made these representations to Plaintiff on Defendant's behalf pursuant to a retailer agreement, using information and promotional materials provided by Defendant for that purpose and otherwise subject to Defendant's control.  Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Heaven in Hair, Wavemaker, Set it Free, B'Leave In, Melt into Moisture, Light Defining Gel, Build Up Buster and Deep Sea Repair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration, scalp/facial irritation and/or rash.

258.    Plaintiff Sarina Vergara purchased the DevaCurl products between August 2019- October 2019 in store through Ulta and Cosmoprof based on representations made by Defendant, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on recommendations made to her by a licensed esthetician at the salon in the Ulta store located at 1004 Welsh Road, Horsham, PA 19044, who was Deva certified and,

trained to give DevaCuts, where she went for her first DevaCut, and echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of One Condition Original, No-Poo Original, Ultra Defining Gel, Light Defining Gel, Curl Maker, Styling Cream, High Shine and DevaFresh, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

259.    Plaintiff Geena Villotti purchased the DevaCurl products between 2016-2018. Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff purchased the Products online through the DevaCurl website www.devacurl.com and Ulta based on representations made by Defendant on its websites, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2016, Plaintiff also relied on YouTube influencers HiFelicia, Sydneylynn and Stephanie Mero, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting

110

the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Low Poo Shampoo, Low Poo Conditioner, Arch Angel Gel and Styling Cream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and hair discoloration.

260.    Plaintiff Michelle Walton purchased the DevaCurl products between 2014-February 2020. To the best of her knowledge, Plaintiff accessed the DevaCurl website prior to her initial purchase of the Product. Plaintiff answered an advertisement for models on Facebook and served as a hair model for Defendant in late October 2013, at the Devachan Salon, 9335 Culver Blvd., Culver City, CA 90232, run by DevaCurl founders. The salon used the Products on Plaintiff's hair while teaching the class to stylists and used photographs of Plaintiff's hair to promote the Products although she did not at that time use the Products and her hair had been professional styled and her make up professional done for the photos. Plaintiff first heard the representations on which she later relied at the Devachan salon by its stylist or other Deva employees, see *supra*, Background Facts, paras. 118-133. Plaintiff later purchased the Products online through Amazon and at local stores Ulta and 2ND Street Beauty based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, Ultra Defining Gel, One Condition Decadence, One Condition Decadence, Arc Angel, One Condition No Poo Decadence and Styling Cream, to the exclusion of regular shampoos. Plaintiff suffered hair loss, poor hair condition, hair discoloration and scalp/facial irritation and/or rash.

261.    Plaintiff Angharad Waring purchased the DevaCurl products between October 2018-October 2019. To the best of her knowledge, Plaintiff accessed the DevaCurl website prior to

purchase to see if they shipped to the UK. She purchased Products online from Naturalistic Products, Kiyo Beauty and London Loves Beauty based on representations regarding the safety, formulation and efficacy of the Products made by Defendant on its website and on similar statements made by the retailers from which she purchased Products, see *supra*, Background Facts, paras. 118-133. Plaintiff also relied on YouTube influencer Dana Gagliotti in 2018 and Plaintiff read reviews on the curly method Facebook groups, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, Defendant requested that Gagliotti and brand ambassadors leading the Facebook page act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Original One Condition, Original Low Poo, Ultra Defining Gel and Melt into Moisture, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, hair discoloration and scalp/facial rash.

262.    Plaintiff, Sally Warm purchased the DevaCurl products between May 2019-December 2019 online through Ulta based on representations made by Defendant on its Instagram account, including influencer videos and photos, which are in keeping with those made by Defendant on its webpage, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. On information and belief, Defendant requested that the Instagram influencers on which Plaintiff relied act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Low Poo and

One Condition Delight, to the exclusion of regular shampoos. Plaintiff suffered hair loss.

263.    Plaintiff Gini Warner purchased the DevaCurl products between 2012-2020 online from Amazon based on representations made by Defendant's agents from a DevaCurl salon, which repeated representations found on the Deva website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2012, Plaintiff visited DevaCurl Salon, Vicki Vela at Curls on Top in Laguna Beach, CA, where she went for her first DevaCut, and who echoed representations made by Defendant, see *supra*, Background Facts, paras 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Original Low Poo, Heaven in Hair, Decadence Leave-In, B'Leave-In, Original Styling Crème, Light Defining Gel, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash.

264.    Plaintiff Nanci Weitzman purchased the DevaCurl products between January 2010-June 2020 online through Oasis Curl Salon s. In 2010, Plaintiff relied on recommendations made to her by the stylist from the DevaCurl Salon, Wafaya Abdullah at Oasis Hair Salon, 825 Rockville Pike #C, Rockville, MD 20852, where she went for her first DevaCut, who echoed representations

made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, including, but not limited to, statements that the Products are designed for the texture and care of curly hair. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of One Condition Original, No Poo Original Zero Lather Conditioning Cleanser, Low Poo Original Mild Lather Cleanser, AnGel, B'Leave In Frizz Free Volumizing Foam, SetUp & Above, Set It Free, Spray Gel and Limited Edition Mist-er Right Lavender Curl Revitalizer, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition, and scalp/facial irritation and/or rash.

265.    Plaintiff Janice Williams purchased the DevaCurl products between 2012-December 2019 through her stylist and from Armstrong, an esthetician friend, based on representations made that are the same as those made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2012, Plaintiff also relied on recommendations made to her by the stylist from the DevaCurl Salon, Lissa Igal at Haute Hair, 5001 El Campo Avenue, Fort Worth, TX, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on

Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff used the Products as directed, including the use of Original NoPoo, Original One Condition, Decadence Leave In and Heaven in Hair, to the exclusion of regular shampoos. Plaintiff suffered hair loss, scalp/facial irritation and/or rash.

266.    Plaintiff Britney Winters purchased the DevaCurl products between November 2017-September 2019 from Ulta and was given products as a gift. In or about 2016, Plaintiff first heard about the Product from her high school friend, Felicia Jones, a DevaCurl hair Ambassador known as HiFelicia. Plaintiff accessed the DevaCurl website prior to her initial purchase and watched her friend's hair transformation which was featured by Defendant on the DevaCurl Facebook and Instagram pages, Plaintiff purchased the Products based on representations made by Defendant on its website, Facebook and Instagram pages, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff also relied on YouTube influencer HiFelicia, who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133. Defendant requested that Felicia act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, Subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of Light Defined

Gel, One Condition Original, One Condition Decadence, No Poo Condition Decadence, No Poo Decadence, Styling Cream and Deep Sea Repair Seaweed, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition, scalp/facial irritation and/or rash, matting, frizz and unmanageable hair.

267.    Plaintiff Kristin Wynn purchased the DevaCurl products between 2008-2020 through DevaCurl Salons the DevaCurl website, Target, Ricky's NYC, Neergard and Duane Reade. To the best of her knowledge, Plaintiff accessed the DevaCurl website prior to her initial purchase of the Products. Plaintiff purchased the Products based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2006-2007 Plaintiff was introduced to the Products by her roommate and sampled some of her Products. In 2008, Plaintiff relied on the recommendations made to her by the stylist from the DevaCurl Salon, DevaChan Salon in SOHO New York on Broadway, where she went for her first DevaCut, who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff was attracted to Defendant's whole model and marketing approach of embracing, celebrating and taking good care of curls. Plaintiff used the Products as directed,

116

including the use of No-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, Styling Cream, Heaven in Hair, Light Defining Gel, Arc AnGEL Gel, Super Stretch and Melt into Moisture-Matcha Butter Conditioning Mask, to the exclusion of regular shampoos. Plaintiff suffered hair loss, hair breakage, poor hair condition and hair discoloration.

268.     Plaintiff Jennifer Zuniga purchased the DevaCurl products between October 2019-February 2020.  Plaintiff learned about the Products on the DevaCurl website. Plaintiff purchased Products online through Amazon based on representations made by Amazon that repeated the claims made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. Plaintiff accessed the DevaCurl website prior to her initial purchase and relied on Defendant's claim the Products are the best available for curly hair. In 2015, Plaintiff also relied on YouTube influencers Biancareneetoday, Ginny (Nia the light), Rene (ownbyfemme) and Lisette (Luhsettyxo), who echoed the representations made by Defendant, see *supra*, Background Facts, paras. 118-133.  On information and belief, Defendant requested that these influencers act on its behalf by way of the Ambassador Program or a similar promotional program, the influencers consented to act on Defendant's behalf in promoting the Products, subject to Defendant's control, in exchange for payment, free Products and/or other incentives. Plaintiff used the Products as directed, including the use of DevaCurl One Condition and No Poo Decadence Shampoo and Conditioner, to the exclusion of regular shampoos. Plaintiff suffered hair loss and poor hair condition.

269.     Plaintiff Nikola Zurak purchased the DevaCurl products between 2012-2020 online through the DevaCurl website www.devacurl.com, Ulta, Walmart and Amazon based on representations made by Defendant on its website, see *supra*, Background Facts, paras. 118-133, regarding the safety, formulation and efficacy of the Products. In 2012, Plaintiff relied on

recommendations made to her by the stylist from the DevaCurl Salon, Coral Gable at Penny Lane, 2658 N Sawyer in Chicago, IL, where she went for her first DevaCut, and who echoed representations made by Defendant, see *supra*, Background Facts, paras. 118-133. The salon and used Products on Plaintiff's hair. On information and belief, both this salon and Plaintiff's stylist made these statements on Defendant's behalf as participants in Defendant's Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by Defendant for that purpose and otherwise subject to Defendant's control. Further on information and belief, Defendant listed the salon and/or stylist on the Deva website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. Plaintiff began purchasing the Product from the salon and then accessed the DevaCurl website and relied on the representations reiterated there after her initial purchase. Plaintiff used the Products as directed, including the use of No Poo Original, One Condition Original, No-Comb Detangling Spray and Light Defining Gel, to the exclusion of regular shampoos.  Plaintiff suffered hair loss, hair breakage, poor hair condition and scalp/facial irritation and/or rash.

## AGENCY AND PRIVITY OF THIRD PARTIES

270.    To the extent third parties made the false and misleading statements to Plaintiffs on which they relied (see *infra*, Plaintiff-Specific Allegations), the third parties were agents of Defendant and made the representations on Defendant's behalf with the consent of both the Defendant and the third party, using information and promotional materials provided by Defendant to the third party for the purpose of promoting the Products and otherwise subject to Defendant's control.

271.    With particular regard to influencers, Defendant curates the imagery and content of their posts. Defendant specifically tells influencers what to say in the videos—not necessarily scripting every word as Defendant prefers the influencers use some of their own words to ensure the message does not come across as the calculated marketing that it is—but identifying the Products and Products' purported attributes to be featured and the directing the influencer's feedback regarding the Products and their featured attributes. Conversely, Defendant also tells influencers what they should **not** say or convey as part of their marketing on Defendant's behalf. Defendant reserves and exercises its the right to select the videos and photos that will be posted by influencers (and, by that same token, reject the remaining footage and images as outtakes) and to edit any copy that will accompany a post. Defendant also carefully directs all filming, both video and still shots, including selection of the shooting location; hair and make-up artists; and clothing. Similarly, Defendant instructs the photographer/videographer as to the message that should be achieved through the photography/video. In addition to payments made to influencers on a commission basis (dependent on sales), Defendant also pays for the influencer's transportation and lodging to participate in filming.

272.    By participating in the creation and dissemination of content under the direction and control as alleged hereinabove, the influencers accept the instructions, direction, curation and control of Defendant, and agree that Defendant is to be in control of the instructions, direction, and curation of Defendant over said content.

273.    On information and belief, Defendant directs the content of brand ambassadors in much the same way as influencers as set forth hereinabove, inasmuch as it tells these ambassadors what to say and what **not** to say in Products-related posts, while also reserving and exercising the right to edit and/or censor the content and imagery of ambassador posts. Of course, Defendant also

119

provides content to ambassadors with instructions for them to use the content in original Products-related posts or to repost Defendant-posted content.

274.    By participating in the creation and dissemination of content under the direction and control as alleged hereinabove, the brand ambassadors accept the instructions, direction, curation and control of Defendant, and agree that Defendant is to be in control of the instructions, direction, and curation of Defendant over said content.

275.    Defendant also controls what stylists and salon owners have to say about the Products. On information and belief, Defendant conditions participation in training or Products (re)sale programs on an agreement to speak and act on Defendant's behalf to sell the Products. Furthermore, Defendant instructs its Deva-trained stylists and salon owners to describe the Products and their purported attributes using only those representations made and approved of by Defendant during the training and/or as part of its salon certification process. Defendant reserves and exercises its right to edit and censor what stylists have to say about the Products. If a stylist fails to toe the line dictated by Defendant, Defendant can and will fire those stylists working at company-owned salons. For those stylists who are Deva certified or sponsored, Defendant uses the threat of being removed from the Defendant's online stylist/salon directory, withdrawing its certification or sponsorship and/or withholding supplies of Products for resale in salons.

276.    By participating in the creation and dissemination of content under the direction and control as alleged hereinabove, the stylists and salon owners accept the instructions, direction, curation and control of Defendant, and agree that Defendant is to be in control of the instructions, direction, and curation of Defendant over said content.

277.    On information and belief, Defendant controls representations made by retailers about the Products by way of agreements that require retailers to promote the Products on

Defendant's behalf using Defendant's branding and Defendant-provided or approved marketing content, imagery and strategy.

278.    In these ways, Defendant expressly directed these third-party agents to make the false and misleading statements on which Plaintiffs have relied or, by virtue of Defendant's promotion of these third parties on its website and in other advertisements and its training of these agents, the agents and Plaintiffs reasonably believed the agents were authorized to make these statements in their promotion of the Products to Plaintiffs. Furthermore, the agents made the false and misleading statements and/or sold the Products to Plaintiffs pursuant to an agreement with Defendant to promote and/or sell the Products. Therefore, Plaintiffs are in contractual privity with Defendant even if they relied on statements made by or purchased Products from Defendant's agents.

## **FIRST CAUSE OF ACTION**

### **Breach of Express Warranty**

### **All Plaintiffs Save for Plaintiff Tayrn Ray[68]**

279.    Plaintiffs hereby incorporate and restates the above allegations by reference as though fully set forth herein.

280.    Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact made by Defendant through marketing and advertising as part of the Campaign. This marketing and advertising constitute

---

[68] Plaintiff Taryn Ray does not assert a claim for breach of express warranty, violation of New York's consumer protection law or for unjust enrichment.

express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and Defendant.

281. By way of its Campaign, Defendant promoted the Products to Plaintiffs using multiple false and/or misleading express promises, including, but not limited to:

    a. The Products are "safe;"

    b. The Products are gentle, and do not strip hair of natural oils or weigh hair down as opposed to shampoos;

    c. The Products contain only "good" ingredients and are "100% free of sulfate, silicone, paraben, Phthalate, mineral oil and gluten," which creates the false impression that the Products do not contain formaldehyde, a known allergen with carcinogenic effects, or other harmful or harsh ingredients;

    d. The Products should be used to exclusion of traditional shampoos and other brands of hair care products;

    e. The Products clean and condition hair and scalp;

    f. The Products are "rooted in science" "extensively tested," "validate[d] . . . for quality, safety and performance," "perfected" and "introduced to the market only after . . . undergoing strict safety testing protocols;"

282. For the reasons previously detailed at length, each statement is false and/or misleading. The Products are not safe, gentle, free of harsh chemicals, a better alternative to traditional shampoos and extensively tested. To the contrary, The Products contain, among other harsh ingredients, sulfates, silicones and formaldehyde or formaldehyde releasers, which soon becomes formaldehyde once the product is opened. These ingredients are known to cause ACD and trigger other immune reactions due to their status as allergens or sensitizers, to which a large and

growing proportion of the population are allergic. As the same time, Defendant's no poo products—what it sells as a safer alternative to shampoo—contain inadequate cleansing ingredients and cannot remove the non-water-soluble ingredients found in the Products, dirt, dust, dead skin and other debris commonly found on the scalp and hair. This leads to the buildup and SD. ACD, build up and SD, in turn, cause hair loss and other personal injuries, such as itching, blisters and sores, redness, rashes, yeast and bacterial infections of the scalp, among other things. Over time, these conditions cause permanent damage to the scalp and hair follicles and, thus, to the hair.

283.    Despite its representations to the contrary, Defendant did not test these Products extensively prior to selling them. In some cases, the Products were not tested pre-market at all, other than possibly at one of Defendant's salons. The other testing on which Defendant relies in making those representations, the HRIPT testing, failed to meet scientific standards in terms of the concentration of product used on test subjects.

284.    All conditions precedent to Defendant's liability under this contract were performed by Plaintiffs when they purchased and used the Products.

285.    Defendant breached express warranties about the Products and their qualities because their statements about the Products were false and the Products do not conform to their affirmations and promises. Plaintiffs would not have purchased the Products had they known the true nature of the Products and the misstatements regarding what the Products are, what they contain and how they would work.

286.    In February 2020, Plaintiffs informed Defendant in writing of these breaches and provided Defendant an opportunity to address them.  Defendant has failed to do so.

287.    As a proximate result of Defendant's breach of warranty, Plaintiffs have been personally injured and suffered other damages.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty

### All Plaintiffs

288.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

289.    At all times relevant hereto, there was a duty imposed by law on Defendant which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that product be acceptable in trade for the product description.

290.    Notwithstanding Defendant's aforementioned duty, at the time of delivery, the Products sold to Plaintiffs were not merchantable because they contain harmful ingredients and other defect(s) that cause hair loss and other injuries upon proper application and do not contain sufficient cleanser or otherwise perform as represented.

291.    In February 2020, Plaintiffs notified Defendant that the Products were not merchantable. This notice was within a reasonable time after the defect manifested to Plaintiffs and other consumers or within a reasonable time after Plaintiffs discovered facts sufficient to determine or suspect the Products, which Defendant touts as safe, made of only gentle ingredients and subject to extensive testing, were the cause of their injuries.

292.    As a result of the non-merchantability of the Products, Plaintiffs and other consumers sustained personal injury and other damages.

**THIRD CAUSE OF ACTION**

**Consumer Protection Claims**

**All Plaintiffs Save for Plaintiff Taryn Ray**

293.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

294.    Plaintiffs assert consumer protection claims under the law of their respective home states. Those statutes are as follows:

| PLAINTIFF | STATE | APPLICABLE STATUTE(S) |
|---|---|---|
| C. Adams | OR | Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.638(1) |
| H. Ampudia | NY | N.Y. Gen. Bus. Law § 349 |
| E. Applebee | NY | N.Y. Gen. Bus. Law § 349 |
| D. Ariza-Gonzalez | NY | N.Y. Gen. Bus. Law § 349 |
| C. Aviles | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| S. Barrett | Ontario, Canada | Consumer Protection Act , 2002, S.O. 2002, c. 30, Sched. A, s. 14, *et seq.* |
| R. Bird | MA | Mass. Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 2 |
| R. Blaustein | CA | California False Advertising Law ("CFAL"), Bus. & Prof. Code § 17500 *et seq.*; California Unfair Competition Law ("CUCL")), Cal. Bus. & Prof. Code § 17200 *et seq.* |

| | | |
|---|---|---|
| C. Cain | NY | N.Y. Gen. Bus. Law § 349 |
| S. Carpenter | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| A Carter | MD | Maryland Consumer Protection Act, Md. Code, Commercial Law § 13-301 *et seq.* |
| M. Castello | NJ | New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq.* |
| A Clay | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| J. Cleary | MN | Minnesota Consumer Protection Act, ; **Minnesota Deceptive Trade Practices Act,** Minn. Stat. Ann. § 325D.43 *et seq.* |
| D. Collins | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| J. Collins | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| K. Coray | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| L. Craft Parrish | GA | Georgia Fair Business Practice Act, Code Ann. s 106-1201 et seq. |
| E. Crampsey | ME | Maine Unfair Trade Practices Act, ("Maine UTPA"), Me. Rev. Stat. tit. 5, § 207 |

| A Creel | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
|---|---|---|
| L. Croker | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| A Da Cruz | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| E. Darwish | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| B. Davall | MA | Mass. Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 2 |
| S. Daversa | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq.* |
| D. DeGrandis-Kneer | PA | Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2 *et seq.* |
| L. Dejonge | NY | N.Y. Gen. Bus. Law § 349 |
| F. Dickerson | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| M. Dickey | AL | Alabama Deceptive Trade Practices Act, Ala. Code §§ 8–19–1 et seq. (1975) |
| M. Edwards | NY | N.Y. Gen. Bus. Law § 349 |
| L. Einhorn | NY | N.Y. Gen. Bus. Law § 349 |

| V. Esparaza | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| M. Evans | NY | N.Y. Gen. Bus. Law § 349 |
| K. Fisher | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq.* |
| A Fitzwilliam | OK | Oklahoma Consumer Protection Act, 15 O.S. § 761.1 (1991) |
| J. Garcia | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| B. Hall | TN | Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq* |
| J. Harris | AR | Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107. |
| T. Hastoo | Ontario, Canada | Consumer Protection Act , 2002, S.O. 2002, c. 30, Sched. A, s. 14, *et seq.* |
| R. Hawk | DC | District of Columbia Deceptive Trade Practices law, D.C. Code § 28-3904 *et. seq.* |
| L. Hector | MS | Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et seq.* |
| A H (a minor) | MS | Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et seq.* |

| C. Hein | UT | Utah Consumer Sales Practices Act, U.C.A. § 13–11–4(2) |
| S. Hidlebaugh | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| T. Hobbs | CO | Colorado Consumer Protection Act, C.R.S.A. §§ 6–1–105 *et seq.* |
| M. Howard | LA | Louisiana Unfair Trade Practices Act, La. Rev. Stat. § 51:1405 |
| T. Hunt | SD | South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1 *et seq.* |
| T. Hunter | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| M. Hussain | Ontario, Canada | Consumer Protection Act , 2002, S.O. 2002, c. 30, Sched. A, s. 14, *et seq.* |
| C. Jacobs-Burrow | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| L. Jeter | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| A Johnson | MO | Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq.* |
| T. Keating | CT | Connecticut Uniform Trade Practices Act, Conn. Gen. Stat. Ann.§ 42-1l0b(a) (West) |

| S. Kelly | SC | South Carolina Unfair Trade Practices Act, S.C.C.A. § 39-5-10 *et seq.* |
|---|---|---|
| K. Khatoon | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code § 17.50 *et seq.* |
| S. King | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq.* |
| K. Kozy | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| K. Lee | MN | Minnesota Consumer Protection Act, ; **Minnesota Deceptive Trade Practices Act,** Minn. Stat. Ann. § 325D.43 *et seq.* |
| S. Lee | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq.* |
| M. Lewis | AR | Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107. |
| M.L. (a minor) | LA | Louisiana Unfair Trade Practices Act, La. Rev. Stat. § 51:1405 |
| N. Lovitt | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| A Malik | AK | Alaska Unfair Trade Practices Act, A.S. § 45.50.471 |

| T. Mandel | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| H. Matesky | MD | Maryland Consumer Protection Act, Md. Code, Commercial Law § 13-301 *et seq.* |
| A Mendoza | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| D. Mendoza | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| L. Miller | OH | Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 4165.01 *et seq.* |
| E. Mitchell | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| N. Mohammed | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| A Patin | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| L. Percival | MA | Mass. Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 2 |
| A Perkins | CT | Connecticut Uniform Trade Practices Act, Conn. Gen. Stat. Ann.§ 42-1l0b(a) (West) |
| N. Pottinger | NY | N.Y. Gen. Bus. Law § 349 |
| A Rainey | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, |

| | | Cal. Bus. & Prof. Code § 17200 *et seq.* |
|---|---|---|
| L. Ramos | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| V. Ramos | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| D. Rand-Byrd | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq.* |
| T. Ray | AZ | Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.* |
| M. Reed | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| C. Rephann | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| K. Rephann | SC | South Carolina Unfair Trade Practices Act, S.C.C.A. § 39-5-10 *et seq.* |
| K. Robaina | CT | Connecticut Uniform Trade Practices Act, Conn. Gen. Stat. Ann.§ 42-1l0b(a) (West) |
| D. Rysztenyk | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| A Shuford | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq.* |
| S. Sium | NY | N.Y. Gen. Bus. Law § 349 |
| T. Sparks | IN | Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 *et seq.* |

| | | |
|---|---|---|
| T. Steo | MD | Maryland Consumer Protection Act, Md. Code, Commercial Law § 13-301 *et seq*. |
| R. Taylor | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code § 17.50 *et seq*. |
| C. Theirault | New Brunswick, Canada | Consumer Product Warranty and Liability Act, SNB 1978, c C-18.1 |
| K. Thomas | NY | N.Y. Gen. Bus. Law § 349 |
| T. Tomasik | NY | N.Y. Gen. Bus. Law § 349 |
| C. Torrelli | PA | Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2 *et seq*. |
| Y. Torres | CA | CFAL, Bus. & Prof. Code § 17500 *et seq*.; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq*. |
| A Valentin | NY | N.Y. Gen. Bus. Law § 349 |
| B. VanSlyke | MS | Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et seq*. |
| K. Vazquez | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq*. |
| S. Vergara | PA | Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2 *et seq*. |
| G. Villotti | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| M. Walton | CA | CFAL, Bus. & Prof. Code § 17500 *et seq*.; CUCL, |

| | | Cal. Bus. & Prof. Code § 17200 *et seq.* |
|---|---|---|
| A Waring | UK | Consumer Protection from Unfair Trading Regulations 2008-- Regulation 5; Regulation 6. |
| S. Warm | TN | Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* |
| G. Warner | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| N. Weitzman | MD | Maryland Consumer Protection Act, Md. Code, Commercial Law § 13-301 *et seq.* |
| J. Williams | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| B. Winters | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| K. Wynn | NY | N.Y. Gen. Bus. Law § 349 |
| J. Zuniga | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| N. Zurak | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |

A Chart listing the elements of each state statute is attached as Exhibit A.

295.    As detailed above, Defendant made false and misleading promises and misrepresentations to Plaintiffs as part of the Campaign.

296.    Defendants also engaged in unconscionable commercial practices, deception and fraud in the Campaign, and specifically when marketing the Products to Plaintiffs by, among other

things, failure to disclose that it paid or otherwise incentivized influencers, brand ambassadors, hair models, celebrities, magazines other advertising media, stylists, salon owners and retailers to promote the Products using content controlled by Defendant in violation of FTC regulation and guidance. In so doing, Defendant affirmatively misrepresented these third parties endorsed the Products without the influence of financial or other gain and, with regard to all but retailers, regularly used the Products as recommended by Defendants, that is to say, to the exclusion of other competitive products or, at the least, traditional shampoos. In addition, with regard to influencers, brand ambassadors and celebrities, Defendant affirmatively mispresented that these parties could achieve their hair styles without the use of professional hair stylists. Finally, Defendant also suggested celebrities regularly used the Products and/or endorsed or sponsored or were affiliated with the Products or Defendant when, in fact, none of those things were true.

297.    Defendant intentionally obscured the commercial nature of the representations made by these agents with the intent that consumers, including Plaintiffs, would perceive that advertising as excited peer-to-peer testimonials arising strictly from customer satisfaction, not paid promotions. Defendant understood that this deception would and did have the effect of making the representations much more effective in selling the Products.

298.    The FTC is charged with protecting consumers from false and deceptive advertising. All or nearly all of the consumer protection laws under which Plaintiffs assert these claims are substantially modelled on the Federal Trade Commission Act and courts enforcing those statutes have in large measure relied on the Federal Trade Commission Act's definition of "deceptive practices" and the interpretation of that term by federal courts. The Federal Trade Commission Act ("FTCA") requires prominent, clear and conspicuous disclosure "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight

or credibility of the endorsement." *Id.* (citing 16 C.F.R. § 255.5). Defendant's failure to comply with the FTCA rendered its use of influencer, brand ambassador and similar endorsement-based advertisement misleading.

299.    Beyond its duty to communicate honestly with consumers about the quality and nature of the Products, once Defendant learned of defects in the Products, including their tendency to cause hair loss and other injuries despite proper use (or based upon foreseeable misuse), Defendant owed consumers, including Plaintiffs, a duty to disclose the risks of hair loss and other injuries because those risks would be a material fact in a consumer's decision-making process, and, without Defendant's disclosure, consumers would not know that such a risk exists, particularly given Defendant's representations that the Products are safe, gentle and subject to extensive testing.

300.    Defendant intended that Plaintiffs and other consumers would rely on—and Plaintiffs (save for Plaintiff Taryn Ray), in fact, reasonably and justifiably relied on—Defendant's misrepresentations as to the nature, safety and efficacy of the Products. A reasonable consumer would have found the same representations false or misleading.

301.    The transactions by which Plaintiffs have been injured are important to consumers-at-large in that the transactions are intentional and part of the Campaign, a scheme to defraud consumers world-wide.

302.     Defendant is the producing and proximate cause of Plaintiffs' hair loss, scalp and other injuries.

303.    Defendant's consumer protection statute violations are incurable inasmuch as they are intentional and part of the Campaign, a scheme to defraud consumers. In any event, Plaintiffs notified Defendant of the consumer protection statute violations and Defendant failed to cure the violations.

304.    To the extent the Plaintiffs' home state consumer protection laws provide only for equitable relief, Plaintiffs plead in the alternative that, with regard to the injuries they have sustained as a result of Defendant's violation of consumer protection laws, they have inadequate legal remedies given Defendant's allegations that some or all Plaintiffs failed to give sufficient notice of their claims prior to filing suit or otherwise claim Plaintiffs are not entitled to legal damages and since, in some cases, the consumer protection laws of the Plaintiffs' home states do not provide for the recovery of reasonable attorneys' fees, litigation expenses and costs, an award of such fees, expenses and costs being necessary to make Plaintiffs whole and to cause Defendant to discontinue its violation of consumer protection statutes. In addition, Plaintiffs note that some of the conduct underlying their consumer protection claims are unique to these claims, such as Defendant's censorship of negative online reviews, failure to alert authorities of the many complaints of similar injuries, false celebrity endorsements, undisclosed affiliations with influencers, brand ambassadors, stylists and salon owners, all of which could have prevented Plaintiffs' injuries.

305.    With regard to Bobbie VanSlyke, Mrs. VanSlyke has been unable to identify a program approved by the Mississippi Attorney General to informally resolve her consumer protection dispute with Defendant. As previously alleged, Mrs. VanSlyke has attempted to otherwise resolve this dispute using informal measures. Those efforts proved futile and Mrs. VanSlyke contends any such effort with a Mississippi Attorney General-approved dispute resolution program, if any exist, would likewise have been futile. Nevertheless, should the Court find that the requirement is necessary even if likely futile, Mrs. VanSlyke requests that her claim be stayed or dismissed without prejudice so that she may comply or attempt to comply with the requirement.

## FOURTH CAUSE OF ACTION

### Negligence and/or Gross Negligence

### All Plaintiffs

306.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

307.    Defendant owed Plaintiffs a duty to use due care in the development, testing, planning, design, marketing and sale of the Products offered for use by consumers.

308.    Through its failures to exercise due care, Defendant breached this duty by producing, processing, manufacturing, distributing and/or offering for sale the Products in a defective condition that was unsafe for use at home by consumers.

309.    Defendant breached this duty of care to Plaintiffs by failing to use sufficient quality control, perform adequate research or testing, proper manufacturing, production or processing, and failing to take sufficient measures to prevent the Products from being offered for sale in an unsafe and hazardous form.

310.    Defendant further breached this duty of due care by failing to properly and adequately inform consumers once safety concerns, including hair loss and other injuries, were brought to the Defendant's attention, and further breached this duty of care by failing to fully and appropriately discontinue the sale of and recall the Products.

311.    Defendant knew, or in the exercise of reasonable care should have known, that the Products present an unacceptable risk to consumers, and would result in damages that were foreseeable and reasonably avoidable.

312.    As a direct and proximate result of Defendant's above-referenced negligence and/or gross negligence, Plaintiffs have suffered and are entitled to recover damages, both compensatory

and punitive.

## FIFTH CAUSE OF ACTION

### Strict Product Liability

### All Plaintiffs

313.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

314.    Defendant is producer, manufacturer, marketer, distributor and/or seller of the Products.

315.    The Products are defective in design or formulation in that the Products are unreasonably dangerous, and the foreseeable risks of harm exceed the benefits associated with the design or formulation. The Products are also defective due to inadequate and unsafe warnings/instructions, testing, study and/or reporting regarding the results of such efforts. Similarly, Defendant's post-market warnings/instructions are inadequate and unsafe because, after Defendant knew or should have known of the risk of injury from the Products, Defendant failed to immediately provide adequate warnings/instructions to Plaintiffs and the public.

316.    As the direct and legal result of the defective condition of the Products as produced, manufactured, designed, marketed, distributed and/or sold by Defendant, and of the negligence, carelessness, other wrongdoing and actions of Defendant described herein, Plaintiffs suffered damages.

## ATTORNEYS' FEES, EXPENSES AND COSTS

317.    Plaintiffs hereby incorporate and restate the above allegations by reference as though fully set forth herein.

318.    Plaintiffs have been forced to secure the assistance of counsel to protect their legal

rights and mitigate their damages as a result of the Defendant's wrongful conduct.

319.    Having made proper presentment and provided actual and sufficient notice of their claims to Defendant, Plaintiffs seek recovery of their reasonable attorneys' fees, expenses and costs pursuant to all applicable statutes, regulations and agreements.

## **PRAYER**

WHEREFORE Plaintiffs pray for Judgment against Defendant as follows:

For an award of actual and consequential damages according to proof;

For an award of punitive damages according to proof;

For restitution in the form of disgorgement of Defendant's ill-gotten profits;

For an award of reasonable attorneys' fees, costs and expenses incurred herein;

For an award of pre- and post-judgment interest; and;

For all other relief to which they may be justly entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury under Fed. R. Civ. P. 38.

Dated: April 27, 2022

Respectfully submitted,

LAW CENTER OF AMY E. DAVIS, LLC


By:   /s/ *Amy E. Davis*
Amy E. Davis (*pro hac vice*)


*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 27th day of April 2022, I served the foregoing document on all counsel of record via ECF.

By: _/s/ Amy E. Davis_____